## 13 CIV 369

JUDGE MARRERO

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



| | |
|---|---|
| BENJAMIN CAREATHERS,<br>individually, and on behalf of<br>all others similarly situated, | |
| Plaintiff, | CASE NO. 13CIV369 |
| v. | **CLASS ACTION COMPLAINT** |
| RED BULL GMBH, a foreign corporation,<br>RED BULL NORTH AMERICA, INC., a<br>California corporation, and RED BULL<br>DISTRIBUTION COMPANY, INC., a<br>Delaware corporation, | **JURY TRIAL DEMANDED** |
| Defendants. | |

### CLASS ACTION COMPLAINT

Plaintiff, Benjamin Careathers ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, by and through

his undersigned attorneys, brings this action, on behalf of himself and a Nationwide Class and

New York Subclass of all other similarly situated persons, against Defendants, RED BULL

GMBH, a foreign corporation, RED BULL NORTH AMERICA, INC., a California corporation,

and RED BULL DISTRIBUTION COMPANY, INC., a Delaware corporation (collectively "the

Red Bull Defendants" or "Defendants"), and, except for information based on his own personal

knowledge, alleges on information and belief based on the investigation conducted by his

counsel, and the facts that are a matter of public record, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of a proposed class and

subclass ("Class" or "Classes"), as more fully defined below, of similarly situated consumers,

nationwide and in New York, seeking to redress the pervasive pattern of fraudulent, deceptive, false and otherwise improper advertising, sales and marketing practices that the Red Bull Defendants have engaged in and continue to engage in with regard to their "Red Bull" branded energy drinks.   As more fully alleged herein, Defendants' schemes or artifices to defraud Plaintiff and other members of the proposed Classes have consisted of systemic and continuing practices of disseminating false and misleading information via television commercials, Internet websites and postings, blast emails, radio media, blogs, video news releases, advertisements, and the packaging of Red Bull energy drinks, all of which is intended to induce unsuspecting consumers, including Plaintiff and other members of the proposed Classes, into purchasing, at a premium price, millions of dollars worth of Red Bull energy drinks, which are manufactured, distributed marketed, advertised and/or sold by the Red Bull Defendants.

2.      The Red Bull Defendants prey upon consumers by promising that, among other things, "Red Bull gives you wings" by providing a mixture of ingredients that, when ingested, significantly improve a consumer's physiological and mental performance beyond what a simple cup of coffee or caffeine pill would do for a consumer's physiological and mental performance.

3.      The Red Bull Defendants base their claims upon and tout numerous scientific studies they claim demonstrate the superior nature of Red Bull branded energy drinks over simpler and less expensive caffeine only products, such as a cup of a coffee.

4.      Upon information and belief there is no genuine scientific research and there are no scientifically reliable studies in existence that support the extraordinary claims of Defendants, that Red Bull branded energy drinks provide more benefit to a consumer than a cup of coffee. The Red Bull Defendants know or should know that there is no greater benefit to ingesting Red Bull energy drinks than ingesting an equivalent dose of caffeine and have taken no meaningful

2

steps to clear up consumer misconceptions regarding its Red Bull branded energy drinks.

## JURISDICTION, PARTIES AND VENUE

5.      Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1711, *et. seq.*  The Plaintiff and certain of the Defendants in this action are citizens of different states and the amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

6.      For the subclass, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

7.      Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because a substantial part of the events giving rise to these claims occurred in the Southern District of New York; Defendants and/or their agents were doing business in New York; and/or Defendants are otherwise subject to personal jurisdiction in this judicial district.

8.      This Court has personal jurisdiction over the Defendants pursuant to New York CPLR §302(a)(1) because the Defendants transact business within the state and/or contract to supply goods or services in the state.  Personal jurisdiction is also appropriate pursuant to New York CPLR §302 (a)(2) because Defendants committed tortious acts within the New York.

## PLAINTIFF

9.      For purposes of clarity, the Plaintiff is asserting claims on behalf of all consumers of Red Bull branded energy drinks who do not appear herein as named Plaintiffs.

10.      Plaintiff Benjamin Careathers is a resident of the Bronx, Bronx County, New York, who has been purchasing and ingesting Defendants' Red Bull branded energy drinks since approximately 2002.

## DEFENDANTS

11.    Defendant RED BULL GMBH is a foreign corporation based in Austria. It annually sells over four billion cans of Red Bull branded energy drinks in approximately 161 countries, including the United States, where Red Bull branded energy drinks account for almost half of the total market share for such energy drink products.

