BENJAMIN CAREATHERS,
individually, and on behalf of
all others similarly situated,

                        Plaintiff,

v.

RED BULL NORTH AMERICA, INC., a
California corporation,

                        Defendant.

                                  /

**CASE NO. 1:13-CV-0369-VM**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Benjamin Careathers ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, by and through his undersigned attorneys, brings this action, on behalf of himself and a Nationwide Class and New York Subclass of all other similarly situated persons, against Defendant, RED BULL NORTH AMERICA, INC., a California corporation, (hereinafter "Red Bull. N.A." or "Defendant" or "Red Bull"), and, except for information based on his own personal knowledge, alleges on information and belief based on the investigation conducted by his counsel, and facts that are a matter of public record, as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action individually and on behalf of a proposed class and subclass ("Class" or "Classes"), as more fully defined below, of similarly situated consumers, nationwide and in New York, seeking to redress the pervasive pattern of deceptive, false and otherwise improper advertising, sales and marketing practices that Red Bull N.A. has engaged in and continues to engage in with regard to its "Red Bull" branded energy drinks. As more fully

1

alleged herein, Defendant's schemes or artifices to deceive and mislead Plaintiff and other members of the proposed Classes have consisted of systemic and continuing practices of disseminating false and misleading information via television commercials, Internet websites and postings, blast emails, radio media, blogs, video news releases, promotional events, advertisements, and the packaging of Red Bull energy drinks, all of which is intended to induce unsuspecting consumers, including Plaintiff and other members of the proposed Classes, into purchasing, at a premium price, billions of dollars worth of Red Bull energy drinks, which are distributed marketed, advertised and/or sold by Red Bull N.A..

2.      Red Bull N.A. preys upon consumers by promising that, among other things, "Red Bull gives you wings," and that it "vitalizes body and mind," by providing a mixture of ingredients that, when ingested, significantly improve, in a superior manner, a consumer's physiological and mental performance.      Yet, Red Bull provides nothing superior for the consumer's physiological and mental performance that cannot be had from a simple cup of coffee or caffeine pill.

3.      Red Bull N.A. bases its claims upon and touts numerous scientific studies on its web site that they claim demonstrate the superior nature of Red Bull branded energy drinks over simpler (and what would be less expensive) caffeine only products.    (*See, e.g.,* Exhibit A, *available at* http://www.redbullusa.com/cs/RedBull/testvideos/RZ_RB_Sports2010_EDversion_f3_screen.pdf).

4.      Upon information and belief there is no genuine scientific research and there are no scientifically reliable studies in existence that support the extraordinary claims of Defendant, or that Red Bull branded energy drinks provide a superior benefit to a consumer. Red Bull N.A. knows or should know that there is no greater benefit to ingesting Red Bull energy drinks than

ingesting an equivalent dose of caffeine, and that its advertising and marketing practices would lead the reasonable consumer to believe that Red Bull is a superior source of energy to other alternatives. Moreover, Red Bull, N.A. has taken no meaningful steps to clear up consumer misconceptions regarding its Red Bull branded energy drinks.

## JURISDICTION, PARTIES AND VENUE

5.     Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1711, *et. seq.* The Plaintiff and the Defendant in this action are citizens of different states and the amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

6.     For the subclass, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

7.     Venue is proper in this District under 28 U.S.C. § 1391(a), (b), and (c) because  a substantial part of the events giving rise to these claims occurred in the Southern District of New York; Defendant and/or its agents are doing business in New York; and/or Defendant is otherwise subject to personal jurisdiction in this judicial district.

8.     This Court has personal jurisdiction over the Defendant pursuant to New York CPLR §302(a)(1) because the Defendant transacts business within the state and/or contracts to supply goods or services in the state.  Personal jurisdiction is also appropriate pursuant to New York CPLR §302 (a)(2) because Defendant committed tortious acts within the State of New York.

## PLAINTIFF

9.     For purposes of clarity, the Plaintiff is asserting claims on behalf of all consumers of Red Bull branded energy drinks who do not appear herein as named Plaintiffs.

10.    Plaintiff Benjamin Careathers is a resident of the Bronx, Bronx County, New York, who has been purchasing and ingesting Defendant's Red Bull branded energy drinks since approximately 2002.   Plaintiff became aware of Red Bull, N.A.'s deceptive practices in early 2013 when the *New York Times* published an article by Barry Meier, titled "Energy Drinks Promise Edge, but Experts Say Proof is Scant."  (Further discussed below.)  Reading the article led to further research on the subject.

