**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| **BENJAMIN CAREATHERS,** | : | |
| **individually, and on behalf of all others** | : | |
| **similarly situated,** | : | **1:13-CV-0369 (KPF)** |
| | : | |
| **Plaintiff,** | : | **ECF Case** |
| | : | |
| - against - | : | **Electronically Filed** |
| | : | |
| **RED BULL NORTH AMERICA, INC.,** | : | |
| **a California corporation,** | : | |
| | : | |
| **Defendant.** | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - : 

| | | |
|---|---|---|
| **DAVID WOLF and MIGUEL** | : | |
| **ALMARAZ, individually and on behalf of** | : | |
| **others similarly situated,** | : | |
| | : | **1:13-cv-08008 (KPF)** |
| **Plaintiffs,** | : | |
| **v.** | : | |
| | : | |
| **RED BULL GMBH, a foreign company;** | : | |
| **RED BULL NORTH AMERICA, INC., a** | : | |
| **California corporation; and RED BULL** | : | |
| **DISTRIBUTION COMPANY, INC., a** | : | |
| **Delaware corporation,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Benedict P. Morelli
bmorelli@morellialters.com
David S. Ratner
dratner@morellialters.com
Adam Deutsch
adeutsch@morellialters.com
MORELLI ALTERS RATNER, LLP
777 Third Avenue, 31st Floor
New York, NY 10017

Jeremy W. Alters
jalters@morellialters.com
Matthew T. Moore
mmoore@morellialters.com
MORELLI ALTERS RATNER, LLP
Miami Design District
4141 Northeast 2nd Avenue, Suite 201
Miami, Florida 33137

*Attorneys for Plaintiff Benjamin Careathers*


Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

Frederic S. Fox
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

Justin B. Farar
KAPLAN FOX & KILSHEIMER LLP
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:   (310) 575-8697
jfarar@kaplanfox.com


*Attorneys for Plaintiffs David Wolf and
Miguel Almaraz*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................1

II.   BACKGROUND .......................................................................................4

     A.    The Pending Litigation ...................................................................4

     B.    Settlement Negotiations and Mediation..........................................6

III.  TERMS OF PROPOSED SETTLEMENT ...............................................6

     A.    Proposed Settlement Relief.............................................................7

          1.    Cash Reimbursement and Free Product................................7

          2.    Additional Distribution or *Cy Pres* Remedy.....................9

          3.    Injunctive Relief................................................................10

     B.    Attorneys' Fees and Expenses .....................................................10

     C.    Class Representative Incentive Awards.........................................11

     D.    Releases........................................................................................11

     E.    The Class Notice Program: Costs of Notice and Administration .........................12

IV.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL..........12

     A.    Legal Standard for Preliminary Approval.....................................13

     B.    The Settlement Is The Result of Good Faith, Arms' Length Negotiations By Well-Informed and Highly Experienced Counsel ...........................................15

     C.    The Proposed Settlement Falls Within the Range of Possible Approval...............16

          1.    Settlement Class Members Are Promptly Receiving Substantial Monetary and Non-Monetary Relief.......................................16

          2.    The Prompt Substantial Benefits For The Settlement Class Reflect A Favorable Outcome For Plaintiffs Given The Litigation Risks .............18

          3.    Comparable Settlement Terms Have Been Readily Approved.................19

V.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SETTLEMENT ...................................................21

A.    Proposed Class, Class Representatives, and Class Counsel ...................................22

B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)............22

    1.    Settlement Class Members Are Too Numerous to Be Joined...................23

    2.    Plaintiffs and the Settlement Class Share Common Legal and Factual Questions.......................................................................................23

    3.    Plaintiffs' Claims are Typical of the Settlement Class ............................24

    4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class.......................................................................................25

C.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b) ..........26

    1.    Common Questions of Law and Fact Predominate .................................26

    2.    Class Resolution of this Action is Superior to Other Methods of Adjudication............................................................................................26

VI.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ...........................27

A.    Legal Standard ......................................................................................................27

B.    The Notice Program Reasonably and Adequately Provides Notice To and Informs All Identifiable Settlement Class Members ............................................28

VII.    THE COURT SHOULD APPOINT MORELLI ALTERS RATNER, LLP AND KAPLAN FOX & KILSHEIMER LLP AS CLASS COUNSEL....................................29

VIII.    PROPOSED TIMETABLE .........................................................................................30

IX.    CONCLUSION............................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods. Inc. v. Windsor,*
521 U.S. 591 (1997) ...........................................................22, 26, 27

*Blessing v. Sirius XM Radio Inc.,*
507 Fed. App'x. 1 (2d Cir. 2012) ...................................................17

*Brown v. Kelly,*
609 F.3d 467 (2d Cir. 2010)............................................................24

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ...........................................................14

*Clark v. Ecolab Inc.,*
No. 07 Civ. 8623 (PAC), 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .........................14

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995)..............................................................23

*deMunecas v. Bold Food, LLC,*
No. 09 Civ. 00440 (DAB), 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .....................14

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006).............................................................21

*Dupler v. Costco Wholesale Corp.,*
705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..............................................17

*Dupler v. Costco Wholesale Corp.,*
249 F.R.D. 29 (E.D.N.Y. 2008)........................................................23

*Fishbein v. All Market, Inc.,*
No. 11-cv-5580-JPO (S.D.N.Y. Aug. 22, 2012).......................................19, 20

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43 (2d Cir. 2000)...............................................................14

*In Re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.,*
No. 4:08-md-01907 (E.D. Mo. Feb. 26, 2013) ....................................20

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.,*
909 F. Supp. 2d 259 (S.D.N.Y. 2012)...............................................16

*In re Drexel Burnham Lambert Grp.*, *Inc.*,
   960 F.2d 285 (2d Cir. 1992)..................................................................25

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................16

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................13, 23, 24

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................13

*In re Luxottica Group S.p.A. Secs. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................................13

*In re Marsh Erisa Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ...........................................................13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................14

*In re Nutella Marketing & Sales Practices Litig.*,
   No. 3:11-cv-01086 (D.N.J. July 30, 2012) .............................................20

*In re PaineWebber Ltd. P'Ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................15

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) ...............................................23, 24

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) .............................................................25

*In re Prudential Secs. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................21

*In re Take Two Interactive Secs. Litig.*,
   No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010)..........21

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..............................................................15

*Jacob v. Duane Reade, Inc.*,
    289 F.R.D. 408 (S.D.N.Y. 2013) ....................................................................25

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) ...........................................................................15

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002) .........................................................................26

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ......................................................................21

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
    659 F.3d 234 (2d Cir. 2011) ...........................................................................23

*Silver v. 31 Great Jones Rest.*,
    No. 11 Civ. 7442 (IMW) (DCF), 2013 WL 208918 (S.D.N.Y. Jan. 4, 2013) .................13

*Thompson v. Metropolitan Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ......................................................................17

*Tiro v. Public House Invs., LLC*,
    No. 11 Civ. 7679 (CM), 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ....................15, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................12, 14, 28

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910) .......................................................................................12

