**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X

BENJAMIN CAREATHERS,                  :     1:13-CV-0369 (KPF)
individually, and on behalf of all others :
similarly situated,                    :     ECF Case
                                       :
                       Plaintiff,      :     Electronically Filed
                                       :
        - against -                    :
                                       :
RED BULL NORTH AMERICA, INC.,          :
a California corporation,              :
                                       :
                       Defendant.      :
------------------------------ :

DAVID WOLF and MIGUEL                  :     1:13-cv-08008 (KPF)
ALMARAZ, individually and on behalf of :
others similarly situated,             :
                                       :
                      Plaintiffs,      :
        v.                             :
                                       :
RED BULL GMBH, a foreign company;      :
RED BULL NORTH AMERICA, INC., a        :
California corporation; and RED BULL   :
DISTRIBUTION COMPANY, INC., a          :
Delaware corporation,                  :
                                       :
                      Defendants.      :
                                       :
------------------------------ X


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

Frederic S. Fox
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

Justin B. Farar
KAPLAN FOX & KILSHEIMER LLP
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:   (310) 575-8697
jfarar@kaplanfox.com

*Attorneys for Plaintiffs David Wolf and Miguel Almaraz*


Benedict P. Morelli
bmorelli@morellialters.com
David S. Ratner
dratner@morellialters.com
Adam Deutsch
adeutsch@morellialters.com
MORELLI ALTERS RATNER, LLP
777 Third Avenue, 31st Floor
New York, NY 10017

Jeremy W. Alters
jalters@morellialters.com
Matthew T. Moore
mmoore@morellialters.com
MORELLI ALTERS RATNER, LLP
2675 N.E. 188th Street
Miami, Florida 33180

*Attorneys for Plaintiff Benjamin Careathers*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

    A.    The Litigation....................................................................................................2

    B.    Settlement Negotiations and Mediation............................................................5

III.   MATERIAL TERMS OF THE SETTLEMENT .....................................................6

    A.    Class Benefits...................................................................................................6

        1.    Cash Reimbursements and Free Product for Claimants ............................6

        2.    Additional Distributions or *Cy Pres* Remedy .............................................7

        3.    Injunctive Relief.......................................................................................8

    C.    Plaintiffs' Service Awards and Attorneys' Fees and Expenses...........................10

D.    RELEASES.........................................................................................................11

IV.   ARGUMENT ......................................................................................................11

    A.    Legal Standards for Settlement Approval..........................................................11

    B.    The Settlement Is Procedurally Fair ..................................................................13

    C.    The Settlement Is Substantively Fair .................................................................14

        1.    The Complexity, Expense and Likely Duration of the Litigation ............15

        2.    The Risks Related to Liability, Damages, and Trial.................................15

        3.    Comparable Settlement Terms Have Been Readily Approved..................16

        4.    The Stage of the Proceedings and the Amount of Discovery Completed ...............................................................................................19

        5.    The Reaction of the Class to the Settlement ............................................20

        6.    Settlement Class Members Are Promptly Receiving Substantial Monetary and Non-Monetary Relief.........................................................21

V.    NOTICE WAS CONDUCTED IN THE BEST PRACTICABLE MANNER .................22

**Page**

    A.     Legal Standard ........................................................................................................22

    B.     The Notice Program Reasonably and Adequately Provided Notice To and Informed All Identifiable Settlement Class Members ...........................................23

VI.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT .....................................24

VII.   CONCLUSION ..................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods. Inc. v. Windsor,*
 521 U.S. 591 (1997).................................................................................. 25

*Blessing v. Sirius XM Radio Inc.,*
 507 Fed. App'x 1 (2d Cir. 2012)............................................................... 22

*City of Detroit v. Grinnell Corp.,*
 495 F.2d 448 (2d Cir. 1974)................................................................. 12, 14

*Denney v. Deutsche Bank AG,*
 443 F.3d 253 (2d Cir. 2006)....................................................................... 24

*Dupler v. Costco Wholesale Corp.,*
 705 F. Supp. 2d 231 (E.D.N.Y. 2010) .................................................. 12, 22

*Fishbein v. All Market, Inc.,*
 No. 11-cv-5580-JPO (S.D.N.Y. 2012)....................................................... 17

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
 298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................... 12

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.,*
 909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................ 14

*In re Giant Interactive Grp., Inc. Sec. Litig.,*
 279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................... 14

*In re Global Crossing Sec. & ERISA Litig.,*
 225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 11

*In re Hi-Crush Partners L.P. Secs. Litig.,*
 No. 12–Civ–8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)........... 13

*In re IMAX Sec. Litig.,*
 283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................... 24

*In re Luxottica Group S.p.A. Sec. Litig.,*
 233 F.R.D. 306 (E.D.N.Y. 2006)................................................................ 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.,*
 No. 04 Civ. 8144(CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)........... 25

*In re Marsh Erisa Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................. 11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................. 13

*In re Nissan Radiator/Transmission Cooler Litig.,*
    No. 10 CV 7493(VB), 2013 WL 4080946 (S.D.N.Y. May 30, 2013).............. 19

*In re PaineWebber Ltd. P'Ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................. 13

*In re Sinus Buster Prods. Consumer Litig.*,
    No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) .. 13, 15, 19

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................ 13

*Johnson v. Gen. Mills, Inc.*,
    No. SACV 10-00061-CJC(ANx), 2013 WL 3213832 (C.D. Cal. June 17, 2013)........... 18

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)......................................................................... 13

*Miller v. Ghirardelli Chocolate Co.*,
    No. 12-cv-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015)................ 18

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) .................................................................... 24

*Tiro v. Public House Investments, LLC*,
    No. 11 Civ. 7679(CM), 2013 WL 2254551 (S.D.N.Y. May 22, 2013).......... 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................ 11, 20, 23

