UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
BENJAMIN CAREATHERS,            :
individually, and on behalf of all others    :
similarly situated,              :      1:13-CV-0369 (KPF)
                        :
              Plaintiff,         :
                        :
        v.                :
                        :
RED BULL NORTH AMERICA, INC.,      :
a California corporation,           :
                        :
              Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
DAVID WOLF and MIGUEL          :
ALMARAZ, individually and on behalf of :      1:13-CV-08008 (KPF)
others similarly situated,          :
                        :
              Plaintiffs,        :
        v.                :      CLASS ACTION
                        :
RED BULL GMBH, a foreign company;    :
RED BULL NORTH AMERICA, INC., a   :
California corporation; and RED BULL    :
DISTRIBUTION COMPANY, INC., a     :
Delaware corporation,             :
                        :
              Defendants.       :
                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR APPROVAL OF
ATTORNEYS' FEES, SERVICE FEES, AND REIMBURSEMENT OF EXPENSES

Benedict P. Morelli
bmorelli@morellilalters.com
David S. Ratner
dratner@morellialters.com
Adam Deutsch

adeutsch@morellialters.com
MORELLI ALTERS RATNER, LLP
777 Third Avenue, 31st Floor
New York, NY 10017

Jeremy W. Alters
jalters@morellialters.com
Matthew T. Moore
mmoore@morellialters.com
MORELLI ALTERS RATNER, LLP
2675 N.E. 188th Street
Miami, Florida 33180

*Attorneys for Plaintiff Benjamin Careathers*


Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

Frederic S. Fox
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

Justin B. Farar
KAPLAN FOX & KILSHEIMER LLP
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:  (310) 575-8697
jfarar@kaplanfox.com


*Attorneys for Plaintiffs David Wolf and*
*Miguel Almaraz*

ii

TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ATTORNEYS' FEES .............................................................................................2

    A.      Standards for Evaluating Attorneys' Fees ............................................................2

    B.      The Total Settlement Value .................................................................................4

        i.      The "Constructive Common Fund" .................................................................5

        ii.     Valuation of the Injunctive Relief...................................................................7

    C.      The Requested Fees/Expenses are Reasonable and Appropriate...........................9

        i.      The Requested Fee Is a Reasonable Percentage .........................................9

        ii.     A Lodestar Analysis Further Demonstrates the Reasonableness...............11

        iii.    The Requested Fee Is Reasonable Under the Goldberger Factors.............12

            a.   Time and Labor Expended.................................................................12

            b.   The Magnitude and Complexities of the Litigation...........................13

            c.   The Risk of Litigation.......................................................................14

            d.   Quality of Representation .................................................................15

            e.   Requested Fee in Relation to the Size of the Settlement ...................17

            f.   Public Policy Considerations .............................................................19

        iv.     The Requested Expense Reimbursements are also Reasonable ...............20

III.    INCENTIVE AWARDS ........................................................................................20

        CONCLUSION....................................................................................................22

TABLE OF AUTHORITIES

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013) .................................................11, 21

*Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1 (2d Cir. 2012) ............................................4, 19

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276
    (S.D.N.Y. 2013) .....................................................................................................n.6, 18

*City of Providence v. Aeropostale, Inc.*, Case No. 11-cv-7132 CM GWG, 2014 WL 1883494
    (S.D.N.Y. May 9, 2014).......................................................................................3, n.6, 14, 18

*Cohen v. Chilcott*, 522 F. Supp. 2d 105 (D.D.C. 2007)...............................................................5, 6

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) ........................n.6, 11

*Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191 (3d Cir. 2014) ................................6

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231 (E.D.N.Y. 2010) .....................18, 19, 21

*Foos v. Ann, Inc.*, Case No. 11CV2794 L MDD, 2013 WL 5352969
    (S.D. Cal. Sept. 24, 2013) .........................................................................................n.2

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ....................................................4

*Guschausky v. Am. Family Life Assur. Co. of Columbus*, 851 F. Supp. 2d 1252
    (D. Mont. 2012) ..................................................................................................................5

*Hernandez v. Merrill Lynch & Co.*, Case No. 11-cv- 8472 KBF DCF, 2013 WL 1209563
    (S.D.N.Y. Mar. 21, 2013) ................................................................................................9–10, 11

*In re China Sunergy Sec. Litig.*, No. 07-cv-7895 (DAB), 2011 WL 1899715          (S.D.N.Y.
    May 13, 2011) .....................................................................................................................20

*In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 344 (S.D.N.Y. July 8, 2014) ..........3, 11, 21

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993)...............................................n.6

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*, Case No. 05-cv-10240 CM, 2007 WL
    2230177 (S.D.N.Y. July 27, 2007) ...................................................................................11

*In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380 (S.D.N.Y. 2005)...........3, 4, 5, 8, 11

*In re Independent Energy Holdings PLC Sec. Litiq.*, 302 F. Supp. 2d 180 (S.D.N.Y.2003) ........20

*In re Sinus Buster Products Consumer Litig.*, Case No. 12-cv-2429 (ADS)(AKT), 2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014) ............................................................18–19, 20– 21

*In re Sony SXRD Rear Projection Television Class Action Litig.*, Case No. 06-cv- 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .............................................................18, 19

*In re Veeco Instruments Inc. Sec. Litig.*, Case No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...............................................................................................3

*In re Warnaco Grp., Inc., Sec. Litig.*, Case No. 00-cv-6266 (LMM), 2004 WL 1574690 (S.D.N.Y. July 13, 2004) ............................................................................................n.6

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) .........................14, 15, 17

*Jermyn v. Best Buy Stores, L.P.*, Case No. 08-cv-214 CM, 2012 WL 2505644          (S.D.N.Y. June 27, 2012)............................................................................................17, 18, 20

*Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241 (8th Cir. 1996) .............................................5

*Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ........ passim

Manual for Complex Litigation (4th ed. Fed. Jud. Center 2004) ...............................................4, 5

*McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008) .....................................................7

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, Case No. 06-cv-4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...............................................................10

*Pokorny v. Quixtar, Inc.*, Case No. C 07-0201 SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013)...................................................................................................8

*Shapiro v. JPMorgan Chase & Co.*, Case No. 11-cv-7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................................................6, 11

*Sheppard v. Consol. Edison Co. of New York*, Case No. 94-cv-0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002)........................................................................................7

*Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219 (E.D.N.Y. 2009)............................18

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003)...........................................................................................................21

*Taft v. Ackermans*, Case No. 02-cv-7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007).................................................................................n.6, 15, 18

*Tennille v. W. Union Co.*, Case No. 09-cv-00938-MSK-KMT, 2013 WL 6920449
(D. Colo. Dec. 31, 2013)..................................................................................7

*Toure v. Amerigroup Corp.*, Case No. 10-cv- 5391 RLM, 2012 WL 3240461
(E.D.N.Y. Aug. 6, 2012).................................................................................10

*Velez v. Novartis Pharm. Corp.*, Case No. 04-cv-09194 CM, 2010 WL 4877852
(S.D.N.Y. Nov. 30, 2010)..................................................................................9

*Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349 (D.D.C. 2007)...................5, 6

*Westerfield v. Washington Mut. Bank*, Case No. 06-cv-2817(JMA), 2009 WL 5841129
(E.D.N.Y. Oct. 8, 2009)................................................................................n.6

*Will v. Gen. Dynamics Corp.*, Case No. 06-cv-698-GPM, 2010 WL 4818174        (S.D.
Ill. Nov. 22, 2010)....................................................................................8–9

*Yuzary v. HSBC Bank USA, N.A.*, Case No. 12-cv-3693 PGG, 2013 WL 5492998
(S.D.N.Y. Oct. 2, 2013) ...................................................................n.6, 11, 18

*Zeltser v. Merrill Lynch & Co.*, Case No. 13-cv-1531 FM, 2014 WL 4816134
(S.D.N.Y. Sept. 23, 2014) ...............................................................................11

## I.     INTRODUCTION

Named Plaintiffs Benjamin Careathers, David Wolf, and Miguel Almaraz, the Class representatives, hereby move the Court for entry of an Order awarding Morelli Alters Ratner LLP and Kaplan Fox & Kilsheimer LLP ("Class Counsel") — pursuant to the case law of this Circuit and the Stipulation of Settlement [ECF No. 42-1] (the "Stipulation") between the parties — attorneys' fees and reimbursement of out-of-pocket expenses in the amount of $4,750,000.00, to be paid by Defendants separate and apart from the money or value in the Settlement Fund.  In addition, Plaintiffs request that the Court grant incentive awards to Plaintiffs Benjamin Careathers, David Wolf, and Miguel Almaraz, the Class representatives, in the amount of $5,000.00 per representative, in recognition of their valuable service to the Class, also to be paid by Defendants separate and apart from the money or value in the Settlement Fund.

Following extensive, good-faith and arms' length negotiations between experienced counsel, and under the auspices of a respected mediator with substantial experience in complex litigation, the parties have agreed to Settlement terms that they believe fairly resolved this action, avoided protracted, expensive and uncertain litigation, and reasonably and adequately provided prompt effective relief for the Class Members.  The Stipulation of Settlement provides for a Settlement Fund in which Class Members are issued a choice of either a cash reimbursement or free Red Bull products, and the total value of said Fund is thirteen million dollars ($13,000,000.00).  The Stipulation of Settlement also provides for injunctive relief in the form of changes to Red Bull marketing and labeling, as set forth in the Expert Declaration of Rob Frankel, which provides substantial additional value to the Class.  Further, the Stipulation of Settlement includes the provision of attorneys' fees, incentive awards, and out-of-pocket

expenses — to be paid by the Defendants separate from the Settlement Fund — the total value of which is $4,765,000.00.

Plaintiffs' requested attorneys' fees and out-of-pocket expenses reimbursement of $4,750,000.00 represents no more than 26.1% of the total value of the Settlement, even if no value were ascribed to the injunctive relief.[1]  However, the changes in Red Bull's labeling and marketing obtained by Plaintiffs, and the mailing/distribution costs Red Bull will incur to send free Red Bull products to Class Members, also provide substantial additional value to the Class.[2] As set forth below, Plaintiffs' requested attorneys' fees and costs and requested incentive awards are fair and reasonable, particularly in light of the fact that the Defendants are paying for the attorneys' fees, costs, and incentive awards, as well as the costs of shipping the free Red Bull products to Class Members, separate and apart from the Settlement Fund distributed to the Class Members.  Accordingly, Plaintiffs respectfully request that this Court grant the instant motion in its entirety.

## II.    ATTORNEYS FEES

### A.    Standards for Evaluating Attorneys' Fees

---

[1] If this Court were to assign no numerical value to the injunctive relief to the Class, the total value of the Settlement is $17,765,000.00 — which is the total of the Settlement Fund plus the fund for the attorneys' fees, expenses, and incentive awards as set forth in the Stipulation of Settlement. Deducting expenses of $113,448.00, means the fee portion sought is actually $4,636,552.00, which is 26.1% of the total settlement value without injunctive relief.

