March 28, 2015

Via Priority Mail

Clerk of Court

The United States District Court

For The Southern District of New York

500 Pearl Street

New York, New York 10007-1312

Christopher Andrews, Pro se

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 21, 2015

Case No.1:13-cv-00369-KPF

Case No.1:13-cv-08008-KPF

**Courtroom Judge Katherine Polk Failla**

Date of Fairness Hearing: May 01, 2015

Time: 10:00 am EST

**RED BULL CLASS ACTION SETTLEMENT, SECOND SUPPLEMENT TO OBJECTION**

against approval based on issues with the stipulation, settlement amount, notice program, class counsel's fees, incentive awards, release, unknown class damages, plan of allocation, inflated product option,

missing declarations and cy pres plan.

United States District Court

Southern District of New York

| | |
|---|---|
| Benjamin Careathers, individually, and on behalf of all others similarly situated, | Case 1:13-cv-00369-KPF |

Plaintiff,

Vs.

Red Bull North America, Inc., a California Corporation,

Defendant,

---

| | |
|---|---|
| David Wolf and Miguel Almaraz individually, and on behalf of all others similarly situated, | Case 1: 13-cv-080008-KPF |

Plaintiffs,

Red Bull GMBH, foreign company; Red Bull North America, Inc, a California corporation;

and Red Bull Distribution Company, Inc., a

Delaware Corporation,

Defendants,

**Tables of Authorities:**

*Lobatz*, 222 F.3d at 1147..................................................................5

**Table of Contents:**

Supplemental issues..........................................................................3

$1,724,327.00 in increased value to the class fund found......................11

A Red Bull reseller's current advertisement.........................................11

Now that the parties to this lawsuit have reached a settlement none of the counsels have an adversarial relationship any more and thus this Court can look only to objectors to point out any potential issues with the settlement that the Court may be unaware of and to help improve the settlement if possible.

Below are additional issues with this settlement that are hereby incorporated into and made part of the original objection and the first supplement. The objector is not an attorney or a paralegal.

The proposed final order, judgment, briefs in support of final approval including motion for attorney fees and expenses were intentionally not made available on the website for the class and the objector to review, comment on and possibly object to prior to the objection deadline. The objector raised this issue four months ago along with a proposed solution requesting final papers be filed thirty days prior to the objection deadline, both of which occur on the same day. Class counsel has had eight months to file and could not move it up their filing by thirty days? This is an example of bad faith and leaves the class and objector in the dark with no way to respond since the objection deadline will expire on the same last day counsel has to file its final papers on April 1, 2015.

Based on counsels request of an alleged $4.5 million for seven months of very little alleged "work" the objector cannot review the motion for fees and expenses so the objector requests the Court order Class Counsel to submit to the objector detailed contemporaneous billing records including time and billing sheets as well as a detailed breakdown of the expenses sufficient to support their bloated unseen fees and costs. Objector will search for time sheets that may contain block billing, excessive hours billed for conferencing, excess document review, excess copy and scanning costs, excessive charges for emails etc. Objector also is interested in checking if Class Counsel improperly billed for non-legal clerical

work and that the legal work that maybe was excessive, duplicative, unnecessary, unproductive, inefficient, unreasonable, excess, redundant and unnecessary and that the "work" is being used to justify an excessive, unreasonable and unjustifiable Fort Knox size fee and expense request that appears to have unduly influenced and caused this unfair settlement. The objector should be allowed up to thirty days upon receipt to review and respond to those records along with the motion for fees and expenses at the same time.

Rather than legitimate class relief, this settlement is really a marketing program, for defendant and it's an undeserved windfall for Class Counsel.

This proposed settlement is selfish because if could not possibly provide sufficient benefit to the class based on counsel's forced rush to settle.

Objector contends that Class Counsels' colluded with defendant to orchestrate an excessively high fee award in exchange for an unfair settlement for the class under a "constructive common fund". (Requirements of Article III standing). See *Lobatz*, 222 F.3d at 1147. Some counsel have their own serious issues pending in New York State Court, issues in cases within the district and the Eastern District that may have forced this settlement. Objector emailed all counsel that information for them to comment on but the issues were not

addressed nor explained.

As of March 30, 2015 there is no declaration form posted to the website from the named class members that they agree to this proposed settlement made nine months ago.