12.    Defendant RED BULL NORTH AMERICA, INC. is a California corporation with its principal place of business in Santa Monica, California, and is believed to be a subsidiary of Red Bull GmbH and responsible for sales and marketing of Red Bull branded energy drinks in the United States.

13.    Defendant RED BULL DISTRIBUTION COMPANY, INC. is a Delaware corporation that operates with offices throughout the United States to distribute Red Bull branded energy drinks, and, upon information and belief is a subsidiary of Red Bull North America, Inc. and/or Red Bull GmbH.

## GENERAL ALLEGATIONS REGARDING RED BULL BRANDED ENERGY DRINKS

14.    In the 1980s Red Bull branded energy drinks were founded on a tonic originally created in Thailand known as "Krating Daeng" (which translates to Red Bull). Re-formulated for western tastes, Red Bull was introduced in Europe in a carbonated "functional beverage" format beginning in 1987 and was introduced in the United States in 1997. It is currently sold throughout the United States in three varieties: Red Bull Energy Drink, Red Bull Sugar Free and Red Bull Total Zero. Red Bull Energy Drink contains caffeine, taurine, glucuronolactone, B vitamins, sucrose, and glucose. Red Bull Sugar Free and Red Bull Total Zero remove sugars, and all carbohydryates, respectively, from the original formulation. Defendants also selectively market a line of Red Bull "Editions" with popular flavorings added to the original Red Bull

4

formulation in lounges and clubs in key markets.

15.     Defendants spend millions of dollars misleading customers about the superiority of their "functional beverage" and its ability to "give you wings" and provide energy and vitality. Red Bull states that because of its "unique combination of high quality ingredients Red Bull Energy Drink vitalizes body and mind."

16.     Indeed, the Red Bull Defendants state on their web site that "[n]umerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink:"

- Increases performance;

- Increases concentration and reaction speed;

- Improves vigilance;

- Stimulates Metabolism; and

- Makes you feel more energetic and thus improves your overall well-being.

17.     Although Defendants point to purported scientific studies and research to back up their claims that the unique blend of ingredients is responsible for the claimed superior benefits of drinking Red Bull, the well-regarded scientific journal *Nutrition Reviews* published an evaluation of various studies of energy drink ingredients and their efficacy and found that:

> With the exception of some weak evidence for glucose and guarana extract, there is an overwhelming lack of evidence to substantiate claims that components of [energy drinks], ***other than caffeine***, contribute to the enhancement of physical or cognitive performance. Tom M. McLellan, et al., "Do Energy Drinks Contain Active Components Other Than Caffeine?", *Nutrition Reviews*, Vol. 70, pp. 730–44 (2012) (emphasis supplied).

18.     The *New York Times* recently published an article titled "Energy Drinks Promise Edge, but Experts Say Proof is Scant" (Barry Meier, January 1, 2013), citing widespread scientific and governmental criticism of the notion that energy drinks provide any more benefit

than the average dose of caffeine consumed in a cup of coffee. The article notes that Massachusetts congressman Edward J. Markey has called for a U.S. government investigation into the energy drink industry's marketing claims.

19. Indeed, the European Food Safety Authority concluded in 2011 that there is a lack of scientific support for the claimed benefits of taurine, a key ingredient of Red Bull branded energy drinks, stating it could find no cause and effect relationship between taurine and its purported benefits. European Food Safety Authority, *EFSA Journal 2011*; 9(4):2035.

20. On its U.S. web site, the Red Bull Defendants publish a 19 page article on the benefits of Red Bull Energy Drink in improving "endurance performance" implying that consumption of Red Bull Energy Drink prior to athletic performance will improve athletic performance. However, one foundation of the article's premise is a "scientific study" that only compared ingestion of Red Bull Energy Drink to ingestion of a flavored placebo containing none of the Red Bull Energy Drink ingredients. Thus, nothing in that "scientific study" supports the premise that Red Bull's ingredients do anything more for athletic performance than a cup of coffee. Other studies cited in the article are of the type criticized in Nutrition Reviews, where "[t]he human studies that are often cited to support the addition of taurine to an [energy drink] have been improperly designed and lack[] the appropriate dependent measures to test the stated hypothesis." *Nutrition Reviews* at 734. Indeed, the *Nutrition Reviews* 2012 article concludes with this sentence: "At this time, there is little, if any, solid evidence to support an increase in either physical or mental 'energy' due to the consumption of these drinks, except for the increases attributable to the caffeine in these products." *Id.* at 741.

21. Such deceptive conduct and practices mean that Defendants' advertising and marketing is not just "puffery," but is instead deceptive and fraudulent and is therefore

actionable.