## DEFENDANT

11.    Defendant RED BULL NORTH AMERICA, INC. is a California corporation with its principal place of business in Santa Monica, California, and is a wholly owned subsidiary of Red Bull GmbH of Austria, and is responsible for distribution, sales and marketing of Red Bull branded energy drinks in the United States.

## GENERAL ALLEGATIONS REGARDING RED BULL BRANDED ENERGY DRINKS

12.    In today's world, members of the general public are in need of and are perceived as being in need of products that provide boosts of energy to cope with the demands and stresses of daily job, family and social life.  While a simple cup of coffee, or other source of caffeine, has for generations been seen as way to "get the day going," stimulate energy or provide relief from being fatigued, in recent years a new category of beverages, commonly referred to as "energy drinks," has come to the market and fought for market share by marketing and promoting themselves as superior sources of energy and ways to enhance mental and physical performance because of unique blends of ingredients or additional ingredients beyond caffeine.  Red Bull branded energy drinks, believed to be the market leader in the United States and throughout the world, is such a product.  However, it is now coming to light that such products do not provide any superior benefits over just ingesting caffeine, and certainly do not justify premium prices.

13. In the 1980s Red Bull branded energy drinks were founded on a tonic originally created in Thailand known as "Krating Daeng" (which translates to Red Bull). Re-formulated for western tastes, Red Bull was introduced in Europe in a carbonated "functional beverage" format beginning in 1987 and was introduced in the United States in 1996–97. It is currently sold throughout the United States in three main varieties: Red Bull Energy Drink, Red Bull Sugar Free and Red Bull Total Zero. Red Bull Energy Drink contains caffeine, taurine, glucuronolactone, B vitamins, sucrose, and glucose. Red Bull Sugar Free and Red Bull Total Zero remove sugars, and all carbohydryates, respectively, from the original formulation. Defendant also selectively markets a line of Red Bull "Editions" with popular flavorings added to the original Red Bull formulation in key markets.

14. Red Bull has spent over two billion dollars marketing its products in the United States since its launch here in 1996. As recently as 2009 it was spending $364 Million per year on advertising and marketing in the U.S. The key to Red Bull's success in the U.S. is its unique brand image and marketing, and the brand is often credited with being responsible for the explosive growth of the energy drink category. Since 1996 over four billion units of Red Bull branded energy drinks have been sold in the United States through various retail outlets.

15. The Defendant's prodigious advertising, marketing and promotional spending has been used to mislead customers into believing that Red Bull is a superior product, worthy of a premium price, and has the ability to "give you wings" and provide energy and vitality. Red Bull states that because of its "unique combination of high quality ingredients Red Bull Energy Drink vitalizes body and mind."

16. Red Bull's cans expressly promise that the product "Vitalizes body and mind." They also prominently state that Red Bull contains Taurine, an ingredient promoted as providing

extra stimulation, although scientific literature strongly questions Taurine's benefits.

17.    Red Bull television advertisements, promotional videos, social media messages and marketing materials expressly promise that "Red Bull Gives You Wings," and further promote the message that it vitalizes body and mind and that it improves performance and mental acuity, such that a reasonable consumer would be led to believe that Red Bull branded energy drinks are a superior way for a consumer to get energy, thereby misleading consumers that it is a superior product of a superior nature.

18.    Plaintiff was lured into becoming a consumer of Red Bull by its marketing message, delivered on its packaging, in its advertisements, through its promotional events, and on its web site.  Plaintiff has regularly purchased and consumed Red Bull branded energy drinks because of Defendant's marketing message and themes.

19.    However, no matter what medium Red Bull N.A. has used to deliver its marketing message, the theme has been the same, such that any one of these marketing and promotional mediums has influence over the consumer, including Plaintiff and Class Members, such that a consumer would make the decision to buy the product in the first place, or to pay a premium for it over less expensive sources of "energy" due to its purported superior nature.

20.    Red Bull N.A. delivers the same or substantially similar marketing and advertising claims and themes for all of its Red Bull branded energy drinks sold in the United States, with only slight variations to account for sugar free, zero calorie, or flavor enhanced varieties.  Thus, consumers, such as Plaintiff and Class Members have been misled and deceived in the same manner no matter which of the varieties or sizes he or she buys.

21.    Red Bull N.A. has stated on its web site that "[n]umerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink:"

- Increases performance;

- Increases concentration and reaction speed;

- Improves vigilance;

- Stimulates Metabolism; and

- Makes you feel more energetic and thus improves your overall well-being.