*Yuzary v. HSBC Bank USA, N.A.*,
    No. 12 Civ. 3693 (PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) .....................16

**STATUTES & OTHER AUTHORITIES**

28 U.S.C. § 1715 ....................................................................................................30

28 U.S.C. § 1746 ......................................................................................................7

**Page**

California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* ..............................5

California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ............................5

California Civil Code § 1542 ........................................................................................................12

Fed. R. Civ. P. 23(a) ........................................................................................................ *passim*

Fed. R. Civ. P. 23(b) ........................................................................................................ *passim*

Fed. R. Civ. P. 23(c) ......................................................................................................27, 28

Fed. R. Civ. P. 23(e) ......................................................................................................27

Fed. R. Civ. P. 23(g) ......................................................................................................29

Fed. R. Civ. P. 23(h) ......................................................................................................28

*Manual for Complex Litigation* § 21.312 (4th ed. 2005) ..............................................29

*Manual for Complex Litigation* § 21.632 (4th ed. 2005) ..............................................13

*Manual for Complex Litigation* § 21.633 (4th ed.,2005) ..........................................13, 29

*Manual for Complex Litigation* § 21.634 (4th ed. 2005) ..............................................29

*Manual for Complex Litigation* § 21.722 (4th ed. 2005) ..............................................29

N.Y. Gen. Bus. Law § 349 ..............................................................................................5

N.Y. Gen. Bus. Law § 350 ..............................................................................................5

Plaintiff Benjamin Careathers, individually and on behalf of himself and each of the Settlement Class Members, by and through Class Counsel authorized to settle *Careathers v. Red Bull North America, Inc., et al,* Case No. 1:13-CV-0369 (S.D.N.Y) (the "New York Action") on their behalf, and Plaintiffs David Wolf and Miguel Almaraz, individually and on behalf of themselves and each of the Settlement Class Members, by and through Class Counsel authorized to settle *Wolf v. Red Bull GmbH, et al.*, originally filed in the Central District of California, Case No. CV 13-01444 (the "California Action") but subsequently transferred and consolidated with the New York Action (collectively "Plaintiffs") respectfully submit this memorandum of law in support of the joint motion for preliminary approval of the concurrently filed proposed Stipulation of Settlement ("Stipulation") (Exhibit 1) between Red Bull North America, Inc., Red Bull Distribution Company, Inc., Red Bull GmbH (collectively, "Red Bull" or "Defendants"),[1] and Plaintiffs, on behalf of themselves and the Settlement Class.[2]

## I.    INTRODUCTION

This is a putative class action alleging that Red Bull falsely marketed its energy drinks as providing certain functional benefits and thereby induced consumers into purchasing and/or paying a price "premium" for those drinks over alternate sources of caffeine.  Red Bull denies all wrongdoing or liability, and is prepared to vigorously defend its marketing claims if the litigation proceeds.  Notwithstanding, following extensive, good-faith and arms' length negotiations between experienced counsel, and under the auspices of a respected mediator, the parties have

---

[1] Although Plaintiff Careathers has dismissed without prejudice his claims against Red Bull Distribution Company and Red Bull GmbH pursuant to a prior stipulation between the parties (*see* ECF No. 9), the Stipulation of Settlement governs all three of the Red Bull entities.

[2] Unless otherwise stated, all capitalized terms shall have the same meanings as set forth in the Stipulation.  In some instances, definitions are repeated or paraphrased herein for purposes of clarity.  All Exhibit references herein (including to the Stipulation of Settlement and its Exhibits) are to the concurrently filed Declaration of Matthew T. Moore, Esq.

agreed to settlement terms that they believe will fairly resolve this action, avoid protracted, expensive and uncertain litigation, and reasonably and adequately provide prompt effective relief for putative class members.

Pursuant to the Stipulation, the parties agree that an appropriate Settlement Class would be comprised of persons who purchased at least one Red Bull beverage dating back to January 1, 2002. All members of this Settlement Class who submit a valid and timely claim will have a choice of receiving either: (1) a $10.00 cash reimbursement; or (2) free Red Bull products (either Red Bull® Energy Drink or Red Bull® Sugarfree, as selected by the Settlement Class Member on the Claim Form) with an approximate retail value of $15.00 (the "Product Option"). Product packaging (*e.g.*, a four-pack) and sizing (*e.g.*, 8.4 ounce cans) shall be determined by Red Bull at its discretion after the final value of the Product Option has been determined.[3] The free Red Bull products chosen by a Claimant selecting the Product Option on the Claim Form will be shipped by Red Bull directly to class members at Red Bull's cost.[4] The Product Option provides the opportunity for all class members to get free product without spending additional money in order to realize the benefits of the settlement. Since it is unlikely that consumers regularly keep their receipts from purchasing energy drinks, Class Members need not provide any proof of purchase other than a Claim Form attesting that they purchased a Red Bull product since January 1, 2002.

The value of benefits conferred on Class Members will be substantial, including the distribution by Red Bull of $13 million in benefits via a Settlement Fund, comprised of:

---

[3] Both the cash reimbursement and products to fulfill the Product Option amounts may be subject to an increase or decrease depending on the number and nature of valid claims, as set forth in Paragraphs IV.A.6-IV.A.9 of the Stipulation.

[4] Based on current retail market pricing, the parties believe that Settlement Class Members choosing the Product Option valued at $15.00 will obtain, for example, approximately two four packs of 8.4 ounce cans of Red Bull shipped directly to the Class Member for free.

(1) distributions of the cash refunds and free products; (2) funds to support the efforts of an experienced Class Action Settlement Administrator, Garden City Group, Inc. ("Garden City") and ensure that potential Settlement Class Members are fully notified through a variety of media as to the existence of the settlement and their rights and responsibilities thereunder; and (3) under certain limited circumstances, charitable donations as a *cy pres* remedy. Attorneys' fees and expenses, and an incentive award for the Class Representatives, will be paid by Red Bull separate and apart from the Settlement Fund, and will therefore not diminish the relief made available to Class Members.

Beyond monetary relief, although Red Bull denies wrongdoing and believes that its marketing materials and advertising have always been truthful and accurate, it has voluntarily withdrawn or revised the marketing claims challenged by Plaintiffs, and will confirm that all future claims about the functional benefits from consuming its products will be medically and/or scientifically supported. Accordingly, the proposed settlement effectively provides all of the injunctive relief that the Settlement Class could hope to obtain through litigation, which provides additional, material value to the Settlement Class above and beyond the cash and free products.

As set forth in this memorandum of law, the proposed settlement terms are reasonable and fair, the proposed Settlement Class meets all of the requirements for conditional certification, and the proposed class notice program is comprehensive and provides the best practicable notice under the circumstances. Given the uncertainty of litigation and obstacles to Plaintiffs' success on the merits, and the difficulties inherent in obtaining and maintaining certification of a liability or damages class for purposes of trial and proving damages, the substantial monetary and non-monetary relief — and the expeditious provision thereof — is a very favorable result for Plaintiffs and the proposed class. Red Bull also recognizes the expense and other potential risks

of litigating a class action such as this through trial (and possibly appeals), and therefore is amenable to resolution on the terms set forth in the Stipulation.