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)........................................................................... 24

*Williams v. First Nat. Bank*,
    216 U.S. 582 (1910)..................................................................................... 11

*Yang v. Focus Media Holding Ltd.*,
    No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)................ 12

*Yuzary v. HSBC Bank USA, N.A.*,
No. 12 Civ. 3693(PGG), 2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013) .......................... 14

## RULES

Federal Rules of Civil Procedure
Rule 23(a)......................................................................................................... 25
Rule 23(b) ......................................................................................................... 25
Rule 23(b)(3)................................................................................................. 22, 25
Rule 23(c)(2)(B)................................................................................................. 23
Rule 23(e)...................................................................................................... 1, 11
Rule 23(e)(1)...................................................................................................... 23

Plaintiff Benjamin Careathers, and Plaintiffs David Wolf and Miguel Almaraz, (collectively "Plaintiffs") respectfully submit this memorandum of law in support of their request for final approval, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, of the proposed Stipulation of Settlement ("Settlement Agreement") (ECF No. 42-1) between Red Bull North America, Inc., Red Bull Distribution Company, Inc., Red Bull GmbH (collectively, "Red Bull" or "Defendants"), and Plaintiffs, on behalf of themselves and the Settlement Class.

## I.    <u>INTRODUCTION</u>

The Proposed Settlement (the "Settlement") confers substantial benefits on the Settlement Class Members, and reflects an extremely favorable result for Class Members given the serious litigation risks facing them in this complex class action.  The overall Settlement includes (1) $13 million in benefits via a Settlement Fund comprised of distributions of cash refunds and free product to members of the Class, funds to compensate an experienced Class Action Settlement Administrator, and under limited circumstances, a potential small contribution to charity as a *cy pres* remedy, and (2) a total of $4,765,000 in attorneys' fees and expenses, which amount includes a $5,000 incentive award for each of the three Class Representatives, paid separate and apart from the Settlement Fund.  Red Bull will also ship the free products directly to Class Members at its own expense, notably increasing the overall value of the Settlement.

In addition to the significant monetary value achieved on behalf of the Class, Plaintiffs' have achieved significant injunctive relief insofar as Red Bull has withdrawn and/or updated, as appropriate, its marketing materials on its website, on its product labeling and elsewhere, achieving all or substantially all of the injunctive relief that could have been obtained had the action been litigated to conclusion.

On September 3, 2015, the Court granted Plaintiffs' Joint Motion for Preliminary Approval of Class Action Settlement, preliminarily approving the Settlement, conditionally

certifying a class, approving the form of Notice and appointing Morelli Alters Ratner, LLP and Kaplan Fox & Kilsheimer LLP as Class Counsel.  (ECF No. 45.)

The Settlement is the product of extensive, good-faith and arms' length negotiations between experienced counsel, and under the auspices of a respected mediator.  The parties agreed to settlement terms that they believe will fairly resolve this action, avoid protracted, expensive and uncertain litigation, and reasonably and adequately provide prompt effective relief for putative class members.

The response to the settlement has been favorable and overwhelming.  Indeed, Class members have submitted more than two million valid claims.[1]  The notice program commenced on October 3, 2014 and the internet and mobile advertising component was completed on November 14, 2014.  As detailed here, in the papers previously submitted in support of preliminary approval (ECF Nos. 40-42) and in the Joint Decl., the Settlement is an extremely favorable result for the Settlement Class and should be approved as fair, reasonable, and adequate, and final approval should be granted.

## II.   **BACKGROUND**

### A.   **The Litigation**

Red Bull manufactures, markets and sells the popular line of Red Bull energy drinks, which was introduced into the United States in 1996-97.  The energy drinks marketed under the Red Bull brand include Red Bull® Energy Drink, Red Bull® Sugarfree, Red Bull® Total Zero and

---

[1] *See* Declaration of Jennifer Keough ("Keough Decl.") attached as Exh. A to the Joint Declaration of Benedict P. Morelli and Laurence D. King in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement, and (2) Plaintiffs' Motion for Approval of Attorneys' Fees, Service Awards, and Reimbursement of Expenses ("Joint Decl.") filed concurrently herewith.

Red Bull® Editions. The drinks have been extremely popular — since its launch here, billions of units have been sold in the United States.

On January 16, 2013, Plaintiff Careathers, a longtime consumer of Red Bull beverages, commenced a putative national class action in the Southern District of New York under the caption *Careathers v. Red Bull North America, Inc., et al,* Case No. 1:13-CV-0369 (S.D.N.Y) (the "New York Action"). On February 27, 2013, Plaintiffs Wolf and Almaraz filed their class action complaint in the Central District of California, under the caption *Wolf v. Red Bull GmbH, et al.,* No. cv 13-01444 (C.D. Cal.) (the "California Action").

In their national class action complaints Plaintiffs alleged, *inter alia,* that Red Bull had made various representations to consumers about the purported superior nature of Red Bull, over simpler and less expensive caffeine only products, such as caffeine tablets or a cup of coffee. To bolster those claims Red Bull posted "scientific studies" on the Red Bull website which purportedly "proved" Red Bull's superiority even though no competent, credible and reliable scientific evidence exists to support Defendants' claims about the product. Red Bull disseminated its deceptive and misleading information via television commercials, internet websites and postings, blast emails, radio media, blogs, video news releases, advertisements, and the packaging of Red Bull energy drinks, all of which are intended to induce consumers into purchasing and/or paying a price "premium" for its beverages. Joint Decl., ¶ 10.

For example, pre-lawsuit versions of Red Bull's website touted the "functional benefits" of the products linked to posted scientific studies purportedly supporting those false claims[2] including:

---

[2] *See, e.g.* Rob Frankel Expert Report ("Frankel Report"), attached as Exhibit E to the Joint Decl., pp. 18-20.