[2] Where a class action settlement provides for cash or a free product, as opposed to a discount on a future purchase, that settlement is not a "coupon settlement" within the meaning of the CAFA. *See, e.g.*, *Foos v. Ann, Inc.*, Case No. 11CV2794 L MDD, 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013) (concluding that a voucher for free merchandise was not a "coupon" within the meaning of the CAFA and noting that "[t]he distinction between a coupon and a voucher is that a coupon is a discount on merchandise or services offered by the defendant and a voucher provides for free merchandise or services"); Likewise here, the Settlement Stipulation provides an option to obtain free Red Bull products at no additional cost to the the Class Members.

Attorneys who create a settlement fund for the common benefit of Class Members are entitled to a reasonable fee as just compensation for their services. *See City of Providence v. Aeropostale, Inc.*, Case No. 11-cv- 7132 CM GWG, 2014 WL 1883494, at \*10 (S.D.N.Y. May 9, 2014). "[I]n addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *Id.* at \*11; *see also In re Veeco Instruments Inc. Sec. Litig.*, Case No. 05 MDL 01695CM, 2007 WL 4115808, at \*2 (S.D.N.Y. Nov. 7, 2007) (same). In evaluating the amount of attorneys' fees appropriate for Class Counsel in common fund cases, courts have utilized the percentage and lodestar/multiplier methods. *See Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). "Under the percentage method, the fee is a reasonable percentage of the *total value* of the settlement fund created for the class." *In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. July 8, 2014) (emphasis supplied). "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d 380, 385 (S.D.N.Y. 2005). Although the percentage approach is the prevailing method of determining attorneys' fees in the Second Circuit, the Lodestar method "remains useful as a baseline" and as a "cross-check" for percentage awards. *See id.* at 386. Regardless of which method the Court uses to calculate attorneys' fees, the Court should consider the following factors in order to ensure that the fees are reasonable:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

3

*Id.* (*citing Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) ("The reasonableness of a fee calculated by either . . . metho[d] . . . is determined by the factors outlined in . . . [*Goldberger*]"). As set forth below, Plaintiffs' requested attorneys' fees are reasonable under both the percentage and lodestar methods and pursuant to the *Goldberger* factors.

> **B.     The Total Settlement Value Includes the Monetary Value of the Settlement Fund, the Value of Injunctive Relief ("Structural Changes"), and the Total Amount Awarded in Legal Fees, Service Fees and Expenses.**

In determining the appropriate fee percentage, the Court must first assess the total value of the settlement, which includes the Settlement Fund and the value of the attorneys' fees and other payments agreed to by Red Bull.  *See In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d at 386–87; *see also* Manual for Complex Litigation § 21.7, at 335 (4th ed. Fed. Jud. Center 2004).  Indeed, the parties' Stipulation of Settlement defines the "Total Settlement Value" as the sum of:  (1) thirteen million dollars ($13,000,000.00) in monetary value of the Settlement Fund; (2) the significant value to the Settlement Class of the changes to Red Bull marketing and labeling; and (3) the value of any and all other attorneys' fees, incentive awards, costs, and expenses to be paid by Defendants as per this Stipulation."  (Stipulation, p. 12).  Accordingly, Plaintiffs submit that *at a minimum*, the total value of this Settlement is $17,765,000.00.

That total value does not include the substantial sum that Red Bull has also agreed to pay to distribute the free product to those Class Members who chose that option, nor the substantial value to the Class of obtaining the injunctive relief to remove the allegedly misleading and deceptive marketing and product claims.  Plaintiffs respectfully submit that the $18.5 million

dollars in value for the injunctive relief, that Red Bull has agreed not to oppose, should be accounted for in determining the Settlement's total worth.  At a minimum, such relief should at least be considered as another positive factor towards approval of the fees sought herein.

### i.     The "constructive common fund" is used to calculate and assess the percentage awarded in attorneys' fees and expenses.

Where, as here, the total value of the settlement goes beyond the award being distributed directly to the Class, courts have deemed the settlement a "constructive common fund" and have included the attorneys' fees in calculating the total settlement value.  *See Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349, 363-64 (D.D.C. 2007) (concluding, in evaluating attorneys' fees, that "it is appropriate to consider the [separate] settlement funds [for class recovery and for attorneys' fees] collectively as a 'constructive common fund'"); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d at 382 n. 2; *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 120-21 (D.D.C. 2007); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal[;] [e]ven if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery"); *Guschausky v. Am. Family Life Assur. Co. of Columbus*, 851 F. Supp. 2d 1252, 1257-58 (D. Mont. 2012) *vacated on other grounds*, Case No. CV 10-59-H-DWM, 2012 WL 4849688 (D. Mont. Oct. 11, 2012) ("When attorney's fees are paid independently, the aggregate amount of attorney's fees and class settlement payments may be viewed as a 'constructive common fund'"); *Manual for Complex Litig.* § 21.75 ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class").

Including the separate fund for attorneys' fees in the total settlement value is logical "because the attorneys' fees [ ] borne by defendants and not plaintiffs . . . represent a valuable

part of the settlement." *See Vista Healthplan, Inc.*, 246 F.R.D. at 364.  In *Cohen*, the court explained:

> Here, the settlement creates three separate funds: one based on the value of the total product donation ($6 million), a second fund of $2 million to pay attorneys' fees, expenses, and incentive awards, and a fund of $300,000 used to pay the costs of notice to the Settlement Class. In such a case . . . it is appropriate to consider these funds collectively as a "constructive common fund," valued at $8.3 million. In a true common fund case, attorneys' fees are paid out of a common fund shared with class plaintiffs, such that the amount recovered by plaintiffs is reduced by the amount awarded in attorneys' fees.  Here, in contrast, the settlement has separate funds for class recovery and attorneys' fees, and because the attorneys' fees are borne by defendants and not plaintiff, they represent a valuable part of the settlement.