Published Notice Issue: "Notice will begin within thirty (30) days after the Preliminary Approval Order. Notice will be provided through placement of a ½ page advertisement run once in one print issue each of: People, Sports Illustrated, and Wired"

If class members don't read those three magazines and miss the online short banner ad placement window of six weeks class members are out of luck? This objector never saw the banner ads and three magazine ads and neither did tens of millions of other class members.

Here is an example of how to do a notice summary properly and reported results from another case:

"Online notice was published for a total of 316 million impressions on various websites, including Facebook, Yahoo! network, MSN network, and a website group that include cooking and baking websites. (*Id.* ¶ 7.) The ad also appeared

more than 2 million times through an MSN mobile service. (*Id.* ¶ 9.)

The claim administrator sent direct notice to each of the approximately 21,358 settlement class members **for whom XXXXXXXXXXX had names and addresses because they purchased through the XXXXXXXXXXX website or phone system.** The email notice described the settlement and provided a link to the settlement website. Clicking on the link provided in the email brought class members to a pre-populated claim form with the records of their purchases and informed them that Proof of Purchase for those items had been submitted. The email notice was sent twice."

Class Counsel and the defendant could have done much more to notify the tens of millions of purchasers. They could have noticed the applicable 3,100,000 million online magazine Red Bull subscriber customers for those who live in the United States (based on IP address) but they chose not to. Class Counsel and Defendant could have also noticed all U.S. class members who made purchases on the Redbull.com website using the name and shipping address on file but chose not to. Notice may not be adequate for tens of millions of class members who spent approximately $2.883 billion in 2013 alone purchasing defendant's product. This represents approximately 2.0 billion cans out of approximately 5.6 billion cans sold worldwide in just that year not counting the remaining eleven previous years of sales. If each potential claimant purchased and consumed one

can each week for fifty two weeks that would cause the class size to be 38,461,538 claimants. (2 billion divided by 52 cans a year equals 1 claimant). In providing CAFA notice to state and federal officials, defendant is required to estimate, using the best available data, the spread of the class members, so some number has to be available as to the class size. If Class Counsel and defendant offer no estimate the above number should suffice for settlement purposes.

Defendant issued a price hike that the parties may argue increases the retail value of the product value option in this settlement contrary to the objector's stance.

http://www.cspnet.com/category-news/beverages/articles/red-bull-raise-prices

Category News

Beverages

**October 3, 2014**

Red Bull to Raise Prices

*5% hike goes into effect Jan. 1 to fund "brand's development"*

Published in *CSP Daily News*

By

Steve Holtz, Online News Director & Beverage Editor

SANTA MONICA, Calif. -- Red Bull North America announced a price increase in its products effective Jan. 1, 2015, noting that the company finds it necessary to raise prices to drive revenue for additional innovation.

The stipulation also contains another fatal flaw.

Below is additional proof that the defendant is artificially overvaluing the product retail value option each time a class member selects it causing the class to be cheated as was stated in the original objection and first supplement. The reseller's ad below that was taken off the internet on February 15, 2015 and March 23, 2015; seven months after both counsels agreed to the stipulation settlement dated July 14, 2014. **The stipulation states the product value is based on when the product is shipped.** If the product is shipped after the hearing, the current retail value of the product option is shown below, justifying a reduction of the defendant's retail product option value.

Right now as of **March 23, 2015** the reseller below is selling a twenty four pack at retail price of $32.95 which broken down is **$1.37 a can** multiplied by a four pack is (rounded up) $5.50 or **$11.00** for the two four pack "product option" vs. the $15.00 retail value stated in the settlement which is an overcharge to the class of

36% or $4.00 per product option. The defendant will be shipping out more than 24 cans to the entire class so their wholesale retail will be less than the retail cost of $1.37 a can. This reseller and the defendant are still making a profit even at $1.37 a can or $5.50 a four pack! (Red Bull could also add an additional "four pack" to the two "four packs" product option to make up for the short changed difference in value.)