22.     The *New York Times* article pointed out that energy drinks such as Red Bull are really just "caffeine delivery systems" and manufacturers such as Red Bull do not want to claim their product is the equivalent to a cup of coffee or a "NoDoz" tablet "because that is not a very sexy sales message."

23.     Defendants take advantage of every marketing avenue the modern age has opened to them in order to ensure that their false and deceptive marketing message permeates the general consumer consciousness.  Defendants use television advertising, internet marketing, and social media, as well as celebrity sports figure endorsements, and glossy print brochures.  Defendants sponsor events such as Formula One racing and traditional and extreme sports such as snowboarding and skateboarding.  Defendants have even created their own "sports" such as the Red Bull Flugtag, where contestants create their own "flying machine" and try to fly it off, for example, a pier into a body of water to underscore the message "Red Bull gives you wings."  Defendants also extensively sponsor events in the entertainment, music and international DJ scene.  But no matter which marketing avenue reaches a consumer, Defendants' drive home the same false and deceptive claims of superior results from drinking Red Bull branded energy drinks through all of the advertising mediums.

24.     However, even though there is a lack of genuine scientific support for a claim that Red Bull branded energy drinks provide any more benefit to a consumer than a cup of coffee, the Red Bull Defendants persistently and pervasively market their product as a superior source of "energy" worthy of a premium price over a cup of coffee or other sources of caffeine.  An 8.4 ounce can of Red Bull Energy Drink costs $2.19 or more and contains 80 mg of caffeine, whereas a tablet of regular strength NoDoz costs approximately 30 cents and contains 100 mg of

caffeine.  A 7 ounce cup of drip coffee contains approximately 115 to 175 mg of caffeine, depending on the blend.   Even a 12 ounce serving of Starbuck's coffee costs $1.85 and would contain far more caffeine than a regular serving of Red Bull.

25.   Thus, Red Bull delivers less of the ingredient (caffeine) scientific studies maintain provides the benefits claimed by Red Bull branded energy drinks for a substantially higher price than consumers could spend on alternative sources of caffeine.

26.   As a result of the foregoing, Defendants' claims regarding Red Bull branded energy drinks are deceptive and misleading.  Had Plaintiff and other members of the proposed Classes been aware of the truth about Defendants' Red Bull branded energy drinks, they would not have purchased the Red Bull branded energy drinks, or would not have paid a premium price for the Red Bull branded energy drinks.

27.   Indeed, Defendants were in a superior position to know and did know that its claims and advertisement were deceptive and false and they failed to inform consumers that their Red Bull branded energy drinks cannot perform as advertised and promised.

28.   Instead, Defendants allow their deceptive and misleading marketing to permeate the consumer advertising consciousness and perpetuate Defendants' false claims and promises.

29.   Because of such deceptive practices and conduct, Defendants are able to charge and get a substantial premium for their products over readily available and much lower priced sources of caffeine that provide the same or substantially similar results.  Thus, Defendants reap profits on products where consumers are induced to pay an unwarranted, substantial premium.

30.   All conditions precedent necessary for the filing of this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendants.

8

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this suit as a class action on behalf of herself and on behalf of a

Nationwide Class and New York Subclass of other similarly situated persons pursuant to

Fed.R.Civ.P.23(a), 23(b)(2), and/or 23(b)(3).  Subject to additional information obtained through

further investigation and/or discovery, the foregoing definition of the Classes may be expanded

or narrowed.  The proposed Classes are defined as follows:

> **Nationwide Class**: All persons who purchased Defendants' Red
> Bull branded energy drinks within the applicable statutory
> limitations period, including the period following the filing date of
> this action.
>
> **New York Subclass**: All New York residents who purchased
> Defendants' Red Bull branded energy drinks within the applicable
> statutory limitations period, including the period following the
> filing date of this action.

32.     Excluded from the Classes are: (1) Defendants, Defendants' subsidiaries, affiliates,

officers, directors, assigns and successors, and any entity which Defendants have a controlling

interest; (2) the Judge to whom this case is assigned and any member of the judge's immediate

family; (3) anyone who purchased the Red Bull branded energy drinks for the purpose of resale;

and (4) anyone asserting claims for personal injury.  Plaintiff reserves the right to modify the

Class and Subclass definitions as further investigation and/or discovery so warrant.

33.     This action has been brought and may properly be maintained as a class action

pursuant to Fed.R.Civ.P. 23 and case law thereunder.

34.     **Numerosity:** The members of the Classes are so numerous that joinder of all

members is impracticable. Plaintiff reasonably believes that the Classes are comprised of tens of thousands of consumers throughout the United States.