Defendant has recently revamped its web site since this lawsuit was initially filed to sanitize it of some of the misleading statements and pervasive links and references to "scientific studies" as stated above and depicted below. However, through the process of discovery Plaintiff will demonstrate that Red Bull N.A. has pervasively relied on the alleged promises, statements, information and tactics in the marketing of its products, such as the below:





# RED BULL ENERGY DRINK

Red Bull Energy Drink is a functional beverage. Thanks to a unique combination of high quality ingredients Red Bull Energy Drink vitalizes body and mind.

Numerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink:

▸ Increases performance

▸ Increases concentration and reaction speed

▸ Improves vigilance

▸ Stimulates metabolism

▸ Makes you feel more energetic and thus improves your overall well-being

Red Bull Energy Drink has been developed for people who want to have a clear and focused mind, perform physically, are dynamic and performance-oriented whilst also balancing this with a fun and active lifestyle.

In short, Red Bull gives wings to people who want to be mentally and physically active and have a zest for life.

**INGREDIENTS** ▸

**WHEN TO DRINK** ▸

---



ingredients Red Bull Energy Drink vitalizes body and mind.

Numerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink:

▾ Increases performance

**Extensive studies have concluded that Red Bull increases performance, which is proven in the following papers:**

1. Ivy J.L. et al., Cycling time trial performance improved by ingestion of a caffeine energy drink, International Journal of Sports Nutrition and Exercise Metabolism 19, 61-78. (2009)
2. Alford C. et al., The Effects of Red Bull Energy Drink on Human Performance and Mood, Amino Acids 21, 2, 139 – 150 (2001)
3. Geiss K.R. et al., The effect of a taurine-containing drink on performance in 10 endurance -athletes, Amino Acids 7, 1. 45-56 (1994)
4. Baum M., Weiß M., The influence of a taurine containing drink on cardiac parameters before and after exercise measured by echocardiography, Amino Acids 20, 1, 75-82 (2001)

✖

▸ Increases concentration and reaction speed

▸ Improves vigilance

▸ Stimulates metabolism

▸ Makes you feel more energetic and thus improves your overall well-being

Red Bull Energy Drink has been developed for people who want to have a clear and focused mind, perform physically, are dynamic and performance-oriented whilst also balancing this with a fun and active

**INGREDIENTS** ▸

**WHEN TO DRINK** ▸

**AVAILABLE SIZES** ▸



**INGREDIENTS** ▶

**WHEN TO DRINK** ▶

**AVAILABLE SIZES** ▶

ingredients Red Bull Energy Drink vitalizes body and mind.

Numerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink:

▶ Increases performance

▼ Increases concentration and reaction speed

A variety of studies have proven that Red Bull increases concentration and reaction speed:
1. Mets MA, Ketzer S, Blom C, van Gerven MH, van Willigenburg GM, Olivier B, Verster JC, Positive effects of Red Bull Energy Drink on driving performance during prolonged driving, Psychopharmacology 2010, DOI 10.1007/s00213-010-2078-2
2. Barthel T. et al., Readiness potential in different states of physical activation and after ingestion of taurine and/or caffeine containing drinks, Amino Acids 20, 1, 63-73 (2001)
3. Horne J.A., Reyner L.A., Beneficial effects of an 'energy drink' given to sleepy drivers, Amino Acids 20, 1, 83-89 (2001)
4. Reyner LA and Horne JA, Efficacy of a 'functional energy drink' in counteracting driver sleepiness, Physiology & Behaviour 75, 331 - 335 (2002)
5. Seidl R, et al, A taurine- and caffeine-containing drink stimulates cognitive performance and well-being, Amino Acids 19, 3/4, 635-642 (2000)
6. Alford C. et al., The Effects of Red Bull Energy Drink on Human Performance and Mood, Amino Acids 21, 2, 139 – 150 (2001)

✖

▶ Improves vigilance

▶ Stimulates metabolism



**INGREDIENTS** ▶

**WHEN TO DRINK** ▶

**AVAILABLE SIZES** ▶

Numerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink:

▶ Increases performance

▶ Increases concentration and reaction speed

▼ Improves vigilance

Cited below are some relevant studies that show Red Bull improves vigilance:
1. Mets MA, Ketzer S, Blom C, van Gerven MH, van Willigenburg GM, Olivier B, Verster JC, Positive effects of Red Bull Energy Drink on driving performance during prolonged driving, Psychopharmacology 2010, DOI 10.1007/s00213-010-2078-2
2. Barthel T. et al., Readiness potential in different states of physical activation and after ingestion of taurine and/or caffeine containing drinks, Amino Acids 20, 1, 63-73 (2001)
3. Horne J.A., Reyner L.A., Beneficial effects of an 'energy drink' given to sleepy drivers, Amino Acids 20, 1, 83-89 (2001)
4. Reyner LA and Horne JA, Efficacy of a 'functional energy drink' in counteracting driver sleepiness, Physiology & Behaviour 75, 331 - 335 (2002)
5. Seidl R, et al, A taurine- and caffeine-containing drink stimulates cognitive performance and well-being, Amino Acids 19, 3/4, 635-642 (2000)
6. Alford C. et al., The Effects of Red Bull Energy Drink on Human Performance and Mood, Amino Acids 21, 2, 139 – 150 (2001)