Accordingly, the parties jointly move this Court for an Order: (1) conditionally certifying the settlement class; (2) granting preliminary approval of the proposed settlement; (3) approving the proposed notice program and directing that notice be disseminated to the Settlement Class as provided in the Stipulation; (4) appointing Benjamin Careathers, David Wolf and Miguel Almarez as class representatives; (5) appointing Morelli Alters Ratner, LLP and Kaplan Fox & Kilsheimer LLP as Class Counsel; and (6) appointing Garden City as the Class Action Settlement Administrator.

## II. BACKGROUND

### A. The Pending Litigation

Red Bull manufactures, markets and sells the popular line of Red Bull energy drinks, which was introduced into the United States in 1996-97. The energy drinks marketed under the Red Bull brand include Red Bull® Energy Drink, Red Bull® Sugarfree, Red Bull® Total Zero and Red Bull® Editions. The drinks have been extremely popular — since its launch here, over four billion units have been sold in the United States.

On January 16, 2013, Plaintiff Careathers, a longtime consumer of Red Bull beverages, commenced the instant putative class action, alleging that Red Bull labeling and marketing has deceived consumers. In response to concerns Red Bull raised in a letter challenging the sufficiency of the complaint (in accordance with Individual Practice II.A of Judge Victor Marrero, who previously presided over this Action), Plaintiff Careathers served an amended complaint on April 1, 2013. Pursuant to stipulations between the parties, and to advance mediation sessions and settlement discussions (discussed in Section II.B below), the deadline for Red Bull to respond to the Amended Complaint was extended to September 30, 2013. (ECF

No. 18.) On that date, Red Bull set forth the reasons why it believed that the Amended Complaint should be dismissed in a letter seeking a pre-motion conference. (ECF No.19.)

The thrust of the allegations herein is that the functional benefits of consuming Red Bull are not superior to the benefits from ingesting an equivalent amount of alternate sources of caffeine, and that consumers have been misled by Red Bull advertising to believe the drink is a superior source of energy beyond caffeine. As a result, Plaintiff Careathers alleges Red Bull has induced consumers into purchasing and/or paying a price "premium" for its beverages. Plaintiffs therefore seek certification of a nationwide class of Red Bull consumers. Plaintiff Careathers alleges causes of action for breach of express warranty (Count I), unjust enrichment (Count II), violations of New York Deceptive Acts and Practices Act , N.Y. Gen. Bus. Law §§ 349 and 350 (Count III), and violation of the consumer protection acts of 40 other states (Count IV). Plaintiff Careathers seeks both monetary and injunctive relief, including restitution and disgorgement of all profits, benefits and other compensation.

On February 27, 2013, Plaintiffs Wolf and Almaraz filed their class action complaint in the Central District of California, under the caption *Wolf v. Red Bull GmbH, et al.*, No. cv 13-01444 (C.D. Cal.). The California plaintiffs make similar allegations of deceptive conduct[5] arising out of the same alleged marketing representations by Red Bull. Like Careathers, the California plaintiffs seek to represent a nationwide class of Red Bull consumers and demand monetary and injunctive relief, and assert claims for unjust enrichment and violations of California consumer protection statutes (just as Plaintiff Careathers does). Counsel for

---

[5] Plaintiffs Wolf and Almarez allege in their California complaint claims for violations of the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq*., (Count I), violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Count II) and unjust enrichment (Count III), and include claims that the product safety claims are unsupported.

California plaintiffs actively participated in the mediation and settlement negotiations, and subsequently the case was consolidated (on the consent of all parties) with the New York Action before this Court. (ECF No. 36.) As with the New York Action, Red Bull is likewise prepared to file a comprehensive motion to dismiss the California Action if the settlement is not approved.

### B. Settlement Negotiations and Mediation

Plaintiff Careathers and Red Bull began to discuss the possibility of a settlement shortly after the filing of the Careathers Amended Complaint. On April 9, 2013, counsel met in person at Plaintiff Careathers's counsel's New York office to discuss the parties' relative positions and start to consider a framework of a resolution of the lawsuit that would be both mutually acceptable and present a favorable disposition to the putative class(es) that Plaintiff Careathers purports to represent. Counsel met once again in person at counsel's offices on April 15.

Subsequent to that meeting, an effort was made by Red Bull to ensure that the Plaintiffs and counsel in the California action were also fully involved and fairly represented in settlement negotiations. After further conversations between counsel for Red Bull and counsel for Plaintiffs in both cases, all parties engaged in three-way mediation in Los Angeles, California on June 24, 2013, and in New York on July 12, 2013, before mediator Hon. Peter D. Lichtman (Ret.). After more than 12 hours of mediation, the parties reached agreement on a "mediator's proposal" presented by Judge Lichtman, the terms of which are memorialized in the Stipulation.

Attorneys' fees and expenses, as well as class representative incentive awards, were negotiated separate and apart, and following, negotiation of the settlement relief provided to the nationwide Settlement Class.

### III. TERMS OF THE PROPOSED SETTLEMENT

The following is a general summary of the principal terms provided in the Stipulation. The settlement relief includes cash payments, direct-distributed free products, non-monetary

injunctive relief, and, under certain limited circumstances, a potential small contribution to a charity as a *cy pres* remedy. The Stipulation also provides for payment of Plaintiffs' attorneys' fees and expenses, releases, the parameters of the class notice program, and payment of the costs of notice and claims administration. In total, the value of the settlement distributions is $13 million, not including the value of the non-monetary injunctive relief, and the attorneys' fees and Class Representative incentive awards.

## A.     <u>Proposed Settlement Relief</u>

Settlement Class Members – defined to include all persons who purchased Red Bull products in the United States (with some limited exclusions of interested parties, such as Red Bull employees) between January 1, 2002 and the present (the "Class Period") — who execute a valid and timely Claim Form pursuant to 28 U.S.C. § 1746 attesting under penalty of perjury that they purchased one or more Red Bull products during the Class Period, may elect to receive either a cash reimbursement *or* free Red Bull products.

The total collective value of all cash and product distributions by Red Bull to Class Members (not including notice and tax expenses) will be $13 million, and initial payments shall be made within 150 days of the Effective Date. (Stipulation § IV.A.14.)

### 1.     Cash Reimbursements and Free Product for Claimants

Cash reimbursements provided to valid Claimants shall be drawn from an interest-bearing fund in trust with a third party institution to be selected by Defendants and approved by Class Counsel (the "Cash Fund"). (*Id*. § IV.A.5(a).) Within 7 days of the entry of the Order approving the Motion for Preliminary Approval, Red Bull shall make a payment of $6.5 million into the Cash Fund. (*Id*. § IV.A.5(b).) The Cash Fund will be first applied to pay in full and in order the costs of notice and claims administration and any necessary taxes and tax expenses.