(1)     Red Bull Energy Drink is a functional beverage;

(2)     Thanks to a unique combination of high quality ingredients Red Bull Energy Drink vitalizes body and mind; and

(3)     Numerous scientific studies on the product and the individual ingredients prove that Red Bull Energy Drink:  increases performance, concentration and reaction speed, improves vigilance, stimulates metabolism and makes you feel more energetic and thus improves your overall well-being.

In addition, Red Bull Energy Drink cans deceptively stated:

- Improves performance, especially during times of increased stress or strain

- Increases Endurance

- Increases concentration and improves reaction speed

- Stimulates the metabolism

However, Red Bull has now removed the false statements from its website, ceased promoting the scientific studies as support for those claims, eliminated the deceptive language from its product labels, and as part of the Settlement has confirmed that all future claims about the functional benefits and safety of its products will be medically and/or scientifically-supported, injunctive relief which provides additional value to the Class.  Joint Decl., ¶ 11.

In addition to removing the allegedly deceptive representations on its product labeling, Red Bull marketing materials now include important information for consumers. For example, on its current website in response to the question, "Who should limit their consumption or abstain from drinking Red Bull Energy Drink," Red Bull posts advice and warnings related to the effects Red Bull energy drinks may have on children, pregnant and breast feeding women and caffeine-sensitive persons.  Joint Decl., ¶ 12.  In addition to making changes on its website post-lawsuit, Red Bull also made changes to its can labels, beefing up its warnings, and removing the allegedly deceptive functional benefit claims described above from its cans, and replaced them

with a more generic lifestyle statement.  *See* Joint Decl., ¶ 13, and Exhs. H-1 and H-2 attached thereto.

The New York and California cases were consolidated on December 20, 2013.  (ECF No. 36.)  Red Bull is prepared to file comprehensive motions to dismiss the actions brought by the Plaintiffs if the settlement is not approved.

## B.    Settlement Negotiations and Mediation

Plaintiff Careathers and Red Bull began to discuss the possibility of a settlement shortly after the filing of the *Careathers* Amended Complaint.  In April, 2013, counsel met in person at Plaintiff Careathers's counsel's New York office to discuss the parties' relative positions and start to consider a framework of a resolution of the lawsuit that would be both mutually acceptable and present a favorable disposition to the putative class(es) that Plaintiff Careathers purports to represent.  The parties met once again in person at counsel's offices on April 15, 2013.  Joint Decl., ¶ 14.

Subsequent to that meeting, Plaintiffs' counsel in the California action became involved in the settlement negotiations.  After further conversations between counsel for Red Bull and counsel for Plaintiffs in both cases, all parties engaged in mediation in Los Angeles, California on June 24, 2013, and in New York on July 12, 2013, before mediator Hon. Peter D. Lichtman (Ret.), a highly experienced former complex litigation judge of the Los Angeles, California Superior Court.[3]  After more than 12 hours of mediation, the parties accepted a "mediator's proposal" presented by Judge Lichtman.  After months of negotiation over the detailed terms of the Settlement, the parties memorialized these terms in the Settlement Agreement.  Joint Decl., ¶ 15.

---

[3] *See* Resume of the Hon. Peter D. Lichtman (Ret.) attached as Exh. F to the Joint Decl.

Attorneys' fees and expenses, as well as class representative incentive awards, were negotiated separate and apart, and following, negotiation of the settlement relief provided to the nationwide Settlement Class. Joint Decl., ¶ 23.

## III. MATERIAL TERMS OF THE SETTLEMENT

The following is a general summary of the principal terms provided in the Settlement Agreement. The settlement relief includes cash payments, direct-distributed free products, non-monetary injunctive relief, and, under certain limited circumstances, a potential small contribution to a charity as a *cy pres* remedy. The Settlement Agreement also provides for payment of Plaintiffs' attorneys' fees and expenses, releases, the parameters of the class notice program, and payment of the costs of notice and claims administration. In total, the Settlement includes $13 million earmarked for distribution of cash and free product to Class members, and for the cost of a comprehensive Notice Plan and the administration of the claims process, and a separate payment by Red Bull of attorneys' fees up to $4,750,000, and $5,000 in an incentive award for each of the Class Representatives.

### A. Class Benefits

The Settlement Agreement previously filed July 31, 2014, provides Settlement Class Members – defined to include all persons who purchased Red Bull products in the United States between January 1, 2002 up to and including the date that Class Notice was provided to Class members — who execute a valid and timely Claim Form attesting under penalty of perjury that they purchased one or more Red Bull products during the Class Period, to elect to receive either a cash reimbursement *or* free Red Bull products.

#### 1. Cash Reimbursements and Free Product for Claimants

More than two million Class Members have filed valid claims for cash or free product. As more fully described in the Keough Decl. attached as Exh. A to the Joint Decl., the high

volume of responses necessitates the application of a *pro rata* reduction of the amount each

Settlement Class Member will receive in either cash or product. Garden City estimates a *pro

rata* award value of approximately 42.31% of the originally estimated award amounts, $10.00

cash and $15.00 in product. This *pro rata*, applied equally to all claims, will result in an

approximate payment of $4.23 to each Class Member who elected the Cash Option and the

equivalent of approximately $6.35 in the product type selected to each Class Member who

elected to receive the Product Option.[4] After this *pro rata* rate is applied, the total award amount

for valid Cash Option Claims is $5,477,492.26, which will require that $1,958,210.68 in

additional funds be deposited in the Settlement Cash Fund by Red Bull, in order that Garden City

may distribute this amount to Class Members in cash. This will leave a remaining $4,541,789.32

which will be distributed in Product Options to Class Members. Keough Decl., ¶ 15 attached as

Exh. A to the Joint Decl.