*Cohen*, 522 F. Supp. 2d at 121 (internal citations omitted).

As with a standard common fund, a court employing a percentage of the fund method in a constructive common fund case examines whether the requested fee represents a reasonable percentage of the fund.  *See Shapiro v. JPMorgan Chase & Co.*, Case No. 11-cv-7961 CM, 2014 WL 1224666, at *19 (S.D.N.Y. Mar. 24, 2014) (concluding that the requested attorneys' fees the defendants agreed to pay directly to class counsel were a reasonable percentage of the "pooled" total of the Class Settlement Amount and the requested fee); *see also Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014); *Vista Healthplan, Inc.*, 246 F.R.D. at 363-64; *Cohen*, 522 F. Supp. 2d at 120-21.

As the instant case involves a constructive common fund that includes the attorneys' fees and expenses,  incentive awards, and the $13 million dollar Settlement Fund,  the attorneys' fees should be calculated as a percentage of the total of those amounts, or $17,765,000.00.  Therefore, the requested attorneys' fees and costs reimbursement of $4,750,000 represent a reasonable percentage of that constructive common fund.   That figure is all the more reasonable when also looking at the value of the injunctive relief obtained in the settlement.

ii.    *Valuation of injunctive relief.*

The "Total Settlement Value" set forth in parties' Stipulation of Settlement includes, *inter alia*, "the significant value to the Settlement Class of the changes to Red Bull marketing, cans, and labeling." (Stipulation, p. 12). As set forth in the Final Approval briefing and report of Rob Frankel, Red Bull has voluntarily updated its marketing materials, advertising, and labeling so that the updated materials satisfy any and all claims that have been asserted in this litigation. Red Bull has also made a commitment that any future claims about the functional benefits of Red Bull will be medically and/or scientifically supported. Thus, the settlement has effectively provided for all or substantially all of the injunctive relief that the Settlement Class could hope to obtain through litigation, and provides additional, material value to the Settlement Class above and beyond the cash and free products. Indeed, Red Bull has agreed not to oppose a valuation of up to $18.5 million for the injunctive relief. (Stipulation, pp. 21-22).

Although injunctive relief does not lend itself to precise mathematical calculation, courts have often adopted the fair value of injunctive relief proposed by the parties when estimating the total value of settlements and the appropriate percentage thereof for attorneys' fees. *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (noting that "[t]he parties [ ] fairly valued the injunctive relief at between $26 and $38 million," and adding the lowest estimated value of that relief to the common fund in determining that the requested attorneys' fee was reasonable); *Sheppard v. Consol. Edison Co. of New York*, Case No. 94-cv-0403(JG), 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (considering the "estimated $5 million in non-monetary, injunctive relief" part of the total settlement in evaluating the reasonable percentage of attorneys' fees); *Tennille v. W. Union Co.*, Case No. 09-cv-00938-MSK-KMT, 2013 WL 6920449, at *10 (D. Colo. Dec. 31, 2013) *report and recommendation adopted as modified*, Case No. 09-cv-

00938-JLK-KMT, 2014 WL 5394624 (D. Colo. Oct. 15, 2014) (electing "to value the injunctive relief for purposes of including it in the common fund and, thereafter, determining an appropriate attorneys' fee award").

Even where a court declines to assign a numerical value to injunctive relief and add it to the total settlement fund, courts often consider such relief as a relevant factor in determining that the percentage sought represents a reasonable fee.  *See, e.g.*, *Pokorny v. Quixtar, Inc.*, Case No. C 07-0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) (noting that "[t]he court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee," and that because "the settlement contain[ed] substantial injunctive relief[,] . . . the injunctive relief elements of the settlement constitute[d] further support for the reasonableness of the fee award"); *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d at 388 ("Rather than attempt to assign a specific dollar value to the Structural Changes, the Court is acknowledging that they do benefit the Class by awarding legal fees at the upper end (30%) of the Settlement Value commonly awarded under the percentage method . . . ").

As one court has explained:

> Under the "common-fund" doctrine, Class Counsel who obtains a settlement or judgment creating a commonly held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Where, as here, the settlement includes substantial affirmative relief, such relief must be considered in evaluating the overall benefit to the class. *See* Manual for Complex Litigation (Fourth) § 21.71, at 337 (2004); Principles of the Law of Aggregate Litigation, § 3.13; *cf. Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989) (cautioning against an "undesirable emphasis" on monetary "damages" that might "shortchange efforts to seek effective injunctive or declaratory relief.").  Thus, this Court recognizes that it is important to take into account affirmative relief in addition to monetary relief so as to encourage attorneys to obtain effective affirmative relief. While the true value of the affirmative relief is difficult to pinpoint, it will without a doubt materially add to the monetary recovery to the Plans.

*Will v. Gen. Dynamics Corp.*, Case No. 06-cv-698-GPM, 2010 WL 4818174, at *1 (S.D. Ill. Nov. 22, 2010).

The Settlement of this class action provides substantially valuable injunctive relief to the Class.  Class Members (and future consumers of Red Bull) are no longer exposed to deceptive and misleading marketing; they benefit from new and updated warnings on packaging and labeling; and benefit from Red Bull's promise to provide medical and scientific support for future claims.[3]  Because of this relief, Class Members (and future consumers of Red Bull) have the ability to make a more sound and informed decision when paying a premium for Red Bull over other caffeinated products, which translates into a savings for Class Members, as more fully described in the expert report of Rob Frankel.  Indeed, Mr. Frankel concludes that the value of the relief easily exceeds the $18.5 million dollar valuation Plaintiffs have put forth here.[4]

Adding the value of the injunctive relief into the total settlement value would yield a attorney' fees percentage of 13.1%[5]  But even if the Court declines to assign a precise monetary value to the injunctive relief, it should still consider that relief as another factor supporting the reasonableness of Plaintiffs' request for attorneys' fees.