This may be the perfect case to consider adding in and using coupons as an additional part of the settlement to increase the fund for those who selected the product option and/or cash option due to the proration effect. The defendant has already assumed the cost to ship the product option or check and could also include a coupon with the shipment. What if there is only one can to ship based on the proration effect? Why not just use coupons vs. shipping the product to the claimant? (It's the justification for the ludicrous attorney fees and not wanting the fee award to be subject to the Class Action Fairness Act "coupon settlement" restrictions.) The class member still receives what was promised but in a less expensive way so more value flows directly to the class members. caaloa@gmail.com

If we take $6,500,000.00 (half the value of the total settlement if claimants choose the product option vs. the cash option) and divide that by the $15.00 inflated price,

433,333 class members can receive a full product option. Taking the same $6,500,000.00 and dividing that by the accurate real retail value of $11.00 we have 590,000 class members can claim a full product option. The difference of 590,090 claimants and the 433,333 class members is an additional 156,757 additional class members can receive a full product option before pro-rata kicks in. 156,757 additional claims to be made valued at $11.00 each is a savings of $4.00 per product option which is an increase of value to the class of **$1,724,327.00**. (156,757 additional claimants multiplied by the $11.00 can now receive a full product option where they could not receive anything before using the $15.00 inflated value.)

http://www.supplementwarehouse.com/viewitem.asp?idproduct=47502&pxc=4&sh=0

Advertisement as of February 15, 2015

| Red Bull | Our | |
|---|---|---|
| Best Value! | Price: | Enter Competitor's Web |
| Red Bull | $32.95 | Address |

24 - 8.4 Oz

Their Price $

Product Details:

- Product Name: *Red Bull Red Bull*
- Size: *24 x 8.4 Oz*
- UPC: *611269991246*

Product Description:

RedBull is a popular carbonated taurine drink with caffeine. Red Bull energy drink is made f: moments of increased physical and mental stress and improves endurance, alertness, concentration and reaction speed. In short: The RedBull energy drink vitalizes body and min( The effectiveness of Red Bull Energy Drink has been proven by a large number of scientific studies and is appreciated by many of the world's top athletes and drivers, opinion-leaders an( hard-working people with active lifestyles. Nutrition Facts:Serving Size: 8.3 fl. ozServings pe Container: 1Calories: 110Total Fat: 0gSodium: 200mg Protein: 0g Total Carbohydrates: 28g Sugars: 27g Red Bull should be served chilled. Usage: 2 red bull cans daily max.

Product Details:

Product Name: *Red Bull Red Bull*

Size: *24 x 8.4 Oz*

UPC: *611269991246*

Product Description:

RedBull is a popular carbonated taurine drink with caffeine. **Red Bull energy drink is made for moments of increased physical and mental stress and improves endurance, alertness, concentration and reaction speed. (Objector made the sentence bold)** In short: The RedBull energy drink vitalizes body and mind. The effectiveness of Red Bull Energy Drink has been proven by a large number of scientific studies and is appreciated by many of the world's top athletes and drivers, opinion-leaders and hard-working people with active lifestyles. Nutrition Facts:Serving Size: 8.3 fl. ozServings per Container: 1Calories: 110Total Fat: 0gSodium: 200mgProtein: 0gTotal Carbohydrates: 28gSugars: 27g Red Bull should be served chilled.Usage: 2 red bull cans daily max.

Nutritional Information

Carbonated water, sucrose, glucose, sodium citrate, taurine, glucuronolactone, caffeine, inositol, niacin, D-pantothenol, pyridoxine HCL, vitamin B12, artificial flavours, colors.

Advertisement as of March 24, 2015

http://www.supplementwarehouse.com/viewitem.asp?idproduct=47502&pxc=4&sh=0

Red Bull
Best Value!
Red Bull
24 - 8.4 Oz

Our Price: $32.95

Product Description

Product Details:

Product Name: *Red Bull Red Bull*

Size: *24 x 8.4 Oz*

*UPC: 611269991246*

**Product Description:**

RedBull is a popular carbonated taurine drink with caffeine. Red Bull energy drink is made for moments of increased physical and mental stress and improves endurance, alertness, concentration and reaction speed. In short: The RedBull energy drink vitalizes body and mind. The effectiveness of Red Bull Energy Drink has been proven by a large number of scientific studies and is appreciated by many of the world's top athletes and drivers, opinion-leaders and hard-working people with active lifestyles. Nutrition Facts:Serving Size: 8.3 fl. ozServings per Container: 1Calories: 110Total Fat: 0gSodium: 200mgProtein: 0gTotal Carbohydrates: 28gSugars: 27g Red Bull should be served chilled.Usage: 2 red bull cans daily max.