35.   **Commonality:** Common questions of law and fact exist as to all members of the Classes. These common questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

- whether Defendants' claims regarding the Red Bull branded energy drinks are deceptive or misleading;

- whether Defendants engaged in false or misleading advertising;

- whether Defendants' conduct as alleged herein violates the New York Deceptive Acts and Practices Act and/or other States' unfair trade practices acts;

- whether Defendants' conduct as alleged herein constitutes a breach of warranty;

- whether Defendants' conduct as alleged herein constitutes unjust enrichment;

- whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

- whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

These and other questions of law or fact which are common to the members of the Classes and predominate over any questions affecting only individual members of the Class.

36.   **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes, as all Class members are similarly affected by Defendants' wrongful conduct. Plaintiff, like other members of the Classes, purchased the Red Bull branded energy drinks after exposure to the same material misrepresentations and/or omissions appearing on the product packaging and on or in Defendants' marketing and advertising, and received a product that was not as represented. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Classes.

37.     **Adequacy:** Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class.  Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

38.     Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions.    Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class.

39.     This suit may be maintained as a class action under Fed.R.Civ.Pro. 23(b)(2) because Defendants have acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief.  Specifically, injunctive relief is necessary and appropriate to require Defendants to: (i) discontinue advertising, marketing, packaging and otherwise representing the Red Bull branded energy drinks as superior; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to their prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of the Red Bull branded energy drinks, including without limitation, the placement of corrective advertising and providing written notice to the public.

40.     In addition, this suit may be maintained as a class action under Fed.R.Civ.Pro. 23 (b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by

Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents no management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**Breach of Express Warranty**
**(Asserted on Behalf of the Nationwide Class and the New York Subclass)**

41.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–40 above as if fully set forth herein.

42.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time they purchased Defendants' Red Bull branded energy drinks. The terms of that contract include the promises and affirmations of fact made by Defendants on the labels of Defendants' Red Bull branded energy drinks and through the advertising and marketing campaign, as alleged above. The Red Bull branded energy drinks' labeling and advertising constitute express warranties, are part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Classes, on the one hand, and Defendants, on the other.

43.     Alternatively, privity was established between Defendants and Plaintiff and Class Members because Defendants, and/or its agents, were substantially, if not completely responsible for directly promoting and marketing Defendants' Red Bull branded energy drinks to Plaintiff and Class Members and Plaintiff and Class Members were directly promoted to and marketed to

by Defendants prior to purchasing Defendants' Red Bull branded energy drinks, resulting in the purchase of Defendants' Red Bull branded energy drinks by Plaintiff and Class Members. By virtue of this direct promotion and marketing to Plaintiff and Class Members, Defendants directly made an express warranty of the Red Bull branded energy drinks' attributes and benefits to Plaintiff and Class Members.

44. All conditions precedent to Defendants' liability under the warranty have been performed by Plaintiff and the Classes.

45. Defendants breached the terms of the express warranty by not providing a product that provided the benefits promised. The statements made by Defendant that warranted Defendants' claims of the Red Bull branded energy drinks having a superior nature, attributes and benefits were not "puffery" or mere opinion — they were statements and affirmations of specific benefits and superior performance over alternative and lower priced sources of "energy", allegedly based on scientific study.

46. Plaintiffs and Class Members relied on these representations by Defendants in purchasing Red Bull branded energy drinks instead of less expensive, but equally or more effective alternative sources for caffeine.

47. As a result of Defendants' breach of warranty, Plaintiff and the Classes have been damaged in the amount of the purchase price of Defendants' Red Bull branded energy drinks they purchased, and have suffered other damages to be determined by proof at trial.

## COUNT II
### Unjust Enrichment
### (Asserted on Behalf of the Nationwide Class and New York Subclass)

48. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–40 above as if fully set forth herein.

13

49.     This claim is asserted in the alternative on behalf of Plaintiff and Class members to the extent that any contracts do not govern the entirety of the subject matter of the dispute with Defendants.

50.     Plaintiff and Class members conferred a tangible economic benefit upon Defendants by purchasing the Red Bull branded energy drinks.  Plaintiff and Class members would have expected remuneration from Defendants at the time this benefit was conferred had they known that the Red Bull branded energy drinks did not perform as promised and have been widely criticized by government officials and scientists.

51.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and Class members.

52.     It would be inequitable for Defendants to retain the profits, benefits and other compensation obtained by its wrongful conduct in marketing and selling of the Red Bull branded energy drinks.