✖

▶ Stimulates metabolism

▶ Makes you feel more energetic and thus improves your overall well-being



**INGREDIENTS** ▶

**WHEN TO DRINK** ▶

**AVAILABLE SIZES** ▶

▸ Improves vigilance

▾ Stimulates metabolism

**A range of studies have verified that Red Bull stimulates metabolism:**

1. Barthel T. et al., Readiness potential in different states of physical activation and after ingestion of taurine and/or caffeine containing drinks, Amino Acids 20, 1. 63-73 (2001)
2. Horne J.A., Reyner L.A., Beneficial effects of an 'energy drink' given to sleepy drivers, Amino Acids 20, 1. 83-89 (2001)
3. Ivy J.L. et al., Cycling time trial performance improved by ingestion of a caffeine energy drink, International Journal of Sports Nutrition and Exercise Metabolism 19. 61-78. (2009)
4. Reyner LA and Horne JA, Efficacy of a 'functional energy drink' in counteracting driver sleepiness, Physiology & Behaviour 75. 331 - 335 (2002)
5. Seidl R. et al, A taurine- and caffeine-containing drink stimulates cognitive performance and well-being, Amino Acids 19, 3/4. 635-642 (2000)
6. Alford C. et al., The Effects of Red Bull Energy Drink on Human Performance and Mood, Amino Acids 21, 2. 139 – 150 (2001)
7. Geiss K.R. et al., The effect of a taurine-containing drink on performance in 10 endurance -athletes, Amino Acids 7, 1. 45-56 (1994)
8. Baum M., Weiß M., The influence of a taurine containing drink on cardiac parameters before and after exercise measured by echocardiography, Amino Acids 20, 1, 75-82 (2001)

✖

▸ Makes you feel more energetic and thus improves your overall well-being

Red Bull Energy Drink has been developed for people who want to have a clear and focused mind, perform physically, are dynamic and performance-oriented whilst also balancing this with a fun and active



**INGREDIENTS** ▶

**WHEN TO DRINK** ▶

**AVAILABLE SIZES** ▶

Drink.

▸ Increases performance

▸ Increases concentration and reaction speed

▸ Improves vigilance

▾ Stimulates metabolism

▾ Makes you feel more energetic and thus improves your overall well-being

**This has been validated in the following papers:**

1. Seidl R. et al, A taurine- and caffeine-containing drink stimulates cognitive performance and well-being, Amino Acids 19, 3/4. 635-642 (2000)
2. Alford C. et al., The Effects of Red Bull Energy Drink on Human Performance and Mood, Amino Acids 21, 2. 139 – 150 (2001)

✖

Red Bull Energy Drink has been developed for people who want to have a clear and focused mind, perform physically, are dynamic and performance-oriented whilst also balancing this with a fun and active lifestyle.

In short, Red Bull gives wings to people who want to be mentally and physically active and have a zest for life.

22.    Although Defendant has pointed to purported scientific studies and research to back up its claims that the unique blend of ingredients is responsible for the claimed superior benefits of drinking Red Bull, the well-regarded scientific journal *Nutrition Reviews* published an evaluation of various studies of energy drink ingredients and their efficacy and found that:

With the exception of some weak evidence for glucose and guarana extract, there

is an overwhelming lack of evidence to substantiate claims that components of [energy drinks], **other than caffeine**, contribute to the enhancement of physical or cognitive performance. Tom M. McLellan, et al., "Do Energy Drinks Contain Active Components Other Than Caffeine?", *Nutrition Reviews*, Vol. 70, pp. 730–44 (2012) (emphasis supplied). (Exhibit B).

23. Indeed, Exhibit B to this Complaint is an extensive 35 page article that has been available for download from the Red Bull N.A. web site and uses a combination of celebrity sports endorsements and citations to purported reliable studies where Red Bull energy drink provided enhanced performance and energy over a placebo or control drink that contained only carbohydrates and caffeine, such that "Red Bull Makes Champions." (*See, e.g.*, Exhibit A, pp. 8, 15). Upon information and belief, a review of the studies cited will demonstrate that they are unreliable and/or misleading for the promises and statements made by Defendant.