(*Id.*) Accordingly, cash payments to Class Members shall be made from the balance of the Cash Fund remaining after these initial payments are made (the "Net Settlement Balance").[6] (*Id.*)

Settlement Class Members who opt for the cash reimbursement option and submit a valid and timely Claim Form, with no receipt necessary, will receive a $10.00 cash reimbursement for any and all Red Bull products purchased during the Settlement Class Period. (*Id.* § IV.A.3(a).)

A Settlement Class Member choosing the Product Option shall receive free Red Bull Products (either Red Bull® Energy Drink or Red Bull® Sugarfree, as selected by the Class Member on the Claim Form) with an approximate retail value of $15.00. Product packaging (*e.g.*, a four-pack) and sizing (*e.g.*, 8.4 ounce cans) shall be determined by Red Bull at its discretion after the final value of the Product Option has been determined.[7] The free Red Bull products selected on the Claim Form will be shipped by Red Bull directly to class members at Red Bull's cost. (*Id.* § IV.A.4(a).) Red Bull will ship the products to the Claimant selecting the Product Option at the addresses provided by the Class Action Settlement Administrator. (*Id.* §§ IV.A.4(b), A.11(b).)

The full amount of the $13 million Distribution Fund will be distributed to Class Members as cash reimbursements or products to fulfill the Product Option, save for notice and tax expenses (and a very limited potential *cy pres* remedy, discussed below). The initial Cash Fund of $6.5 million may be supplemented if necessary to ensure that full $10.00 cash reimbursements are paid to all valid Claimants, provided that the aggregate value of all valid cash and products to fulfill the Product Option claims does not exceed the $13 million

---

[6] As previously stated, the attorneys' fees and representative plaintiff incentive awards shall be rendered separate and apart from the guaranteed Cash Settlement Fund.

[7] For the Product Option, as set forth in the accompanying Stipulation of Settlement, Red Bull shall make its determination based upon a "commercially reasonable" course of conduct.

Distribution Fund. (*Id.* § IV.A.7(a).) Similarly, if valid claims for products to fulfill the Product Option exceed $6.5 million and the aggregate value of all claims does not exceed the Distribution Fund (*i.e.*, claims for cash reimbursement do not use up the entire Cash Fund), the Cash Fund may be reduced in the amount necessary to provide full $15.00 in products to valid claimants choosing the Product Option. (*Id.* § IV.A.8(a).)

The amount of the cash reimbursements and/or products to fulfill the Product Option provided to valid Claimants may be increased or decreased depending on the number and type of valid and eligible claims for cash reimbursements and products to fulfill the Product Option made during the applicable 150-day notice period. For example, if the aggregate value of all claims for cash and products to fulfill the Product Option exceeds the Distribution Fund, the cash reimbursements and/or products to fulfill the Product Option may be reduced *pro rata*. (*Id.* §§ IV.A.6(a), 8(a).) If, on the other hand, there is an excess amount remaining in the Distribution Fund following distribution of all cash reimbursements and products to fulfill the Product Option in full (*i.e.*, $10.00 and $15.00, respectively), the additional money in the Distribution Fund will be distributed *pro rata* to all Claimants who have submitted valid claims either as an addition to the cash payment or as additional products to fulfill the Product Option, consistent with the election on their initial Claim Form. (*Id.* § IV.A.9.)

### 2. Additional Distributions or *Cy Pres* Remedy

Once distribution of checks for cash reimbursement is made, and after the 120 day redemption window for those checks, there will be a determination of how many checks remain uncashed and are therefore void. If the total value of those uncashed checks is less than $100,000.00, such amount will be donated as a *cy pres* remedy to one or more charitable organizations mutually agreed upon by the parties. If the total value of the uncashed checks equals or exceeds $100,000.00, the unpaid checks will be cancelled and there will be a second

distribution of checks, each in an amount determined on a *pro rata* basis, to those Claimants choosing the Cash Option who did cash their initial checks. (*Id.* § IV.A.10.) A *cy pres* distribution is more economical than conducting an additional distribution of less than $100,000.00, given the costs of the claims administrator overseeing such a distribution.

### 3. Injunctive Relief

While Red Bull asserts that its marketing materials, advertising, and labeling have always been entirely truthful and accurate, the company has voluntarily withdrawn and/or updated those materials such that the parties agree, for purposes of the Stipulation, that the updated materials satisfy any and all claims that have been asserted in this Litigation. Moreover, Defendants confirm that all future claims about the functional benefits and safety of its products will be medically and/or scientifically-supported. (*Id.* § IV.B.3.) This is injunctive relief which provides additional value to the class.[8]

### B. Attorneys' Fees and Expenses

Red Bull will not oppose Class Counsel's application for attorneys' fees, costs and expenses in an amount not to exceed a total of $4,750,000. Class Counsel's application for fees, costs and expenses is based on the total settlement package, which is comprised of the Settlement Fund, the fees and costs that Red Bull is paying separately from the Settlement Fund, plus the value of the injunctive relief that has been obtained. The amount applied for by Class Counsel will include all costs and fees incurred by Class Counsel in connection with the litigation thus far, as well as ongoing and future costs and fees through finalization of settlement of the action and if necessary, responding to objectors and defending the settlement on appeal. (*Id.* § VIII.A.)

---

[8] Notwithstanding Red Bull's update of materials, the Stipulation recognizes that there remain a quantity of Red Bull Products containing prior versions of labels and older marketing materials, and permits Red Bull until September 1, 2014 to sell or use such products and materials. (*Id.* § IV.B.5.) However, no products shipped to claimants as part of this Settlement will have prior versions of Red Bull labels.

Attorneys' fees, costs, and expenses approved by the Court shall be paid by Red Bull separate and apart from the money or value in the Settlement Fund; in other words, any attorneys' fees award will not diminish the money and value being disseminated to the Settlement Class. (*Id.* § VIII.C.)[9]

In the event that the judgment entered pursuant to this settlement shall not become final or is ultimately overturned on appeal, Class Counsel shall return in full the amount of attorneys' fees and expenses paid to them.  (*Id.* § VIII.D.)  Class Counsel will, in their sole discretion, allocate and distribute the Fee and Expenses award in good faith among Class Counsel and additional counsel for any plaintiff in this Litigation; (*Id.* §§ VIII.B, C.)

### C.  Class Representative Incentive Awards

Red Bull will not oppose Class Counsel's application to the Court for an incentive award to class representatives Benjamin Careathers, David Wolf and Miguel Almaraz in an amount not to exceed $5,000 per representative for their efforts in filing the litigation and participating in the settlement negotiations on behalf of themselves and all others similarly situated.  (*Id.* § VIII.B.) As with the attorneys' fees, the incentive awards will be paid separate and apart from the value being distributed to the Settlement Class. (*Id.* § VIII.C.)

### D.  Releases

As of the Effective Date, Plaintiffs and each Settlement Class Member who has not validly excluded himself or herself from the Settlement Class (pursuant to § VI.D of the Stipulation) shall be deemed to have, and by operation of the Judgment have, fully, finally, and forever released, relinquished, and discharged all Released Claims against Red Bull.  (*Id.* § VII.)