### 2.    Additional Distributions or *Cy Pres* Remedy

Once distribution of checks for cash reimbursement is made, and after the 120 day

redemption window for those checks, there will be a determination of how many checks remain

uncashed and are therefore void. If the total value of those uncashed checks is less than

$100,000.00, such amount will be donated as a *cy pres* remedy to one or more charitable

organizations mutually agreed upon by the parties. If the total value of the uncashed checks

equals or exceeds $100,000.00, the unpaid checks will be cancelled and there will be a second

distribution of checks, each in an amount determined on a *pro rata* basis, to those Claimants

choosing the Cash Option who did cash their initial checks. (Settlement Agreement, § IV.A.10.)

---

[4] Currently, Red Bull plans to ship a 4-pack of free product to each of these Claimants, at Red Bull's expense, subject to final approval and final report of the claims administrator.

### 3.     Injunctive Relief

While Red Bull asserts that its marketing materials, advertising, and labeling have always been entirely truthful and accurate, following the commencement of the New York and California Actions, the company updated its marketing and labeling directed at United States consumers including the withdrawal of the false statements from its website, and the scientific studies as support for those claims, such that the parties agree, for purposes of the Settlement Agreement, that the updated materials satisfy any and all claims that have been asserted in this Litigation.  As part of the Settlement Red Bull has confirmed that all future claims about the functional benefits and safety of its products will be medically and/or scientifically-supported. (Settlement Agreement, § IV.B.3.)  In addition to removing the allegedly deceptive representations on its product labeling, Red Bull marketing materials now include important information for consumers.  Joint Decl., ¶¶ 7, 11-13.  As analyzed by Plaintiffs' branding expert, Rob Frankel, the injunctive relief obtained in the settlement provides substantial value to the class.  *See* Frankel Report attached as Exh. E to the Joint Decl.

The substantial injunctive relief achieved through the settlement has achieved all or substantially all of the injunctive relief that could have been obtained had the action been litigated to conclusion.

### B.     Form and Manner of Notice to the Class

Pursuant to the Preliminary Approval Order, a comprehensive notice program was undertaken by Garden City to Class members.  As set forth in the Declaration of Lael Dowd Regarding Implementation of Notice Program ("Dowd Decl."), attached as Exhibit B to the Joint Decl., the measured portion of the Notice Program reached approximately 76 percent of the target audience of "Adults Who Drink Energy Drinks" approximately 2.7 times.  *Id.*, ¶ 19.  The Notice Program included:

- Publication of an advertisement run once in one print issue each of nationally circulated magazines: *People, Sports Illustrated,* and *Wired.*

- An internet campaign run for a period of six weeks through banner ad placements on the following websites: *Facebook, Xaxis* (formerly known as *Real Media Group*), *MSN* (Run of Network), *Yahoo! Sports*[5] , *Yahoo!* (Run of Network), *Google Display*, and *Univision.*

The banner ads directed people to the Settlement Website by clicking on the advertisement, as well as mobile advertising on *MSN* (Run of Mobile) and *Yahoo! Mobile.*

- The purchase of Google Ad Key Word Search with terms from a select list of keywords related to the Actions

- A Press Release distributed over PR Newswire's USI newsline and National Hispanic newslines in substantially the same form as the Publication Notice

- An informational website on which the Notices and other important Court documents were posted

- A toll-free information line where Class members could call to obtain information about the Settlement, as well as speak to a live customer service representative during business hours

The Long Form Notice posted at

http://www.energydrinksettlement.com/docs/longFormNotice.pdf, informed Class members of

the material terms of the Settlement, the procedures for each Class member to receive the

benefits under the Settlement; the relief the proposed settlement will provide; the date, time and

place of the final approval hearing; the procedures and deadlines for opting out of the settlement

or submitting comments or objections; and that, if they do not opt out, they will be bound by any

final judgment in this case, including a release of claims. The Notice also advises Class members

that Plaintiffs' counsel will apply to the Court for an award of fees and expenses, and that this

---

[5] ESPN.com refused acceptance of running the banner advertisement at the time of the buy, therefore impressions were purchased on *Yahoo! Sports*, which is an appropriate substitute.

award will be paid by Red Bull without reducing the cash payments and other benefits provided to the Class under the Settlement.

## C.     **Plaintiffs' Service Awards and Attorneys' Fees and Expenses**

Pursuant to the Settlement Agreement, Class Counsel are contemporaneously applying for an incentive award to class representatives Benjamin Careathers, David Wolf and Miguel Almaraz of $5,000 per representative for their efforts in filing and participating in the litigation and settlement on behalf of themselves and all others similarly situated. (Settlement Agreement, § VIII.B.) The incentive awards will be paid separate and apart from the value being distributed to the Settlement Class. (*Id.* § VIII.C.)

Class counsel have also filed contemporaneously with this motion, and Red Bull has agreed not to oppose, a motion for an award of attorneys' fees, costs and expenses in an amount not to exceed a total of $4,750,000. Class Counsel's application seeks compensation for the services provided and expenses advanced by Class Counsel in this case since inception, and for ongoing and future fees and expenses that may be incurred through finalization of settlement of the action including responding to objectors and if necessary, defending the settlement on appeal. (*Id.* § VIII.A.) Subject to this Court's approval, Red Bull will pay the award of Attorneys' fees, costs, and expenses separate and apart from the money or value in the Distribution Fund, thereby not reducing the amount available in money and free product being disseminated to the Settlement Class. (*Id.* § VIII.C.)[6]

---

[6] In the event that the judgment entered pursuant to this settlement shall not become final or is ultimately overturned on appeal, Class Counsel shall return in full the amount of attorneys' fees and expenses paid to them, if any. (*Id.* § VIII.D.)

### D.    Releases

As of the Effective Date, each Settlement Class Member who has not validly excluded himself or herself from the Settlement Class shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against Red Bull.  Settlement Agreement § VII.  The Release does not release personal injury claims.