## C.    The Requested Fees/Expenses are Reasonable and Appropriate

### i.    *The requested fee is a reasonable percentage of the Total Settlement Value .*

"District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater [in class actions]."  *Velez v. Novartis Pharm. Corp.*, Case No. 04-cv-09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (citing cases); *Hernandez v. Merrill Lynch &*

---

[3] Red Bull maintains that its marketing, labeling and claims have always been truthful.
[4] As a term of the Stipulation of Settlement, Red Bull agreed not to oppose an injunctive relief value up to $18.5 million dollars, but does not endorse the findings or conclusions of Mr. Frankel, who has been retained by Plaintiffs.
[5]  $4,750,000.00 as  a percentage of the $17,765,000.00 in monetary relief plus the $18.5 million in injunctive relief.

*Co.*, Case No. 11-cv-8472 KBF DCF, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (noting that "Class Counsel's request for 33% of the Fund [was] reasonable and consistent with the norms of class litigation in this circuit") (internal quotation omitted); *Toure v. Amerigroup Corp.*, Case No. 10-cv-5391 RLM, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (noting that "Class Counsel's request for one-third of the fund was reasonable and consistent with the norms of class litigation in this circuit") (internal quotation omitted); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, Case No. 06-cv-4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit").  Thus, Class Counsel's request of an award of $4,750,000.00for fees and expenses, representing as little as 13.1 % to no more than 26.1% of the total settlement value (depending on the assignment of value to the injunctive relief), is reasonable and well within the range of fees awarded in the Second Circuit.[6]    The fact that Class Counsel's requested fees falls within the range of attorneys' fees often awarded in class actions in this Circuit, substantiates the request's reasonableness.

---

[6] For further support, *see, e.g.*, *Yuzary v. HSBC Bank USA, N.A.*, Case No. 12-cv-3693 PGG, 2013 WL 5492998, at *1 (S.D.N.Y. Oct. 2, 2013) (awarding a 31.7% attorneys' fee in a settlement totaling $15,625,000); *City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 281 (S.D.N.Y. 2013) (awarding "the increasingly used benchmark of 25% [attorneys' fees]" in a $19.5 million settlement); *City of Providence*, 2014 WL 1883494, at *9–12 (awarding a 33% attorneys' fee in a $15,000,000 settlement); *Taft v. Ackermans*, Case No. 02-cv-7951 (PKL), 2007 WL 414493, at *9 (S.D.N.Y. Jan. 31, 2007) (awarding 30% in a $15,175,000 million settlement); *In re Warnaco Grp., Inc., Sec. Litig.*, Case No. 00-cv-6266 (LMM), 2004 WL 1574690, at *3 (S.D.N.Y. July 13, 2004) (awarding 30% in a $12.85 million settlement); *Westerfield v. Washington Mut. Bank*, Case No. 06-cv-2817(JMA), 2009 WL 5841129, at *4 (E.D.N.Y. Oct. 8, 2009) (awarding attorney's fees in the amount of 30% of $38 million settlement fund); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183–87 (W.D.N.Y. 2011) (approving a request for attorneys' fees totaling 30% of a $42 million settlement fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (awarding attorneys' fees in the amount of 38% of the $42 million settlement fund).

### ii.    *A Lodestar analysis further demonstrates the reasonableness of the attorneys' fees.*

Although Class Counsel believe that the percentage method is an appropriate method of determining attorneys' fees, they recognize that a Lodestar method analysis is useful to further demonstrate the reasonableness of the fees sought.  *In re Excess Value Ins. Coverage Litig.*, 598 F. Supp. 2d at 385.  The Lodestar method involves "multiplying the number of hours expended by counsel by a reasonable hourly rate, in order to get a base fee award number" that is "typically enhanced by an appropriate multiplier to reflect consideration of a number of factors, including the contingent nature of success and the quality of the attorney's work."  *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d at 370.  Multipliers of up to 8 are regularly deemed reasonable.  *See, e.g.*, *Hernandez v. Merrill Lynch & Co.*, 2013 WL 1209563, at *9 ("Courts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers"); *Yuzary*, 2013 WL 5492998, at *10–11 (noting same and awarding attorneys' fees equal to a multiplier of 7.6); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (noting same and awarding attorneys' fees equal to multiplier of 6.3); *Zeltser v. Merrill Lynch & Co.*, Case No. 13-cv-1531 FM, 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (noting same and awarding attorneys' fees equal to a multiplier of 5.1); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183-87 (W.D.N.Y. 2011) (awarding fees equal to a 5.3 multiplier); *In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d at 353 (awarding fees equal to a 5.2 multiplier); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *24 ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District"); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, Case No. 05-cv-10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) (same); *Maley*, 186 F. Supp. 2d at 371 (awarding fees equal to a "modest" multiplier of 4.65).

Here, Class Counsel spent a total of 1,952.95 hours of professional work on this litigation. The Lodestar calculation for these services is $1,247,850.50.  The detailed breakdown of these hours and how they were applied with hourly rates can be found in the Declarations of Benedict P. Morelli and Laurence D. King.  (Joint Decl.. Exhs. C, D).

Given this lodestar calculation**,** Class Counsel are requesting a multiplier of approximately 3.8, which is reasonable based upon the range of multipliers up to 8 routinely awarded in the Second Circuit and other factors such as the risk of the litigation, the quality and performance of Class Counsel, and the results achieved for the Class Members.