From the stipulation, #14 (b) (5) page 22:

5. "The Parties recognize that Red Bull has a quantity of Red Bull Products containing the prior labels, as well as older Marketing materials, and agree that Red Bull shall have until September 1, 2014 to use such materials or sell such products."

Why hasn't this reseller's two advertisements above been revised per the settlement agreement?

How come resellers are not required to delete the same alleged misleading language that defendant agreed to withdraw from all of its own advertisements? All parties have violated the stipulation through a loophole, intentionally or negligently.

All resellers should have been included in the stipulation so language should now be inserted into the stipulation requiring the defendant's resellers to also agree to delete the same phrases immediately that were alleged by class counsel and defendant to have been withdrawn by the defendant starting on September 01, 2014 which was seven months ago. Not including the resellers means no approval.

Defendants and Class Counsel should now be penalized and additional funds put into the settlement fund to compensate class members for violating the agreed to stipulation agreement from August 31, 2014 to the fairness hearing on May 01, 2015, a total of ten months time. The objector is valuing the inclusion of all Red Bull resellers in withdrawing the misleading language at $18.5 million value to the class.

Objector's new work schedule will prohibit him from appearing at the fairness hearing. The objector requests the Court's permission to have the ability to call into the fairness hearing, listen in and speak, if necessary, for up to five minutes. Objector would like to start that process now to set that up. Please advise as soon as practical if the Court will grant this request and as to what actions need to be taken by the Court,

class counsel and the objector to arrange for the objector to call into the hearing.

Thank you very much.

*Christopher Andrews*, *objector*, *Pro se*

P.O. Box 530394

Livonia, MI 48152-0394 E-mail caaloa@gmail.com Phone 1-248-635-3810

*Christopher Andrews*

*March 28, 2015*

*I certify* under penalty of perjury in accordance with 28 U.S.C. § 1746, that *the above and below information is true and accurate to the best of my knowledge*, information, and belief. *Any emails, notices or docket filings filed with the court should be be sent to the objector at the email address listed above since objector is not on the ECF system. Maybe someone can add the objector solely for notification purposes and it will not be used for filing purposes.*

*[signature: Christopher Andrews]*

Christopher Andrews

I *hereby certify* pursuant to 28 U.S.C. § 1746, *under penalty of perjury that the above and below information is true and accurate to the best of my knowledge,* information, and belief.

On this day March 28, 2015 I sent the foregoing to the Clerk of the Court via First Class Mail and served true and correct copies upon class counsel and defendants' counsel via email at the email addresses below. Counsels were emailed weeks prior asking for any objections to email this supplement over instead of snail mailing it. No objection was received by them.

Clerk of Court, the United States District Court For the Southern District of New York 500 Pearl Street New York, NY 10007-1312

Morelli Alters Ratner, LLP

Benedict P. Morelli bmorelli@morellialters.com

777 Third Avenue,

31st Floor

New York, NY 10017

Morelli Alters Ratner, LLP

Jeremy W. Alters Jeremy@alterslaw.com

Miami Design District

4141 Northeast 2nd Ave., Suite 201

Miami, FL 33137

Kaplan Fox &Kilsheimer LLP

Laurence D. King lking@kaplanfox.com

Linda M. Fong lfong@kaplanfox.com

350 Sansome Street, Suite 400

San Francisco, CA 94104

Kaplan Fox & Kilsheimer LLP

Frederic S. Fox ffox@kaplanfox.com

850 Third Avenue, 14th Floor

New York, New York 10022

Kaplan Fox & Kilsheimer LLP

Justin B. Farar jfarar@kaplanfox.com

11111 Santa Monica Blvd, Suite 620

Los Angeles, CA 90025

Skadden Arps Slate Meagher &

Flom LLP

Jason D. Russell jason.russell@skadden.com

Hillary A. Hamilton

300 S. Grand Ave. Suite 3400

Los Angeles, CA 90071

Skadden Arps Slate Meagher & Flom LLP

Kenneth A. Plevan kenneth.plevan@skadden.com

Four Times Square

New York, NY 10036