53.     Plaintiff, on behalf of himself and Class members, seeks restitution from Defendants, and an order of this Court disgorging all profits, benefits and other compensation obtained by Defendants from their wrongful conduct.

**COUNT III**
**(Violations of New York Deceptive Acts and Practices Act and Various Consumer
Protection Acts of Other States)**

54.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–45 above as if fully set forth herein.

55.     This is a claim for relief under the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349 and 350, as well as the various Consumer Protection Acts of the jurisdictions in which Class Members are present and purchased Red Bull branded energy

drinks, including but not limited to:

a.   Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.;*

b.   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*

c.   Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq.;*

d.   California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*

e.   Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.;*

f.   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42- 110a, *et seq.;*

g.   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

h.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.;*

i.   Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et seq.;*

j.   Georgia Fair Business Practices Act, §10-1-390 *et seq.;*

k.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.;*

l.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

n.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.;*

q.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and

Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.   Michigan Consumer Protection Act, §§ 445.901, *et seq.;*

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

u.   Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

x.   Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.;*

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

z.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:l, *etseq.;*

aa.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

bb.   New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

cc.   North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

dd.   Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109:4-3-02, 109:4-3-03, and 109:4-3-10;

ee.   Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

ff.   Oregon Unfair Trade Practices Act, Ore. Rev. Stat § 646.608(e) &(g);

gg.   Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

hh.  South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

ii.  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

jj.  Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.;*

kk.  Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

ll.  Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.;*

mm.  West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

nn.  Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

("Consumer Protection Acts").

56.  The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of Red Bull branded energy drinks constitute violation of the provisions of the New York Deceptive Acts and Practices Act and the various Consumer Protection Acts.

62.  The Defendants' unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the Class and Subclass acting reasonably in their reliance on defendant's acts and practices, and to their detriment.

63.  The Defendants engaged in the unconscionable, unfair, and deceptive acts or practices set forth in this Complaint in the conduct of trade or commerce.

64.  The Defendants' misrepresentations or omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect

the purchasing decisions or conduct of consumers, including Plaintiff and Class Members regarding Defendants' products.

65.     The Defendants' business practice, in its advertising, marketing, packaging, labeling and sales of its Red Bull branded energy drinks as unique and superior products justifying substantially higher prices over alternative sources of "energy," such as coffee, is an unconscionable, unfair, and deceptive act or practice, in violation of the New York Deceptive Acts and Practices Act (and other Consumer Protection Acts), in that it (1) offends established public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and/or (3) is substantially injurious and caused actual damages to consumers, including Plaintiff and Class Members who purchased Defendants' Red Bull branded energy drinks because of Defendants' representations and conduct.

66.     Plaintiff and Class Members have suffered actual damages as a result of Defendants' violation of the New York Deceptive Acts and Practices Act and the various Consumer Protection Acts and are entitled to relief.

67.     As a direct and proximate cause of Defendants' violations of the New York Deceptive Acts and Practices Act and the various Consumer Protection Acts, Plaintiff and Class Members have incurred harm and damages as described herein, and are entitled to recover for those damages, including but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law, and the various Consumer Protection Acts:

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all members of the Classes defined herein, prays for judgment as follows:

a.  Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Classes and her counsel as Class counsel;

b.  A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (i) discontinue advertising, marketing, packaging and otherwise representing Red Bull branded energy drinks as having benefits that they do not have; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to the prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Red Bull branded energy drinks, including without limitation, the placement of corrective advertising and providing written notice to the public;

c.  An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Classes and to restore to the Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false advertising;

d.  Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

e.  Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

f.  Statutory pre-judgment and post-judgment interest on any amounts;

g.  Reasonable attorneys' fees as may be allowable under applicable law;

h.  Costs of this suit; and

i.  Such other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  January 15, 2013

Respectfully Submitted,

MORELLI ALTERS RATNER (NEW YORK)
950 Third Avenue
11th Floor
New York, New York  10022
Telephone:     (212) 751-9800
Facsimile:      (212) 751-0046

By: _____
Benedict P. Morelli
bmorelli@morellialters.com
S.D.N.Y. ID.: BP6597
David S. Ratner
dratner@morellialters.com
S.D.N.Y ID: DR7758
Adam Deutsch
adeutsch@morellialters.com
S.D.N.Y. ID: AD8836

MORELLI ALTERS RATNER (MIAMI)
Miami Design District
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone:     (305) 571-8550
Facsimile:      (305) 571-8558

Jeremy W. Alters
jeremy@alterslaw.com
Florida Bar No.: 111790
Matthew T. Moore
matthew@alterslaw.com
Florida Bar No.: 70034