24. As an example, the 35 page article touts that Red Bull Energy Drink improves "endurance performance," by implying that consumption of Red Bull Energy Drink prior to athletic performance will improve athletic performance. However, one foundation of that premise is a "scientific study" that only compared ingestion of Red Bull Energy Drink to ingestion of a flavored placebo containing none of the Red Bull Energy Drink ingredients. Thus, nothing in that "scientific study" supports the premise that Red Bull's ingredients do anything more for athletic performance than just caffeine would do. Other studies cited in the article are of the type criticized in *Nutrition Reviews*, where "[t]he human studies that are often cited to support the addition of taurine to an [energy drink] have been improperly designed and lack[] the appropriate dependent measures to test the stated hypothesis." *Nutrition Reviews* at 734. Indeed, the *Nutrition Reviews* 2012 article concludes with this sentence: "At this time, there is little, if any, solid evidence to support an increase in either physical or mental 'energy' due to the consumption of these drinks, except for the increases attributable to the caffeine in these

products." *Id.* at 741.

25.   The *New York Times* recently published an article titled "Energy Drinks Promise Edge, but Experts Say Proof is Scant" (Barry Meier, January 1, 2013), citing widespread scientific and governmental criticism of the notion that energy drinks provide any more benefit than the average dose of caffeine consumed in a cup of coffee. (Exhibit C). The article specifically mentioned misleading claims by Red Bull and further notes that Massachusetts congressman Edward J. Markey has called for a U.S. government investigation into the energy drink industry's marketing claims.

26.   Indeed, the European Food Safety Authority concluded in 2011 that there is a lack of scientific support for the claimed benefits of taurine, a key ingredient of Red Bull branded energy drinks, stating it could find no cause and effect relationship between taurine and its purported benefits. European Food Safety Authority, *EFSA Journal 2011*; 9(4):2035.

27.   Such deceptive conduct and practices mean that Defendant's advertising and marketing is not just "puffery," but is instead deceptive, false and misleading, and is therefore actionable.

28.   The *New York Times* article pointed out that energy drinks such as Red Bull are really just "caffeine delivery systems" and manufacturers and distributors such as Red Bull do not want to claim their product is the equivalent to a cup of coffee or a "NoDoz" tablet "because that is not a very sexy sales message."

29.   Defendant takes advantage of every marketing avenue the modern age has opened to it in order to ensure that its false and deceptive marketing message permeates the general consumer consciousness.  Defendant uses television advertising, internet marketing, and social media, as well as celebrity sports figure endorsements, and glossy print brochures.  Defendant

sponsors events such as Formula One racing and traditional and extreme sports such as snowboarding and skateboarding. Defendant has even created their own "sports" such as the Red Bull Flugtag, where contestants create their own "flying machine" and try to fly it off, for example, a pier into a body of water to underscore the message "Red Bull gives you wings." Defendant also extensively sponsors events in the entertainment, music and international DJ scene. But no matter which marketing avenue reaches a consumer, Defendant drives home the same false and deceptive claims and themes of superior results from drinking Red Bull branded energy drinks through all of the advertising and promotional mediums.

30. However, even though there is a lack of genuine scientific support for a claim that Red Bull branded energy drinks provide any more benefit to a consumer than a cup of coffee, Red Bull N.A. persistently and pervasively markets its product as a superior source of "energy," worthy of a premium price. Defendant knows or should know that its marketing and advertising will lead the reasonable consumer to believe that Red Bull branded energy drinks are superior to other ways of getting energy, such as a cup of coffee or other sources of caffeine, and to then pay more than he or she should have to for a substantially similar energy boost.

31. An 8.4 ounce can of Red Bull Energy Drink costs $2.19 or more and contains 80 mg of caffeine, whereas a tablet of regular strength NoDoz costs approximately 30 cents and contains 100 mg of caffeine. A 7 ounce cup of drip coffee contains approximately 115 to 175 mg of caffeine, depending on the blend. Even a 12 ounce serving of Starbuck's coffee costs $1.85 and would contain far more caffeine than a regular serving of Red Bull.

32. Thus, Red Bull delivers less of the ingredient (caffeine) scientific studies maintain provides the benefits claimed by Red Bull branded energy drinks for a substantially higher price than consumers could spend on alternative sources of caffeine.