---

[9] Plaintiffs' counsel will submit a memorandum in support of their request for attorneys' fees and expenses in conjunction with their motion for final approval of the proposed settlement.

In connection with the Released Claims, each Settlement Class Member shall be deemed as of the Effective Date to have waived any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code and any statute, rule, and legal doctrine similar, comparable, or equivalent to California Civil Code § 1542, which reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

### E.    The Class Notice Program: Costs of Notice and Administration

The Stipulation sets forth parameters of a comprehensive notice program, for which the parties request that Garden City be approved as Class Action Settlement Administrator.

The Class Notice Program — which shall provide Settlement Class Members with all information pertinent to their participation in (or opting out of) the settlement (*id.* §§ V.A) — shall commence no less than ten (10) days following entry of the Preliminary Approval Order, and will be effectuated by the Class Action Settlement Administrator across a variety of media, including an array of national publications (both printed and electronic) that adequately cover Red Bull consumers and other advertising or point of purchase collateral materials as necessary to satisfy the Court that Notice has been adequately achieved. Claim Forms for both cash refunds and free products will be available for downloading on a website dedicated to this settlement, or may be requested by calling a toll-free number provided by the Class Action Settlement Administrator, or by writing to the Class Action Settlement Administrator.

## IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

It is well-settled that "[c]ompromises of disputed claims are favored by the courts . . . ." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) (citation omitted). This "strong judicial policy in favor of settlements" is particularly significant "in the class action context." *Wal-Mart*

*Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted); *In re Marsh Erisa Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("There is a strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *In re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources.") (citations omitted). The present putative class action litigation is no exception, and the fair and adequate settlement terms reached by the parties should be preliminarily approved.

## A.   <u>Legal Standard for Preliminary Approval</u>

Judicial review of a proposed class action settlement is a two-step process. First, the parties seek preliminary approval of the proposed settlement as well as conditional certification of the proposed settlement class. If such approval and certification are granted, the parties must then provide notice to the settlement class and appear at a fairness hearing to seek final approval of the settlement from the Court. *Manual for Complex Litigation* §§ 21.632, 21.633 (4th ed. 2005); *Silver v. 31 Great Jones Rest.*, No. 11 Civ. 7442 (KMW) (DCF), 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013); *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

On preliminary approval, the Court does not make a full and final determination regarding the procedural and substantive fairness and adequacy of the settlement terms, but rather "make[s] a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Initial Pub. Offering.*, 243 F.R.D. at 87 (citation omitted). "Where the

proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and *falls within the range of possible approval*, preliminary approval is granted." *Id.* (emphasis added) (internal quotations omitted) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).[10]  Further, the Court should accord some deference to the terms of a settlement negotiated at arms' length; "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotations and citations omitted); *see also deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *4 (S.D.N.Y. Aug. 23, 2010) (same). Indeed, "[a]bsent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Clark*, 2010 WL 1948198, at *4 (internal quotations and citation omitted).  Notably, "courts often grant preliminary settlement approval without requiring a

---

[10] The standard for demonstrating that a settlement is sufficiently "fair, adequate, and reasonable, and not a product of collusion" in order to obtain *final* approval is more exacting, *see Wal-Mart*, 396 F.3d at 116-17, and includes consideration of the nine *Grinell* factors articulated by the Second Circuit: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and discovery completed; (4) the risks of establishing liability; (5) the risks of proving damages; (6) the risks of maintaining a class action through trial; (7) the ability of defendants to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The parties will demonstrate the procedural and substantive fairness of the settlement at the final fairness hearing.

hearing or a court appearance." *Tiro v. Public House Invs., LLC*, No. 11 Civ. 7679 (CM), 2013 WL 2254551, at *1 (S.D.N.Y. May 22, 2013) (citations omitted).

**B.**     <u>The Settlement Is the Result of Good Faith, Arms' Length Negotiations By Well-Informed and Highly Experienced Counsel</u>

A proposed settlement is entitled to a "presumption of fairness" where, as here, the process leading to the proposed settlement was fairly conducted by highly qualified counsel who sought to obtain the best possible result for their clients (and, in the case of Plaintiffs' counsel, the Settlement Class). *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (citation omitted); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arms' length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations and quotations omitted); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel"); *In re PaineWebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (same).

Here, counsel for both Plaintiffs and Red Bull have a substantial amount of experience in litigating putative class actions as well as negotiating settlements in that context. After independent, thorough analyses of the potential risks and rewards of litigating this case through discovery, dispositive motion practice, potential interlocutory appeals, and trial (as discussed *infra* Section IV.C.2), all parties concluded that the Stipulation sets forth acceptable terms and recommend the settlement for approval.

The participation of an experienced mediator in settlement negotiations further establishes a settlement's fairness. *See Tiro*, 2013 WL 2254551, at *2 ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive") (internal quotations omitted); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 1832181, at *2 (S.D.N.Y. Apr. 30, 2013) (same); *In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding the arms' length negotiation element "amply satisfied" where the parties, "represented by highly experienced and capable counsel, engaged in extensive arms' length negotiations, which included multiple sessions mediated by . . . an experienced and well-regarded mediator of complex . . . cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding class action settlement presumptively fair because, *inter alia*, "counsel have provided the Court significant evidence demonstrating that this settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator"). Thus, the fairness of the settlement here is bolstered by the fact that the parties engaged in fruitful mediation with Judge Lichtman, leading to further refinement of the settlement terms.

### C. The Proposed Settlement Falls Within the Range of Possible Approval

There can be no doubt that the terms of the proposed settlement should be approved as fair, adequate, and reasonable. Not only are the benefits being conferred on the Settlement Class Members substantial, but they also reflect an extremely successful outcome for Class Members given the serious litigation risks facing them in this complex class action.

#### 1. Settlement Class Members Are Promptly Receiving Substantial Monetary and Non-Monetary Relief

The proposed settlement contains an option of either a cash payment or direct-shipped free products which collectively amounts to $13 million being distributed among a nationwide

class of Red Bull consumers. Every consumer of a Red Bull beverage dating back over 10 years will be eligible to claim benefits without any need to provide proof of purchase beyond attesting that they satisfy the requirements to be included in the Class. In addition, the class is receiving substantially valuable injunctive relief; no particular segment of Red Bull consumers is receiving preferential treatment; and all class members are treated equally, with the sole exception that each of the individual named class representatives will receive a modest $5,000 payment separate and apart from the Settlement Fund in recognition of their pursuit of the class action.[11] Nor is the settlement amount being diminished by attorneys' fees, which are not being paid out of the value being provided to the Settlement Class.[12]

Beyond monetary benefits, Red Bull has already modified or withdrawn challenged marketing statements, has no intention of reviving the challenged statements, and will ensure that future representations concerning functional benefits of Red Bull consumption continue to be amply supported. In other words, for all intents and purposes, the Settlement Class has already obtained virtually all of the injunctive relief that it could reasonably hope to achieve if it proceeded to trial. Accordingly, the settlement provides the Settlement Class Members with both immediate and substantial relief without incurring the inherent costs and uncertainty of trial.