## IV.    ARGUMENT

### A.    Legal Standards for Settlement Approval

It is well-settled that "[c]ompromises of disputed claims are favored by the courts . . . ." *Williams v. First Nat. Bank*, 216 U.S. 582, 595 (1910) (citation omitted).  This "strong judicial policy in favor of settlements" is particularly significant "in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations and citation omitted); *In re Marsh Erisa Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("There is a strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations and citation omitted); *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private resources.") (citations omitted).

Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  When determining whether to approve a settlement pursuant to Rule 23(e) courts are required to ensure that the settlement is "procedurally and substantively fair, reasonable, and adequate."  *Yang v. Focus*

*Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *4 (S.D.N.Y. Sept. 4, 2014) (citing Fed. R. Civ. P. 23(e)).

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014). Therefore, "procedural" and "substantive" fairness should be examined "in light of the strong judicial policy in favor of settlement of class action suits." *Id.* (quoting *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 JLC, 2013 WL 1364147, at *2 (S.D.N.Y. Apr. 2, 2013)) (internal quotation marks, citations, and alterations omitted).

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Yang,* 2014 WL 4401280, at *4 (citing *Wal-Mart*, 396 F.3d at 116). Where a settlement is the "product of arm's length negotiations conducted by experienced, capable counsel," it enjoys a "presumption of correctness." *Id.* (citations omitted); *see also Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010) (class settlement may be presumed fair, adequate and reasonable where negotiated at arm's length by experienced counsel after sufficient investigation/discovery).

In determining the "substantive fairness" of a settlement, Courts in the Second Circuit look to the factors set forth in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (the "Grinnell factors"). These factors are: (a) the complexity, expense and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability, damages, and maintaining the class action through the trial; (e) the ability of the defendants to withstand a greater judgment; and (f) the range of reasonableness of the settlement fund in light of the best possible

recovery and all attendant risks of the litigation. *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *8 (E.D.N.Y. Nov. 10, 2014) (citing *Advanced Battery Techs.*, 298 F.R.D. at 175 (citing *Grinnell Corp.,* 495 F.2d at 463). "*All nine factors need not be satisfied*; the court must look at the totality of these factors in light of the specific circumstances involved." *In re Hi-Crush Partners L.P. Secs. Litig.*, No. 12–Civ–8557 (CM), 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) (citing *In re Global Crossing*, 225 F.R.D. at 456) (emphasis added).

### B.    The Settlement Is Procedurally Fair

The proposed settlement was negotiated at arm's length and in good faith by highly qualified and experienced counsel who sought to obtain the best possible result for their clients (and, in the case of Plaintiffs' counsel, the Settlement Class). Accordingly, the Settlement is entitled to a "presumption of fairness." *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (citation omitted); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("So long as the integrity of the arms' length negotiation process is preserved [] a strong initial presumption of fairness attaches to the proposed settlement, [] and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal quotations and citations omitted); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) ("[A] class action settlement enjoys a 'presumption of correctness' where it is the product of arm's-length negotiations conducted by experienced, capable counsel") (citations omitted); *In re PaineWebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (same).

Here, counsel for both Plaintiffs and Red Bull have a substantial amount of experience in litigating putative class actions as well as negotiating settlements in that context. After independent, thorough analyses of the potential risks and rewards of litigating this case through

discovery, dispositive motion practice, potential interlocutory appeals, and trial, all parties concluded that the Settlement Agreement sets forth acceptable terms and recommended the settlement for approval. Joint Decl., ¶ 22.

The fairness of the Settlement is further confirmed by the fact that the parties engaged in extensive mediation with Judge Lichtman, leading to a mutual acceptance and further refinement of the settlement terms. *See Tiro v. Public House Investments, LLC*, No. 11 Civ. 7679(CM), 2013 WL 2254551, at *2 (S.D.N.Y. May 22, 2013) ("The assistance of an experienced JAMS employment mediator . . . reinforces that the Settlement Agreement is non-collusive"); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 1832181, at *2 (S.D.N.Y. Apr. 30, 2013) (same); *In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding the arms' length negotiation element "amply satisfied" where the parties, "represented by highly experienced and capable counsel, engaged in extensive arms' length negotiations, which included multiple sessions mediated by . . . an experienced and well-regarded mediator of complex . . . cases"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding class action settlement presumptively fair because, *inter alia*, "counsel have provided the Court significant evidence demonstrating that this settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator").

### C. The Settlement Is Substantively Fair

The terms of the proposed settlement should be approved as fair, adequate, and reasonable. Not only are the benefits being conferred on the Settlement Class Members substantial, but they also reflect an extremely successful outcome for Class Members given the serious litigation risks facing them in this complex class action. The *Grinell* factors strongly militate in favor of granting final approval of the Settlement.

### 1. The Complexity, Expense and Likely Duration of the Litigation

If the litigation continued, the parties would have to undergo the time and expense of discovery and motion practice, both with respect to class certification and the substantive merits of the underlying claims. Red Bull has already stated its intent (and, in the *Careathers* Action, taken steps) to move to dismiss the Complaints, and it is likely that there would also be motions for summary judgment if the case reached that point.

Further, the Defendants and the Plaintiffs would likely engage experts with respect to both liability and damages. A trial consisting of a "battle of experts" would be complex and lengthy, with an uncertain outcome. Under these circumstances, the complexity, expense, and likely duration of the litigation weighs in favor of settlement. *See Sinus Buster*, 2014 WL 5819921, at *8 (E.D.N.Y. Nov. 10, 2014) (citing *Dupler*, 705 F. Supp. 2d at 239).

### 2. The Risks Related to Liability, Damages, and Trial

In assessing the risks that a putative class would face if there were further litigation, courts must consider "legal theories and factual situations without the benefit of a fully developed record." *Sinus Buster*, 2014 WL 5819921, at *10 (citation omitted). Therefore, courts must not "decide the merits of the case." *Id.* (citation omitted). Rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (citation omitted).