   **iii.**      ***The requested fee is reasonable under the Goldberger Factors.***

Class Counsel's request for fees should also be approved because it is reasonable under the *Goldberger* factors, as explained below.

   **a.**      **Time and Labor Expended**

Class Counsel's fee request is reasonable because they expended substantial time and labor to obtain the proposed Settlement for the Class Members.  As set forth above, Class Counsel expended a total of 1,952.95 professional hours on this litigation.  This substantial labor included:  (1) performing factual research about Red Bull and its advertising and marketing practices; (2) documenting the marketing and functional benefit claims made by Red Bull pre-lawsuit; (3) performing legal research about potential causes of action against Red Bull, and about the proper venue(s) and jurisdiction for this class action; (4) speaking with consultants regarding the ingredients and effects of energy drinks such as Red Bull and evaluating Red Bull's claims; (5) drafting and reviewing the Complaints;  (6) performing legal research pertaining to Red Bull's pre-motion letter aimed at the original Careathers Complaint; (7) reviewing, researching and addressing issues raised by Red Bull in response to the California

12

Plaintiffs' claims under the California Consumers Legal Remedies Act; (8) doing further extensive review of Red Bull's marketing materials and website; (9) drafting and reviewing an Amended Complaint; (10) engaging in extensive negotiations with Red Bull, both independently and in over 12 hours of mediation with a respected mediator, to achieve the best result for the Class; (11) continuing months long negotiations with Red Bull to further clarify the terms of the Settlement Agreement and enter into the Stipulation of Settlement; (12) assessing and evaluating the injunctive relief achieved for the Class; (13) meeting and consulting frequently with Rob Frankel, the expert retained to opine on the value of the injunctive relief obtained in the Settlement; (14) reviewing multiple bids and then selecting a competent class action administrator and overseeing the Notice and Claims process; and (15) achieving preliminary approval of the settlement.

Indeed, Class Counsel's extensive negotiations post-mediation resulted in a number of amendments and clarifications to the original base terms achieved at mediation, and resulted in additional benefits to the Class, such as Red Bull's funding the cost of the distribution for the free product option at its own expense, which is substantial and likely in the millions of dollars. The time and substantial labor expended here weigh in favor of approval of the requested attorneys' fees.

### b.    The Magnitude and Complexities of the Litigation

The magnitude of this litigation is great, as evidenced by the unprecedented number of valid claims submitted by over 2 million Class Members throughout the United States. The Settlement of this national class action involving Red Bull, an international corporation that markets and sells its products throughout the world has created a wide-reaching impact.  The settlement of litigation which sought to address and halt alleged violations of consumer

protection laws has affected millions of consumers across the U.S., and has resulted in a commitment from Red Bull that it will not mislead consumers.   This litigation is also a complex consumer protection class action.   Proving liability and damages would likely require substantial discovery and the presentation of scientific evidence and extensive expert testimony.   Obtaining and maintaining class certification through trial would be likewise difficult.   In light of the magnitude and complexities of this litigation, this factor weighs in favor of approval of the requested attorneys' fees.

### c.      The Risk of the Litigation

"The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."   *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494 at *14; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award"); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d at 372–73 (concluding that the "risk of litigation" factor supported the 33.3 % attorneys' fee in part because "[a]ny fee award or expense reimbursement to Plaintiffs' Class Counsel has always been contingent on the result achieved and on this Court's exercise of its discretion in making any award").

Here, Class Counsel undertook this class action on a wholly contingent fee basis and invested considerable time and expenses to research and commence the litigation, conduct extensive arm's length negotiations to come to a favorable settlement, and to achieve class certification for the Settlement Class.   Considering that Class Counsel undertook the risk of litigation and advanced their own funds to finance the class action, their requested fee and cost reimbursement, which represents no more than 26.1% of the total settlement value (and far less

when one considers the value of the injunctive relief), is reasonable, particularly in light of the fact that those fees will be paid by Red Bull separate and apart from the Settlement Fund, and will not diminish the relief made available to Class Members.  *See Maley*, 186 F. Supp. 2d at 372–73.

Moreover, the risk of litigation here is substantial, as the Class would first have to overcome Red Bull's dispositive motions and would then face the difficult tasks of obtaining class certification, and proving liability and damages at trial via complex scientific evidence and dueling expert testimony, after having conducted extensive and costly discovery.  Litigation also bears the risk of an appeal, which would further delay and diminish the Class Members' receipt of the benefits of this action.  *See id.* (concluding that the "risk of litigation" factor supported a 33.3 % attorneys' fee in part because "[e]ven if the Class were able to overcome a motion to dismiss, a motion for summary judgment and a jury verdict, they would still confront the question of the amount of damages, if any, incurred by the Class," and because "even if all other hurdles were overcome, there was the possibility of appeal").  In light of the risk of litigation, this factor weighs in favor of approval of the requested attorneys' fees.

### d.    Quality of Representation

In measuring the quality of representation factor, courts examine, *inter alia*, "the benefit obtained for the class, the efficiency of plaintiffs' counsel's activities, and the quality of opposing counsel."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. at 748, *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Taft v. Ackermans*, 2007 WL 414493, at *10 ("To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit").