33.     As a result of the foregoing, Defendant's advertising and promotion regarding Red Bull branded energy drinks is deceptive and misleading.  Because of Defendant's deceptive and misleading tactics, Plaintiffs and other members of the proposed Classes were and have been induced to purchase and continue to purchase Red Bull branded energy drinks, and pay an unworthy premium price for them — purchasing decisions that otherwise would not have been made had Plaintiff and Class Members been aware of the truth about Defendant's Red Bull branded energy drinks.

34.     Defendant was in a superior position to know and did know that its claims and advertisements were misleading, deceptive and false and they failed to inform consumers that its Red Bull branded energy drinks cannot perform as advertised and promised.

35.     Instead, Defendant allows/allowed its deceptive and misleading marketing to permeate the consumer advertising consciousness and perpetuate Defendant's false claims and promises.

36.     Because of such deceptive practices and conduct, Defendant, 1) has been able to sell more of its product than it otherwise would have and achieve substantial market share and sales in the United States; and 2) is able to charge and get a substantial premium for its products over readily available and much lower priced sources of "energy," such as caffeine, that provide the same or substantially similar results.  Thus, Defendant reaps profits on products where reasonable consumers have been induced to buy them because of a perceived superior nature, and also to pay an unwarranted, substantial premium.

37.     All conditions precedent necessary for the filing of this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this suit as a class action on behalf of himself and on behalf of a Nationwide Class and New York Subclass of other similarly situated persons pursuant to Fed.R.Civ.P.23(a), 23(b)(2), and/or 23(b)(3).  Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or narrowed.  The proposed Classes are defined as follows:

> **Nationwide Class**: All persons who purchased Defendant's Red Bull branded energy drinks within the applicable statutory limitations period, including the period following the filing date of this action.
>
> **New York Subclass**: All residents of the State of New York who purchased Defendant's Red Bull branded energy drinks within the applicable statutory limitations period, including the period following the filing date of this action.

39.     Excluded from the Classes are: (1) Defendant, Defendant's subsidiaries, affiliates, officers, directors, assigns and successors, and any entity which Defendant has a controlling interest; (2) the Judge to whom this case is assigned and any member of the judge's immediate family; (3) anyone who purchased the Red Bull branded energy drinks solely for the purpose of resale; and (4) anyone asserting claims for personal injury.  Plaintiff reserves the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

40.     This action has been brought and may properly be maintained as a class action pursuant to Fed.R.Civ.P. 23 and case law thereunder.

41.     **Numerosity:** The members of the Classes are so numerous that joinder of all members is impracticable.  Plaintiff reasonably believes that the Classes are comprised of

hundreds of thousands, if not millions, of consumers throughout the United States and New York.

42. **Commonality:** Common questions of law and fact exist as to all members of the Classes. These common questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

- whether Defendant's claims regarding the Red Bull branded energy drinks are deceptive or misleading;

- whether Defendant engaged in false or misleading advertising;

- whether Defendant's conduct as alleged herein violates the New York Deceptive Acts and Practices Act and/or other States' unfair trade practices acts;

- whether Defendant's conduct as alleged herein constitutes a breach of warranty;

- whether Defendant's conduct as alleged herein constitutes unjust enrichment;

- whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

- whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

These and other questions of law or fact which are common to the members of the Classes and predominate over any questions affecting only individual members of the Class.

43. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes, as all Class members are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Classes, purchased the Red Bull branded energy drinks after exposure to the same material misrepresentations and/or omissions appearing on the product packaging and on or in Defendant's marketing and advertising, and received a product that was not as represented. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Classes.

44.    **Adequacy:** Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses.

45.    Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class.

46.    This suit may be maintained as a class action under Fed.R.Civ.P. 23(b)(2) because Defendant has acted, and/or refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing the Red Bull branded energy drinks as superior; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to their prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of the Red Bull branded energy drinks, including without limitation, the placement of corrective advertising and providing written notice to the public.

47.    In addition, this suit may be maintained as a class action under Fed.R.Civ.P. 23 (b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by

Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents no management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

<u>COUNT I</u>
**Breach of Express Warranty**
**(Asserted on Behalf of the Nationwide Class and the New York Subclass)**

48.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–47 above as if fully set forth herein.

49.    Plaintiff and Class Members were aware of and/or understood the claims made on the Red Bull branded energy drink packaging, as set forth herein, and/or Defendant's marketing and advertising claims prior to purchasing the product.

50.    Plaintiff, and each member of the Class, formed a contract with Defendant at the time they purchased Defendant's Red Bull branded energy drinks. The terms of that contract include the promises and affirmations of fact made by Defendant on the labels of Defendant's Red Bull branded energy drinks and through the advertising and marketing campaign, as alleged above. The Red Bull branded energy drinks' labeling and advertising constitute express warranties, are part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Classes, on the one hand, and Defendant, on the other.