---

[11] Courts routinely approve such incentive awards. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010) (approving incentive award of $5,000 to a plaintiff who "reviewed the complaint . . . and discussed the facts with counsel," and explaining that the propriety of an incentive award is "related to the personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit").

[12] *See Blessing v. Sirius XM Radio Inc.*, 507 Fed. App'x 1, 4 (2d Cir. 2012) (rejecting objection to attorneys' fees award in class action settlement where, *inter alia*, "the fee was negotiated only after settlement terms had been decided and did not . . . reduce what the class ultimately received") (citation omitted); *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 71 (S.D.N.Y. 2003) (rejecting objection where there was "no evidence that the amount of the attorneys' fees affected or lessened the amount of recovery provided by the proposed settlement").

### 2. The Prompt Substantial Benefits For the Settlement Class Reflect A Favorable Outcome For Plaintiffs Given the Litigation Risks

If Plaintiffs were to continue the class action litigation against Red Bull, it would entail a lengthy and highly expensive legal battle involving complex legal and factual issues where motions would be vigorously contested. There is no guarantee that Plaintiffs and Class Members would obtain the relief secured by this settlement, and even so, such relief may not be obtained for some time.

If the settlement is not consummated, Red Bull has represented that it will raise — and indeed, already has raised — numerous defenses and legal challenges to the certification of liability and/or damages classes, the underlying merits of Plaintiffs' claims, and attempts to demonstrate damages. By way of example, as previewed in the letter Red Bull sent to Plaintiff Careathers pursuant to Judge Marrero's Individual Practice II.A, and in the pre-motion letter sent to this Court on September 30, 2013, and as would likely be fleshed out in dispositive motions, Red Bull contends that there are serious, irremediable deficiencies in Plaintiff Careathers's pleading, and that all of the causes of action should be dismissed with prejudice. Red Bull further contends that a number of the state consumer protection statutes invoked by Plaintiff Careathers do not provide for monetary relief and that Red Bull's removal of challenged marketing statements entitles it to statutory "safe harbors" that eliminate the prospect of compensatory damages for many putative class members. At minimum, it is likely that proving the quantum of damages would prove difficult and expensive, and ripen into a "battle of experts."[13]

---

[13] At the outset of settlement negotiations, Red Bull provided Plaintiff Careathers's counsel with a memorandum providing an initial outline of the deficiency of Plaintiff Careathers's pleading and the serious obstacles to Plaintiff Careathers certifying a liability or damages class, including internal Red Bull

*(cont'd)*

Given the uncertainty present at all stages of the litigation, Plaintiffs have a strong interest in accepting, on behalf of a nationwide settlement class, millions of dollars' worth of immediate relief. Red Bull also understands the value of resolving these issues now to avoid protracted litigation. In light of these realistic concerns on the part of both Red Bull's and Plaintiffs' highly experienced and qualified counsel, and the added benefit of promoting judicial efficiency and economy, the proposed settlement surely fits into the "range of possible approval."

### 3. Comparable Settlement Terms Have Been Readily Approved

Lest there be any doubt as to the propriety of the terms agreed to by the parties in the Stipulation, it bears noting that the Stipulation is in line with — if not more generous to the Settlement Class than — other settlements recently approved by courts in this District and elsewhere in similar class actions concerning alleged consumer deception by food and drink manufacturers.

For example, in 2012, this District granted final approval to a class action settlement in *Fishbein v. All Market, Inc.*, No. 11-cv-5580-JPO (S.D.N.Y. 2012), in which the plaintiff sought to represent a class of consumers allegedly deceived by marketing claims that the coconut water product at issue was, among other things, "super hydrating" and "nutrient-packed." Contending that those product claims were undermined by scientific studies, plaintiff asserted claims under various state consumer protection statutes and breach of warranty. The court granted final approval to a settlement that certified a class of nationwide purchasers of the beverage over a nearly five year period and provided $10 million in value (including $350,000 for costs of the

_____
*(cont'd from previous page)*
marketing data demonstrating the extreme difficulty facing Plaintiff Carethers in proving damages to any reasonably certain degree among myriad class members.

notice and administration) to the Settlement Class Members, divided into cash refunds (including $6 for consumers who lacked proof of purchase) and product vouchers (including $8 value for consumers who lacked proof of purchase). *See* No. 11-cv-5580-JPO, Aug. 22, 2012 [Dkt. Ent. 51]; April 12, 2012 [Dkt. Ent. 30]. Similarly, last year, in *In Re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, No. 4:08-md-01907 (E.D. Mo. 2013), the Eastern District of Missouri granted final approval of a class action settlement in which plaintiff brought causes of action under various state consumer protection statutes and for breach of warranty based on alleged misrepresentation of the manner in which the dairy cows used in the defendant's production process were raised and fed. *See* 04-md-01907, Feb 26, 2013 [Dkt. Ent. 356]. The approved settlement certified a nationwide class of all purchasers of the product prior to September 1, 2012, providing class members with settlement value amounting to $7.5 million in rebates ($10 for those consumers that lacked proof of purchase). *See id.*

Another example is the final approval of a settlement in 2012 in *In re Nutella Marketing & Sales Practices Litig.*, No. 3:11-cv-01086 (D.N.J. 2012). In that case, the plaintiff brought a class action for violation of state consumer protection statutes and breach of warranty alleging that television and print advertisements for the chocolate-hazelnut spread Nutella® were false and misleading by suggesting that the product is nutritious and an appropriate part of a balanced breakfast. *See* No. 3:11-cv-01086, July 30, 2012 [Dkt. Ent. 104]; Feb. 3, 2012 [Dkt. Ent. 67]. The settlement terms that were granted final approval by the District of New Jersey included certification of a nationwide class of Nutella® purchases over a four year period (slightly shorter for a California subclass also certified) and a total value of $6.95 million in cash refunds ($4 per jar up to $20 per household). *See id.*

As the above recent settlements suggest, the settlement terms for which the parties seek approval in this case are well within the bounds of reasonableness and fairness and, in at least one respect, are superior. Rather than issuing vouchers or rebates for Defendants' products that require redemption by the consumer, here a Settlement Class Member choosing the Product Option will receive free products direct-shipped to him or her with no additional cost or action required. Therefore these settlement terms should be granted preliminary — and following the Fairness Hearing, final — approval.

## V. THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED FOR PURPOSES OF SETTLEMENT

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 261, 270 (2d Cir. 2006) (permitting lower court's conditional certification of a class for settlement purposes); *In re Take Two Interactive Secs. Litig.*, No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, at *16-17 (S.D.N.Y. June 29, 2010) ("Courts often certify classes for settlement purposes, and it is not uncommon for courts to certify settlement classes on a preliminary basis, at the same time as the preliminary approval of the fairness of the settlement, solely for the purpose of settlement, deferring final certification of the class until after the fairness hearing.") (citations omitted). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Secs. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995); *see also Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) ("Certification of a class for settlement purposes only is permissible and appropriate, provided [the] standards [of Rule 23(a) and (b)] are met").