If Plaintiffs were to continue the class action litigation against Red Bull, it would entail a lengthy and highly expensive legal battle involving complex legal and factual issues where motions would be vigorously contested. There is no guarantee that Plaintiffs and Class Members would obtain the relief secured by this settlement, and even so, such relief may not be obtained for some time.

If the settlement is not consummated, Red Bull has represented that it will raise — and indeed, already has raised — numerous defenses and legal challenges to the certification of liability and/or damages classes, the underlying merits of Plaintiffs' claims, and attempts to demonstrate damages. By way of example, as previewed in the letter Red Bull sent to Plaintiff Careathers pursuant to Judge Marrero's Individual Practice Section II.A, and in the pre-motion letter sent to this Court on September 30, 2013, and as would likely be fleshed out in dispositive motions, Red Bull contends that there are serious, irremediable deficiencies in Plaintiff Careathers's pleading, and that all of the causes of action should be dismissed with prejudice. Red Bull further contends that a number of the state consumer protection statutes invoked by Plaintiff Careathers do not provide for monetary relief and that Red Bull's removal of challenged marketing statements entitles it to statutory "safe harbors" that eliminate the prospect of compensatory damages for many putative class members. At minimum, it is likely that proving the quantum of damages would prove difficult and expensive, and ripen into a "battle of experts."

Given the uncertainty present at all stages of the litigation, Plaintiffs have a strong interest in accepting, on behalf of a nationwide settlement class, millions of dollars' worth of immediate relief. Red Bull also understands the value of resolving these issues now to avoid protracted litigation. In light of these realistic concerns on the part of both Red Bull's and Plaintiffs' highly experienced and qualified counsel, and the added benefit of promoting judicial efficiency and economy, the proposed settlement is fair, adequate, and reasonable.

### 3.    Comparable Settlement Terms Have Been Readily Approved

Lest there be any doubt as to the propriety of the terms agreed to by the parties in the Settlement Agreement, it bears noting that the Settlement Agreement is in line with — if not more generous to the Settlement Class than — other settlements recently approved by courts in

this District and elsewhere in similar class actions concerning alleged consumer deception by food and drink manufacturers.

For example, in 2012, this District granted final approval to a class action settlement in *Fishbein v. All Market, Inc.*, No. 11-cv-5580-JPO (S.D.N.Y. 2012), in which the plaintiff sought to represent a class of consumers allegedly deceived by marketing claims that the coconut water product at issue was, among other things, "super hydrating" and "nutrient-packed." Contending that those product claims were undermined by scientific studies, plaintiff asserted claims under various state consumer protection statutes and breach of warranty. The court granted final approval to a settlement that certified a class of nationwide purchasers of the beverage over a nearly five year period and provided $10 million in value to the Settlement Class Members, divided into cash refunds (including $6 for consumers who lacked proof of purchase) and product vouchers (including $8 value for consumers who lacked proof of purchase). *See id.*, Final Order and Judgment, Aug. 22, 2012 [ECF No. 52]; Order Granting Preliminary Approval of Settlement with Al Market Inc. d/b/a Vita Coco, Apr. 12, 2012 [ECF No. 30].

Similarly, in *In Re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, No. 4:08-md-01907 (E.D. Mo. 2013), the Eastern District of Missouri granted final approval of a class action settlement in which plaintiff brought causes of action under various state consumer protection statutes and for breach of warranty based on alleged misrepresentation of the manner in which the dairy cows used in the defendant's production process were raised and fed. *See id.*, Final Order and Judgment, Feb 26, 2013 [ECF No. 356]. The approved settlement certified a nationwide class of all purchasers of the product prior to September 1, 2012, providing class members with settlement value amounting to $7.5 million in rebates ($10 for those consumers that lacked proof of purchase). *See id.*

Another example is the final approval of a settlement in 2012 in *In re Nutella Marketing & Sales Practices Litig.*, No. 3:11-cv-01086 (D.N.J. 2012). In that case, the plaintiff brought a class action for violation of state consumer protection statutes and breach of warranty alleging that television and print advertisements for the chocolate-hazelnut spread Nutella® were false and misleading by suggesting that the product is nutritious and an appropriate part of a balanced breakfast. *See id.*, Final Approval Order and Judgment, July 30, 2012 [ECF No. 104]; Order Granting Preliminary Approval of Settlement, Preliminarily Certifying Settlement Class and Approving Class Notice, Feb. 3, 2012 [ECF No. 67]. The settlement terms that were granted final approval by the District of New Jersey included certification of a nationwide class of Nutella® purchases over a four year period (slightly shorter for a California subclass also certified) and a total value of $6.95 million in cash refunds ($4 per jar up to $20 per household). *See id.*

Moreover, courts have regularly granted final approval of settlements in false advertising and consumer protection class actions where the settlements resulted in dissemination of free products and/or cash to class members from considerably smaller settlement funds than the $13 million Settlement Fund achieved herein. *See, e.g.*, *Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (court approved settlement included non-reversionary settlement fund of $8.5 million to be distributed to class members on a claims-made basis, and provided yogurt purchasers $4 for each unit of product purchased); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *1 (N.D. Cal. Feb. 20, 2015) (where plaintiffs alleged defendant falsely labeled its products as "all natural" and mislead consumers to believe that its "White Chips" contained white chocolate, the settlement included $5.25 million common fund from which class members will obtain $1.50 per

purchase of the White Chips and $0.75 per purchase of any of the other products labeled "All Natural"); *Astiana v. Kashi*, Final Judgment and Order, No. 3:11-cv-1967-H-BGS (S.D. Cal. Sept. 2, 2014) (where plaintiffs alleged defendant falsely marketed and labeled their products as containing "Nothing Artificial" court approved settlement included $5 million settlement fund permitting class members to seek reimbursement of $0.50 per package for every Kashi product purchased between August 24, 2007 and May 1, 2014) [ECF No. 242].