Plaintiff Careathers' counsel, Morelli Alters Ratner LLP, and the individual attorneys involved in this action (Benedict P. Morelli, Jeremy W. Alters, David S. Ratner, Matthew Moore, and Adam Deutsch), and counsel for Plaintiffs Wolf and Almaraz, Kaplan Fox & Kilsheimer LLP, and the firm's individual attorneys involved in this action (Laurence D. King, Linda M. Fong, Frederic Fox and Justin Farar) are knowledgeable and experienced in complex class action cases.  Indeed, it is beyond dispute that Class Counsel is amply qualified and experienced to pursue claims (and negotiate settlement) in this class action.  Attorneys at Morelli Alters Ratner LLP have extensive experience and expertise in class action proceedings throughout the United States, achieving billions of dollars in settlements for consumers in consumer class actions and mass torts.  Likewise, Kaplan Fox & Kilsheimer LLP is one of the country's most established and respected plaintiffs' firms, recovering billions of dollars for its clients and class members in consumer protection, antitrust and securities class actions.  Class Counsel have demonstrated their commitment to vigorously and competently representing the Class.  Nor is there any reason to suspect antagonism or conflict of interest between the Plaintiffs and the proposed nationwide class.

Moreover, the benefits Class Counsel obtained for the Class Members are substantial, and include Red Bull's distribution of $13 million in benefits via a Settlement Fund, comprised of: (1) distributions of the cash refunds and free products; (2) funds to support the efforts of an experienced Class Action Settlement Administrator, Garden City Group, Inc. and ensure that potential Settlement Class Members are fully notified through a variety of media as to the existence of the settlement and their rights and responsibilities thereunder; and (3) under certain limited circumstances, charitable donations as a *cy pres* remedy.  Apart from monetary relief, Class Counsel have also obtained substantial injunctive relief for the Class Members as

described herein, and Red Bull further agreed to pay the costs of distributing the free products to Class members who chose that option.    The benefits Class Counsel obtained for the Class Members are substantial, particularly in light of the fact that they were "created without having to undertake the risks to the class incident to trial and appeals." *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. at 748.

Further underscoring the effectiveness of representation is that Class Counsel "achieved a positive result . . . while facing well-resourced and experienced defense counsel." *See Jermyn v. Best Buy Stores, L.P.*, Case No. 08-cv-214 CM, 2012 WL 2505644, at *11 (S.D.N.Y. June 27, 2012); *see also Maley*, 186 F. Supp. 2d at 373 ("The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel"). Indeed, opposing counsel in this case, Skadden Arps Slate Meagher & Flom LLP, is a highly respected, experienced and qualified national law firm representing many international companies with substantial resources, including Red Bull.  Class Counsel's ability to settle this action to the substantial benefit of the Class Members, considering their formidable opponents, "provides further evidence of the quality of their work." *See Maley*, 186 F. Supp. 2d at 373.

Finally, Class Counsel handled this class action skillfully and efficiently, reaching a Settlement Agreement in a relatively short time and allowing the Class to avoid the expense and risks of trial and appeal.  Class Counsel's efficient prosecution of the Class claims supports a favorable finding with regard to the quality of representation. *See id.*  This factor thus further weighs in favor of approval of the requested attorneys' fees.

### e.    Requested Fee in Relation to the Size of the Settlement

As set forth above, the requested attorneys' fees and reimbursement of expenses represent, at most, 26.1% of the total value of the Settlement (and substantially less if the value is

17

ascribed to the injunctive relief obtained).  This percentage is reasonable and well within the range of fees awarded in the Second Circuit.  *See, e.g.*, *Yuzary*, 2013 WL 5492998, at *1; *City of Pontiac Gen. Employees' Ret. Sys.*, 954 F. Supp. 2d at 281; *City of Providence*, 2014 WL 1883494, at *9-12; *Taft*, 2007 WL 414493, at *9.

Moreover, the amount of the attorneys' fees awarded here will in no way impact the Class Members' recovery because the Defendants have agreed to pay the attorneys' fees and expenses separate and apart from the Settlement Fund.  Courts in this Circuit have often noted that attorneys' fees that the defendants have agreed to pay directly to counsel, separate and apart from the Class Settlement Fund are particularly reasonable in that such fees do not affect the Class Members' monetary relief.  *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243-44 (E.D.N.Y. 2010); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (noting "with approval that the fee award [would] not be drawn from the common fund but [would] be paid directly by [the defendant]," and that "[i]n this regard, the fee award, however substantial, [would] have no effect on the monetary relief afforded to class members"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, Case No. 06-cv-5173 (RPP), 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008).  Indeed, when the attorney's fee award in no way reduces the recovery to the class, "the danger of conflicts of interest between attorneys and class members is diminished."  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *15; *see also Jermyn v. Best Buy Stores, L.P.*, Case No. 08 CIV. 214 CM, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (same); *In re Sinus Buster Products Consumer Litig.*, Case No. 12-cv-2429 (ADS)(AKT), 2014 WL 5819921, at *14 (E.D.N.Y. Nov. 10, 2014) ("[W]here, as here, the attorneys' fees are to be paid directly by defendant and, thus, money paid to the attorneys is entirely independent of money

awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members") (internal quotation omitted).  Here, the requested attorneys' fees and expenses, and incentive awards for the Class Representatives, will be paid by Red Bull separate and apart from the Settlement Fund, and will therefore not diminish the relief made available to Class Members.

Another important factor that supports the reasonableness of attorneys' fees agreed to by the parties is the timing of the negotiation of those fees.  Where the fees were not negotiated until *after* an agreement was reached as to the substantive terms of the benefits to the Class, the fees are deemed more reasonable.  *See, e.g.*, *Dupler*, 705 F. Supp. 2d at 244 ("[T]he fact that the parties did not negotiate the issue of attorneys' fees until after deciding on the benefit to the class weighs in favor of the reasonableness of the fees"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *15; *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) (upholding the district court's award of attorneys' fees in part because the "fees were negotiated only after the terms of the settlement were reached, and the fee award [came] directly from [the defendant], rather than from funds . . . earmarked for the class").  Here, the agreement on the amount of the Settlement Fund was reached prior to negotiating the requested attorneys' fees.  (Joint Decl., ¶ 23).