51.    Alternatively, privity was established between Defendant and Plaintiff and Class

Members because Defendant, and/or its agents, were substantially, if not completely responsible for directly promoting and marketing Defendant's Red Bull branded energy drinks to Plaintiff and Class Members and Plaintiff and Class Members were directly promoted to and marketed to by Defendant prior to purchasing Defendant's Red Bull branded energy drinks, resulting in the purchase of Defendant's Red Bull branded energy drinks by Plaintiff and Class Members. By virtue of this direct promotion and marketing to Plaintiff and Class Members, Defendant directly made an express warranty of the Red Bull branded energy drinks' attributes and benefits to Plaintiff and Class Members.

52. All conditions precedent to Defendant's liability under the warranty claim have been performed by Plaintiff and the Classes.

53. Defendant breached the terms of the express warranty by not providing a product that provided or conformed to the superior benefits promised. The statements made by Defendant that warranted Defendant's claims of the Red Bull branded energy drinks having a superior nature, attributes and benefits were not "puffery" or mere opinion — they were statements and affirmations based on specific benefits and superior performance over alternative and lower priced sources of "energy", allegedly based on scientific study.

54. Plaintiffs and Class Members relied on these representations by Defendant in purchasing Red Bull branded energy drinks in the first place and/or instead of less expensive, but equally or more effective alternative sources for caffeine.

55. As a result of Defendant's breach of warranty, Plaintiff and the Classes have been damaged in the amount of the purchase price of Defendant's Red Bull branded energy drinks they purchased, and have suffered other damages to be determined by proof at trial.

## COUNT II
### Unjust Enrichment
**(Asserted on Behalf of the Nationwide Class and New York Subclass)**

56.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–47 above as if fully set forth herein.

57.     This claim is asserted in the alternative on behalf of Plaintiff and Class members to the extent that any contracts do not govern the subject matter of the dispute with Defendant.

58.     Plaintiff and Class members conferred a tangible economic benefit upon Defendant by purchasing the Red Bull branded energy drinks.  Plaintiff and Class members would have expected remuneration from Defendant at the time this benefit was conferred had they known that the Red Bull branded energy drinks were not superior and did not perform as promised.

59.     Indeed, Red Bull branded energy drinks do not provide the superior benefits promised by Defendants.

60.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched at the expense of Plaintiff and Class members.

61.     It would be inequitable for Defendant to retain the profits, benefits and other compensation obtained by its wrongful conduct in the marketing and selling of the Red Bull branded energy drinks.

62.     Plaintiff, on behalf of himself and Class members, seeks restitution from Defendant, and an order of this Court disgorging all profits, benefits and other compensation obtained by Defendant from their wrongful conduct.

## COUNT III
### Violations of New York Deceptive Acts and Practices Act
### (Asserted on Behalf of the New York Subclass)

63.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–47 above as if fully set forth herein.

64.     This is a claim for relief under the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349 and 350.  Under the General Business Laws, section 349 states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful."   GBL § 349. Furthermore, section 350 reads that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  GBL § 350.

65.     Through its deceptive acts and practices (including omissions), Defendant has harmed the public at large, including Plaintiff and members of the New York Subclass, and such deceptive acts and practices were conducted through trade or commerce.

66.     Defendant's deceptive acts and practices, as alleged herein, are and were consumer oriented in that the Defendant is in the business of distributing, marketing and selling its Red Bull branded energy drinks to consumers, including Plaintiff and members of the New York Subclass.

67.     The Defendant's deceptive acts and practices (or omissions) as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Subclass regarding Defendant's products.

68.     As alleged herein, Defendant engaged in deceptive or materially misleading acts or

practices by, but not limited to, 1) marketing its products as superior products conferring superior benefits, or suggesting the same thematically in such a way as to mislead consumers to choose its products, or choose them over other sources of "energy" such as caffeine, when Defendant's products are not actually superior; and 2) marketing its products based on purported scientific studies that are either unreliable or do not actually prove what they say they prove.

69. The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including but not limited to, the knowing misrepresentation or failure to disclose the true nature of the characteristics, ingredients, standards and quality of Red Bull branded energy drinks also constitute violation of the provisions of the New York Deceptive Acts and Practices Act.