While a settlement class, like other certified classes, must satisfy Federal Rules of Civil Procedure 23(a) and 23(b), the manageability concerns of Rule 23(b)(3) are not at issue in certification of a settlement class, and the Court may properly consider that there will be no trial. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).[14]

### A.    Proposed Class, Class Representatives, and Class Counsel

The Stipulation defines the Settlement Class as follows:

> [A]ll persons who purchased Red Bull Products in the United States during the Class Period.   The Class will cover all persons who could have been class members in either of the Actions.   Specifically excluded from the Settlement Class are: (a) employees, officers, directors, agents, and representatives of (1) Defendants and each of their subsidiaries and affiliates, and (2) all distributors, wholesalers, retailers, and licensors of Red Bull Products; (b) those who purchased Red Bull Products for the purpose of re-sale; (c) all federal judges who have presided over this case; and (d) all Persons who have been properly excluded from the Settlement Class.

Stipulation § II.25.

The parties also move the Court to designate the named Plaintiffs in the Actions, Benjamin Careathers, David Wolf and Miguel Almaraz, as class representatives and the law firm of Morelli Alters Ratner, LLP , counsel for Mr. Careathers, and Kaplan Fox & Kilsheimer LLP, counsel for Messrs. Wolf and Almaraz, as Class Counsel.

### B.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the

---

[14] Red Bull is not opposing conditional class certification for purposes of settlement only, but has stated that it reserves all rights to challenge the certification of liability and/or damages classes if the settlement is not approved, including without limitation for the reason that manageability of a trial is a concern under Rule 23(b)(3).

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1. Settlement Class Members Are Too Numerous to Be Joined

There can be no doubt that joinder of all potential Settlement Class Members in this action would be impracticable. In the Second Circuit, "numerosity is presumed where a putative class has forty or more members." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (quoting *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the proposed Settlement Class consists of individuals in the United States who purchased at least one Red Bull beverage dating back over ten years, potentially comprising millions of consumers.

### 2. Plaintiffs and the Settlement Class Share Common Legal and Factual Questions

Rule 23(a) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Questions are typically common to the class if class members' claims "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). A single common issue may satisfy the commonality requirement, and "[a] court may find a common issue of law even though there exists 'some factual variation among class members' specific grievances.'" *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (*quoting In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 240 (E.D.N.Y. 1998); *see also Global Crossing*, 225 F.R.D. at 451 ("Rule 23(a)(2)'s requirement of common factual or legal questions is not demanding and does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named

plaintiffs share at least one question of fact or law with the grievances of the prospective class")
(internal quotations and citations omitted).

Here, there are a few common questions with respect to the Settlement Class, including,
for example, whether: (1) marketing statements by Red Bull challenged by Plaintiffs are false
and/or misleading; (2) those statements are unsupported by reliable evidence; (3) Red Bull's
alleged nationwide practice of misleading consumers of its products violates applicable
consumer protection statutes; (4) Red Bull was unjustly enriched at the expense of consumers;
and (5) Red Bull breached express warranties. Accordingly, the commonality requirement is
satisfied.

### 3. Plaintiffs' Claims are Typical of the Settlement Class

Typicality is satisfied where "the representative plaintiff's claims are based on the same
legal theory and arise from the same practice or course of conduct as the other class members."
*Playmobil*, 35 F. Supp. 2d at 241 (citations omitted). "[W]hen the same alleged unlawful
conduct [is] directed at . . . both the named plaintiff and the class sought to be represented, the
typicality requirement is usually met irrespective of minor variations in the fact patterns
underlying claims." *Global Crossing*, 225 F.R.D. at 452 (internal quotations and citation
omitted). "The commonality and typicality requirements often tend to merge into one another,
so that similar considerations animate analysis of both." *Brown v. Kelly*, 609 F.3d 467, 475 (2d
Cir. 2010) (internal quotations and citation omitted). Here, Plaintiffs have alleged that Red Bull
has deceived consumers into purchasing or paying a premium for Red Bull beverages by falsely
advertising the products' functional benefits and the products' safety. Such claims, like those of
the other members of the Settlement Class — all consumers of Red Bull drinks — arise out of
the same alleged misconduct by the same Defendants and are based on overlapping legal theories.
For example, both Careathers and the plaintiffs in the *Wolf* litigation expressly challenge many

24

of the same representations that previously appeared on the Red Bull website, and are alleging causes of action under similar state consumer protection statutes and for unjust enrichment. Such claims are typical when compared to those held by the other members of the Settlement Class.

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

The final element is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether a plaintiff is an adequate class representative, courts evaluate whether: (1) class counsel is "qualified, experienced, and generally able" to litigate the case; and (2) plaintiff's interests are not "antagonistic" to the interests of the other class members. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 418 (S.D.N.Y. 2013); *see also In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.") (citation omitted).

Here, it is beyond dispute that Class Counsel is amply qualified and experienced to pursue claims (and negotiate settlement) in this class action. Attorneys at Morelli Alters Ratner have extensive experience and expertise in class action proceedings throughout the United States, achieving billions of dollars in settlements for consumers in consumer class actions and mass torts. Likewise, Kaplan Fox is one of the country's most established and respected plaintiffs' firms, recovering billions of dollars for its clients and class members in consumer protection, antitrust and securities class actions. Nor is there any reason to suspect antagonism or conflict of interest between the Plaintiffs and the proposed nationwide class. Plaintiffs, like all proposed

Settlement Class Members, purchased Red Bull beverages from Red Bull, and seek to maximize their recovery (either in cash or in kind).  Therefore Rule 23(a)(4) is satisfied.

### C.    The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)

Rule 23(b)(3) authorizes class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions of Law and Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc.*, 521 U.S. at 623 (citation omitted).  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted).  Here, Red Bull's liability can be determined on a class-wide basis, insofar as the same alleged course of conduct by Red Bull — *i.e.*, the same Red Bull marketing representations alleged to be false and misleading — forms the basis for all Settlement Class Members' claims.

### 2.    Class Resolution of this Action is Superior to Other Methods of Adjudication

Rule 23(b)(4) sets forth four factors pertinent to the analysis whether a class action is the superior form of adjudication: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy begun by or against class members; (3) the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(4). As noted above, when the parties seek certification of a class solely for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.[15] Moreover, courts recognize that a class action solves the "problem that small recoveries do not provide the incentive for any individual to bring a solo action" by "aggregating the relatively paltry potential revenues into something worth someone's (usually an attorney's) labor." *See id.* at 617 (internal quotations omitted).

This is particularly the case here insofar as no single plaintiff would have any incentive to bring suit to recover for Red Bull's alleged deception due to the substantial litigation costs and inability to recover significant damages individually. In addition, since the action arises out of an alleged common course of conduct by Red Bull that is uniform across the class, it is well-suited for aggregate treatment.

## VI. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

### A. Legal Standard

For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to a class of a *settlement* similarly requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Accordingly, the Second Circuit has explained:

---

[15] While Red Bull contends that such management problems would exist if the class action(s) proceeded to trial, Red Bull nonetheless agrees that a classwide settlement is a superior resolution of the action here.