As the above recent settlements suggest, the settlement terms for which the parties seek approval in this case are well within the bounds of reasonableness and fairness and, in at least one respect, are superior. Rather than issuing vouchers or rebates for Defendants' products that require redemption by the consumer, here a Settlement Class Member choosing the Product Option will receive free products direct-shipped to him or her with no additional cost or action required.

### 4.     The Stage of the Proceedings and the Amount of Discovery Completed

Under this factor the relevant inquiry is "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *Sinus Buster*, 2014 WL 5819921, at *9 (citing *In re AOL Time Warner, Inc.,* No. 02 CIV. 5575(SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)). The parties "need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make an appraisal' of the settlement." *Id.* (quoting *In re Austrian & German Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)); *see also In re Nissan Radiator/Transmission Cooler Litig.,* No. 10 CV 7493(VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (finding the factor to weigh in favor of approval where "[a]lthough the parties have not engaged in extensive discovery . . . the

plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of the proposed settlement").

Class Counsel conducted a comprehensive pre-suit investigation and expended significant time and labor: (1) performing factual research about Red Bull and its advertising and marketing practices; (2) performing legal research about potential causes of action against Red Bull, and about the proper venue(s) and jurisdiction for this class action; (3) drafting and reviewing the Complaint; (4) speaking with industry consultants regarding the ingredients and effects of energy drinks such as Red Bull; (5) reviewing, researching and addressing issues raised by Red Bull in response to the California Plaintiffs' claims under the Consumers Legal Remedies Act; (6) reviewing, researching and responding to arguments Red Bull raised in a detailed motion letter challenging the sufficiency of the Complaint in the New York action and advising of its intent to move for dismissal; (7) drafting and reviewing the Amended Complaint filed in the New York Action; (8) researching various issued raised by Red Bull as the parties negotiated the final terms and conditions of the Settlement Agreement, and (9) consulting and meeting with a branding expert to analyze the injunctive relief obtained in the Settlement. Joint Decl., ¶ 28. During mediation, the parties engaged in a candid discussion about Red Bull's sales figures and other relevant information. As a result, Plaintiffs' counsel obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement. It was only through these efforts that Plaintiffs were able to secure the significant recovery obtained through the Settlement.

### 5. The Reaction of the Class to the Settlement

Another factor the Court should consider is the reaction of the Class to the settlement. *See Wal-Mart*, 396 F.3d at 118. The reaction of the Class has been overwhelmingly positive.

The claims administrator has reported no serious difficulties in the claims process.[7] Class members had until April 1, 2015 to request exclusion from the Settlement Class or to object to the settlement. As of that deadline, and after almost 100 million "hits" on the settlement web site, only twenty-nine Class members have submitted requests for exclusion, and only approximately ten Class members have submitted Objections. Some of the objections appear to be the work of "professional objectors" and others may not have met the procedural requirements to object.[8] However, Class Counsel will substantively respond to all objections received to date on April 24, 2015. (ECF No. 45, ¶ 25.)

### 6. Settlement Class Members Are Promptly Receiving Substantial Monetary and Non-Monetary Relief

The settlement contains an option of either a cash payment or direct-shipped free products. As discussed above, due to the overwhelming response by the Class, a *pro rata* payment prescribed in the Settlement Agreement will be calculated, and should provide each Class Member who elected the Cash Option approximately $4.23, and for each Class Member who elected to receive the Product Option, the equivalent of approximately $6.35 in the product type selected by Red Bull.[9]

---

[7] The settlement website, settlement website at http://www.energydrinksettlement.com/ went live on October 3, 2014. In less than a 24 hour period, the Settlement Website received approximately 67,000,000 hits. As such, on the morning of October 9, 2014, under the onslaught of extremely heavy traffic generated from public interest and media notoriety, the Settlement Website became intermittently unavailable. In less than 30 hours, Garden City was able to accommodate this unparalleled website traffic. *See* Keough Decl. attached as Exh. A to the Joint Decl., ¶¶ 8, 9.

[8] Of the ten Class members, three have provided notice of their intent to appear at the hearing of May 1, 2015. Class Counsel will respond to all objections received to date on April 24, 2015. (ECF No. 45, ¶ 25.)

[9] Currently, Red Bull plans to ship a 4-pack of free product to each of these Claimants, at Red Bull's expense, subject to final approval and final report of the claims administrator.

Every consumer of a Red Bull beverage dating back over 10 years has been eligible to claim benefits without any need to provide proof of purchase beyond attesting that they satisfy the requirements to be included in the Class.  In addition, the Class is receiving substantially valuable injunctive relief; no particular segment of Red Bull consumers is receiving preferential treatment; and all class members are treated equally, with the sole exception that each of the three individual named class representatives will receive a modest $5,000 payment separate and apart from the Settlement Fund in recognition of their service on behalf of the class.[10]  Nor is the settlement amount being diminished by attorneys' fees, which are to be paid separate and apart from the value being provided to the Settlement Class.[11]

Beyond monetary benefits, Red Bull has already modified or withdrawn challenged marketing statements, has no intention of reviving the challenged statements absent scientific or medical support for the statements, and will ensure that future representations concerning functional benefits of Red Bull consumption continue to be amply supported.  In other words, for all intents and purposes, the Settlement Class has already obtained virtually all of the injunctive relief that it could reasonably hope to achieve if it proceeded to trial.  Accordingly, the settlement provides the Settlement Class Members with both immediate and substantial relief without incurring the inherent costs and uncertainty of trial.