### f.    Public Policy Considerations

This Settlement promotes the public policy of protecting consumers as contemplated by the New York Deceptive Practices Act, the California Consumers Legal Remedies Act, the California Unfair Competition Law, and the consumer protection acts of numerous other states. The alleged violations of these consumer protection acts are precisely the type of conduct that is not likely to be addressed via individual lawsuits, but that are best resolved via a class action

with far reaching and meaningful benefits to a large number of people, including injunctive relief that halts and/or prevents the wrongful conduct.  This Settlement, while providing a financial benefit to approximately two million Class Members, also affords substantial injunctive relief to the Class Members, thereby providing total relief that would likely never be obtained absent a class action.  Moreover, these benefits are available now, rather than after years of litigation. Thus, the public policy factors weigh in favor of approving Class Counsel's requested attorneys' fees and expenses.  *See Jermyn*, 2012 WL 2505644, at *12 (noting, in evaluating the public policy *Goldberger* factor, that Class Counsel's efforts improved the experience of consumers nationwide).

Each of the *Goldberger* factors favors approval of the requested attorneys' fees.

**iv.**     ***The requested expense reimbursements are also reasonable.***

Although Red Bull has agreed not to oppose an award of attorneys' fees and expenses up to $4,750,000.00, it should be noted that the expense reimbursement of $113,448.82 sought by Class Counsel is also reasonable, as they are the type of expenses customarily charged in this type of litigation and were "incidental and necessary to the representation" *In re Independent Energy Holdings PLC Sec. Litiq.*, 302 F. Supp. 2d 180, 183 (S.D.N.Y.2003); *see also In re China Sunergy Sec. Litig.,* No. 07-cv-7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011). Thus, it is appropriate to include the reimbursement of those expenses in the award of attorneys' fees and expenses here.

**II.     INCENTIVE AWARDS**

Plaintiffs' requested incentive awards for each of the Named Plaintiffs are reasonable. "In a class action, plaintiffs can request an incentive award to compensate them for efforts expended for the benefit of the lawsuit." *In re Sinus Buster Products Consumer Litig.*, 2014 WL

5819921, at *19 (internal quotations omitted); *see also In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d at 354; *Beckman v. KeyBank, N.A.*, 293 F.R.D. at  483 ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs").

Here, Plaintiffs' requested incentive awards in the amount of $5,000.00 for each of the Named Plaintiffs are reasonable because those Plaintiffs served the Class by being the face of the settlement when it went viral on the internet in the Fall of 2014; being available as needed to discuss the litigation with Class Counsel (or otherwise), and reviewing the status of the case with counsel.  *See In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d at 354 (providing a $5,000 incentive award for each of six named plaintiffs where those plaintiffs participated in the litigation, reviewed filings and "communicated regularly with Class Counsel"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d at 245 (granting a $5,000 incentive award for a named plaintiff who "reviewed the complaint in the California Action and discussed the facts with counsel"); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (awarding the class representative a $15,000 incentive award).

Given the efforts they expended for the benefit of this lawsuit, incentive awards of $5,000.00 for each of the Named Plaintiffs is reasonable, particularly in light of the fact that the awards are, like the attorneys' fees and costs, to be paid by Defendants separate and apart from the money or value in the Settlement Fund and will not reduce the Class' recovery.  *See Strougo ex rel. Brazilian Equity Fund, Inc.*, 258 F. Supp. 2d at 264 (approving the proposed incentive award where it would "not reduce the benefit to the shareholders or class").

## CONCLUSION

For the reasons set forth herein, Plaintiffs' request for attorneys' fees and reimbursement of costs and expenses in the amount of $4,750,000.00, to be paid by Defendants separate and apart from the money or value in the Settlement Fund, is fair and reasonable.  Plaintiffs request that the Court grant incentive awards to Plaintiffs Benjamin Careathers, David Wolf, and Miguel Almaraz, the Class representatives, in the amount of $5,000.00 per representative, in recognition of their valuable service to the Class, also to be paid for by Defendants separate and apart from the money or value in the Settlement Fund, is likewise fair and reasonable.

Respectfully submitted this 8th day of April, 2015.

Respectfully submitted,

Dated:    New York, New York          MORELLI ALTERS RATNER, LLP
          April 8, 2015

By: /s Benedict P. Morelli

Benedict P. Morelli
David S. Ratner
Adam Deutsch
777 Third Avenue, 31st Floor
New York, NY 10017
bmorelli@morellilalters.com
dratner@morellialters.com
adeutsch@morellialters.com

MORELLI ALTERS RATNER, LLP
Jeremy W. Alters
Matthew T. Moore
2675 NE 188th Street
Miami, Florida 33180
jalters@morellialters.com
mmoore@morellialters.com

*Attorneys for Plaintiff Benjamin Careathers*

Dated:   San Francisco, CA
         April 8, 2015

KAPLAN FOX & KILSHEIMER LLP

By: /s*Laurence D. King*_____

Laurence D. King
Linda M. Fong
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

KAPLAN FOX & KILSHEIMER LLP
Justin B. Farar
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:   (310) 575-8697
jfarar@kaplanfox.com

*Attorneys for Plaintiffs David Wolf & Miguel Almaraz*

## CERTIFICATE OF SERVICE

I hereby certify, under the pains and penalties of perjury, that on April 8, 2015, I electronically filed a true copy of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the docket and the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.  I am an attorney admitted to practice before this Court.

By: */s David S. Ratner*
    David S. Ratner

SERVICE LIST:

Kenneth A. Plevan
Jordan A. Feirman
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000

Jason D. Russell
Hillary A. Hamilton
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel: (213) 687-5000