70. Thus, Defendant's advertising and marketing is false pursuant to GBL § 350.

71. Furthermore, the Defendant's deceptive acts and practices (and omissions), in its advertising, marketing, packaging, labeling and sales of its Red Bull branded energy drinks as unique and superior products to justify a substantially higher price over alternative sources of "energy," such as coffee, further violates GBL §§ 349 and 350.

72. The Defendant's false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiff and members of the Class and Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

73. Plaintiff and New York Subclass members have suffered actual damages as a result of Defendant's violations of GBL §§ 349 and 350 and are entitled to relief including, but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law.

## COUNT IV
### Violation of Other Consumer Protection Acts
### (Asserted on Behalf of Plaintiff and the National Class)

74.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–47 above as if fully set forth herein.

75.   The vast majority of states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions. By making false and deceptive claims as to the superior nature of Red Bull branded energy drink, Defendant has engaged, and continues to engage, in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed, but not limited to the below:

    a.    Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.;*

    b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*

    c.    Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq.;*

    d.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*

    e.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.;*

    f.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42- 110a, *et seq.;*

    g.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

    h.    District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.;*

    i.    Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et seq.;*

j.    Georgia Fair Business Practices Act, §10-1-390 *et seq.;*

k.    Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.;*

l.    Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

m.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

n.    Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

o.    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

p.    Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.;*

q.    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

r.    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

s.    Michigan Consumer Protection Act, §§ 445.901, *et seq.;*

t.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

u.    Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

v.    Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

w.    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

x.    Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.;*

y.    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

z.    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:l, *etseq.;*

aa.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

cc.    North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

dd.    Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109:4-3-02, 109:4-3-03, and 109:4-3-10;

ee.    Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

ff.    Oregon Unfair Trade Practices Act, Ore. Rev. Stat § 646.608(e) &(g);

gg.    Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

hh.    South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

ii.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

jj.    Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.;*

kk.    Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

ll.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.;*

mm.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

nn.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

("Consumer Protection Acts").

76.    The acts, practices, misrepresentations and omissions by Defendant, as described above, and Defendant's dissemination of deceptive and misleading labeling, advertising, marketing, and sales materials concerning its products, constitutes unfair competition and unfair

or deceptive acts or practices within the meaning of each of the above enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions.

77.     Defendant violated each of these statutes by making certain false, misleading, and/or deceptive promises regarding the superior nature, benefits and effects of its Red Bull branded energy drinks.

78.     The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the Class acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

79.     Plaintiff and the other Class Members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (a) Plaintiff and the other Class members were induced to purchase a product they would not have otherwise purchased had they known its true nature; and (b) Plaintiff and the other Class members were induced to pay substantially more for Red Bull branded energy drinks than they would have paid if their true characteristics had not been concealed or misrepresented.

80.     As a result of Defendant's violations of the foregoing state consumer protection statutes, Plaintiffs and the other Class members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and/or injunction relief and such additional relief as the Court may deem appropriate or to which Plaintiff and the Class members may be entitled.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all members of the Classes defined herein, prays for judgment as follows:

a. Certification of the Classes under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Classes and his counsel as Class counsel;

b. A temporary, preliminary and/or permanent order for injunctive relief requiring Defendant to: (i) discontinue advertising, marketing, packaging and otherwise representing Red Bull branded energy drinks as having benefits or a superior nature that they do not have; (ii) undertake an immediate public information campaign to inform members of the proposed Classes as to the prior practices; and (iii) to correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Red Bull branded energy drinks, including without limitation, the placement of corrective advertising and providing written notice to the public;

c. An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Classes and to restore to the Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false advertising;

d. Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

e.  Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

f.  Statutory pre-judgment and post-judgment interest on any amounts;

g.  Reasonable attorneys' fees as may be allowable under applicable law;

h.  Costs of this suit; and

i.  Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:  April 1, 2013

Respectfully Submitted,

MORELLI ALTERS RATNER (NEW YORK)
950 Third Avenue
11th Floor
New York, New York  10022
Telephone:     (212) 751-9800
Facsimile:      (212) 751-0046

By: /s Benedict P. Morelli
Benedict P. Morelli
bmorelli@morellilaw.com
S.D.N.Y. Bar ID: BP6597
David S. Ratner
dratner@morellilaw.com
S.D.N.Y Bar ID: DR7758
Adam Deutsch
adeutsch@morellilaw.com
S.D.N.Y. Bar ID: AD8836

MORELLI ALTERS RATNER (MIAMI)
Miami Design District
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone:     (305) 571-8550
Facsimile:      (305) 571-8558

Jeremy W. Alters
jeremy@alterslaw.com
Florida Bar No.: 111790
Matthew T. Moore
matthew@alterslaw.com
Florida Bar No.: 70034