> The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness . . . . [T]he settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. Notice is adequate if it may be understood by the average class member.

*Wal-Mart*, 396 F.3d at 113-14 (internal quotations and citations omitted).

### B. The Notice Program Reasonably and Adequately Provides Notice To and Informs All Identifiable Settlement Class Members

As set forth in the Stipulation, the parties have agreed to a comprehensive notice program to ensure effective notice is directed to the Settlement Class Members. To facilitate the notice process, the parties have agreed to request that the Court approve Garden City, an experienced and highly qualified settlement administrator, as the Class Action Settlement Administrator to assist and provide professional guidance in the implementation of the notice program, as well as the claims filing process and other aspects of the settlement administration. (*See* Ex. 2). As the Settlement Class may encompass hundreds of thousands, if not millions, of consumers across the United States, the parties will ensure that notice identifies and reaches as many of these individuals as practicable across a variety of media. (*See* Ex. 1, E; Ex. 2). The Notice of Class Action Settlement, attached to the Stipulation as Exhibit B, satisfies all of the requirements of Rule 23(c)(2)(B): the notice "concisely and clearly state[s] in plain, easily understood language:" (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, and defenses; (4) that a class member may enter appearance through an attorney if they so desire; (5) that the Court will exclude from the class any member who requests exclusion; and (6) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)**.** Moreover, the proposed notice apprises the Settlement Class Members of Class Counsel's request for attorneys' fees, which will be presented at final approval. *See* Fed. R. Civ. P. 23(h)(1) (explaining that notice of the motion for attorneys' fees must be "directed to class members in a

reasonable manner"); *Manual for Complex Litigation* § 21.722 (stating that "notice of class counsel's fees motion should be combined with notice of the proposed settlement"). The proposed notice also informs Settlement Class Members of the pertinent details of the Final Approval Hearing and the procedures to request exclusion from the Class or to object to the settlement. *See id.* §§ 21.312, 21.633, 21.634.

In light of the foregoing, and the supporting Declaration of Garden City (Ex. 2), the parties respectfully submit that the proposed Notice Program conforms with all requirements and reasonably and adequately informs Settlement Class Members as to all pertinent information, and therefore should be approved.

## VII. THE COURT SHOULD APPOINT MORELLI ALTERS RATNER, LLP AND KAPLAN FOX & KILSHEIMER LLP AS CLASS COUNSEL

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In determining who to appoint, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As set forth above, both Careathers's counsel, the law firm Morelli Alters Ratner and the individual attorneys involved to date in this action (Benedict P. Morelli, Jeremy W. Alters, David S. Ratner, Matthew Moore, and Adam Deutsch), and counsel for Wolf and Almaraz, Kaplan Fox & Kilsheimer and the firm's individual attorneys involved (Laurence D. King, Linda M. Fong, Frederic Fox and Justin Farar) are knowledgeable and experienced in these sorts of cases and have already demonstrated their commitment to vigorously and competently representing the proposed Settlement Class.

Accordingly, the Court should appoint Morelli Alters Ratner and Kaplan Fox & Kilsheimer LLP as Class Counsel.

## VIII. PROPOSED TIMETABLE

The proposed Preliminary Approval Order and proposed Notice Program set forth a procedure and schedule for disseminating notice to the Settlement Class and final approval of the Stipulation, as follows:

1. Within ten (10) days after the entry of the Preliminary Approval Order by the Court: (a) Garden City shall serve such documents upon the appropriate Federal official and the appropriate State official of each state or territory in which a Settlement Class Member resides pursuant to 28 U.S.C. § 1715; and (b) the Notice Program shall begin and proceed as outlined in Section V of the Stipulation of Settlement;

2. No later than one hundred fifty (150) days after the Notice distribution date, all completed Claim Forms must be postmarked or otherwise submitted according to the Notice Program;

3. A Final Approval Hearing shall be scheduled within approximately two hundred ten (210) days after Class Notice is provided, or as the Court's schedule permits;

4. No later than thirty days (30) days prior to the Final Approval Hearing, all papers in support of final approval of the Stipulation and in support of Plaintiffs' application for an award of attorneys' fees and expenses as well as Plaintiffs' application for incentive awards for the class representative shall be filed;

5. Not less than thirty (30) days prior to the Final Approval Hearing: (a) any requests for exclusion from the Settlement Class must be postmarked; and (b) any objections to the Stipulation must be filed with the Court and served on the Parties' counsel; and

6.     The Class Action Settlement Administrator shall file with the Court proof of compliance with the Notice Program no later than seven (7) business days prior to the Final Approval Hearing.

## IX.     <u>CONCLUSION</u>

As explained in detail above, the proposed settlement terms warrant preliminary approval, the proposed Settlement Class meets the Rule 23 requirements for conditional certification, and the proposed Notice Program constitutes the most reasonable notice under the circumstances. Accordingly, the parties jointly move this Court to issue an Order: (1) conditionally certifying the settlement class; (2) granting preliminary approval of the proposed settlement; (3) approving the proposed notice program and directing that notice be disseminated to the Settlement Class as provided in the Stipulation; (4) appointing Benjamin Careathers, David Wolf and Miguel Almaraz as class representatives and Morelli Alters Ratner, LLP and Kaplan Fox & Kilsheimer LLP as Class Counsel; and (5) appointing Garden City Group as the Class Action Settlement Administrator.

Dated:      New York, New York
            July 31, 2014                    Respectfully submitted,


                                           */s Benedict P. Morelli*
                                           Benedict P. Morelli
                                           bmorelli@morellialters.com
                                           David S. Ratner
                                           dratner@morellialters.com
                                           Adam Deutsch
                                           adeutsch@morellialters.com
                                           MORELLI ALTERS RATNER, LLP
                                           777 Third Avenue, 31st Floor
                                           New York, NY 10017

                                           Jeremy W. Alters
                                           jalters@morellialters.com
                                           Matthew T. Moore
                                           mmoore@morellialters.com

MORELLI ALTERS RATNER, LLP
Miami Design District
4141 Northeast 2nd Avenue, Suite 201
Miami, Florida 33137

*Attorneys for Plaintiff Benjamin Careathers*

KAPLAN FOX & KILSHEIMER LLP

By: *  /s Laurence D. King*
Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

Frederic S. Fox
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

Justin B. Farar
KAPLAN FOX & KILSHEIMER LLP
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:   (310) 575-8697
jfarar@kaplanfox.com

*Attorneys for Plaintiffs David Wolf & Miguel Almara*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney admitted to practice law before this Court, hereby certifies under penalty of perjury that on July 31, 2014, I caused a true copy of the foregoing Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Action Settlement to be filed and served via the Court's CM/ECF electronic filing system and same was thereby served upon counsel for Defendant:

Kenneth A. Plevan
Jordan A. Feirman
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000

Jason D. Russell
Hillary A. Hamilton
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA  90071-3144
Tel: (213) 687-5000

                                          */s David S. Ratner*
                                          David S. Ratner