## V.  NOTICE WAS CONDUCTED IN THE BEST PRACTICABLE MANNER

### A.  Legal Standard

For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all

---

[10] Courts routinely approve such incentive awards.  *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.N.Y. 2010).

[11] *See e.g., Blessing v. Sirius XM Radio Inc.*, 507 Fed. App'x 1, 4 (2d Cir. 2012).

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to a class of a *settlement* similarly requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Accordingly, the Second Circuit has explained:

> The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness . . . . [T]he settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. [] Notice is adequate if it may be understood by the average class member.

*Wal-Mart*, 396 F.3d at 113-14 (internal quotations and citations omitted).

**B.      The Notice Program Reasonably and Adequately Provided Notice To and Informed All Identifiable Settlement Class Members**

As more fully set forth in the Dowd Decl. attached at Exh. B to the Joint Decl., at ¶ 5, the Notice Program was calibrated to provide broad and effective dissemination of the Notice to the Settlement Class Members. Garden City provided Notice through banner ad placements on popular websites and mobile advertising, directing people to the Settlement Website by clicking on the advertisement, and print publications of broad and targeted circulation so that all potential Class members had adequate notice of the Class Settlement. The Settlement Website provided further information to Class members, including the date of the fairness hearing, procedures for submitting a  claim form, and procedures for opting out or objecting to the settlement.

The form of Notices approved by this Court provided all of the information required under Rule 23(c)(2)(B), and they "fairly apprise[d] the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the

settlement." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) (citation omitted).

The Notice Program generated an unprecedented response to the Settlement Website from Class Members and the media. In less than a 24 hour period, the Settlement Website received approximately 67 million hits. As of April 5, 2015, the Settlement Website had received over 104,900,000 hits. Keough Decl., attached as Exh. A to the Joint Decl., at ¶¶ 9, 10. In light of the overwhelming, if not unprecedented, response to the Settlement – including the Settlement being further publicized by major media outlets[12] – it is safe to say that the Notice Program was successful. The Notice Program having been properly executed, this Court should grant final approval of the Settlement.

## VI.   THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 261, 270 (2d Cir. 2006) (permitting lower court's conditional certification of a class for settlement purposes). "Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'" *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (quoting *Giant Interactive*, 279 F.R.D. at 158 (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)); *see also Weinberger v. Kendrick,* 698 F.2d 61, 72 (2d Cir. 1982) ("[t]emporary settlement classes have proved to be quite useful in resolving major

---

[12]  For example, *USA Today* (www.usatoday.com/story/money/.../red-bull.../16959529/), BuzzFeed (http://www.buzzfeed.com/rachelzarrell/if-you-bought-a-red-bull-in-the-last-12-years-they-owe-you-m#.cqdrLzrgO), and ABC News (http://abcnews.go.com/US/bought-red-bull-2002-10/story?id=26062551).

class action disputes") (internal quotation marks omitted). "Classes certified for settlement purposes, like all other classes, must meet the requirements of Rule 23(a) and at least one of three requirements set forth in Rule 23(b)." *In re Marsh & McLennan Cos., Inc. Sec. Litig.,* No. 04 Civ. 8144(CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (citation omitted).

While a settlement class, like other certified classes, must satisfy Federal Rules of Civil Procedure 23(a) and 23(b), the concerns of Rule 23(b)(3) regarding manageability of the class action are not at issue in certification of a settlement class, and the Court may properly consider that there will be no trial in which to manage a class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).[13]

Here the proposed Class meets all requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3). The Court preliminarily granted certification of a Class. *See* ECF No. 45, ¶ 10. Thus, Plaintiffs, for the reasons stated herein and in their joint motion for preliminary approval (ECF No. 41), now request that the Court certify the proposed Class for settlement purposes.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement and certify the Class.

Dated:  San Francisco, CA
          April 8, 2015

KAPLAN FOX & KILSHEIMER LLP

By:   _/s/ *Laurence D. King*_
          Laurence D. King

---

[13] Red Bull is not opposing conditional class certification for purposes of settlement only, but has stated that it reserves all rights to challenge the certification of liability and/or damages classes if the settlement is not approved, including without limitation for the reason that manageability of a trial is a concern under Rule 23(b)(3).

Laurence D. King
Linda M. Fong
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

KAPLAN FOX & KILSHEIMER LLP
Justin B. Farar
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:   (310) 575-8697
jfarar@kaplanfox.com

*Attorneys for Plaintiffs David Wolf & Miguel
Almaraz*

Respectfully submitted,

MORELLI ALTERS RATNER, LLP

Dated:    New York, New York
          April 8, 2015

By:    _/s/ *Benedict P. Morelli*_____
              Benedict P. Morelli

Benedict P. Morelli
David S. Ratner
Adam Deutsch
777 Third Avenue, 31st Floor
New York, NY 10017
bmorelli@morellialters.com
dratner@morellialters.com
adeutsch@morellialters.com

MORELLI ALTERS RATNER, LLP
Jeremy W. Alters
Matthew T. Moore
Miami Design District
2675 N.E. 188th Street
Miami, Florida 33180
jalters@morellialters.com
mmoore@morellialters.com

*Attorneys for Plaintiff Benjamin Careathers*

## CERTIFICATE OF SERVICE

The undersigned, an attorney admitted to practice law before this Court, hereby certifies under penalty of perjury that on April 8, 2015, I caused to be served a true and correct copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have appeared and consent to electronic service in this action, and by U.S. Mail on the following, addressed as indicated below:

Benedict P. Morelli
Morelli Ratner PC
950 Third Avenue
New York, NY 10022

I am readily familiar with my firm's practice of collection and processing correspondence for mailing and that practice is that the documents are enclosed in sealed envelopes, with postage prepaid thereon, and deposited with the U.S. Postal Service on that same date as this Certificate of Service.

_/s/ Laurence D. King_____
Laurence D. King