- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**BENJAMIN CAREATHERS,**
**individually, and on behalf of all others**
**similarly situated,**

                    **Plaintiff,**

          **v.**

**RED BULL NORTH AMERICA, INC.,**
**a California corporation,**

                    **Defendant.**

: 1:13-CV-0369 (KPF)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DAVID WOLF and MIGUEL**
**ALMARAZ, individually and on behalf of**
**others similarly situated,**

                   **Plaintiffs,**

          **v.**

**RED BULL GMBH, a foreign company;**
**RED BULL NORTH AMERICA, INC., a**
**California corporation; and RED BULL**
**DISTRIBUTION COMPANY, INC., a**
**Delaware corporation,**

                    **Defendants.**

: 1:13-CV-08008 (KPF)

**CLASS ACTION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, SERVICE FEES,**
**AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS**

Benedict P. Morelli
bmorelli@morellilalters.com
David S. Ratner
dratner@morellialters.com

Adam Deutsch
adeutsch@morellialters.com
MORELLI ALTERS RATNER, LLP
777 Third Avenue, 31st Floor
New York, NY 10017

Jeremy W. Alters
jalters@morellialters.com
Matthew T. Moore
mmoore@morellialters.com
MORELLI ALTERS RATNER, LLP
2675 N.E. 188th Street
Miami, Florida 33180

*Attorneys for Plaintiff Benjamin Careathers*


Laurence D. King
Linda M. Fong
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

Frederic S. Fox
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

Justin B. Farar
KAPLAN FOX & KILSHEIMER LLP
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:   (310) 575-8697
jfarar@kaplanfox.com


*Attorneys for Plaintiffs David Wolf and
Miguel Almaraz*

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD FOR FINAL APPROVAL ................................................3

III. RESPONSE TO OBJECTIONS FROM 11 MEMBERS OF THE CLASS .......................4

    A. Objections to the Adequacy of the Benefits Obtained for the Class.......................5

        i. Cash and In-Kind Gifts ...........................................................5

        ii. Injunctive Relief.......................................................................10

    B. Objections to the Valuation of the Free Products .................................15

    C. Objections as to Class Notice ...............................................................18

    D. Objections as to the Releases in the Stipulation of Settlement ............................21

    E. Objections to the Settlement's *Cy Pres* Remedy ...................................24

    F. Objections to the Requested Attorneys' Fees and Incentive Award....................25

        i. Attorneys' Fees.......................................................................26

        ii. Incentive Awards ....................................................................31

    G. Objections as to the Costs of Administration and Notice ....................................33

    H. Objections as to the Court's Schedule for Briefing ..............................35

    I. Objections as to the Claims Process and Forms ...................................38

    J. Objections as to the Merits of this Class Action....................................39

    K. Miscellaneous Objections ......................................................................42

        i. Objector Christopher Andrews ...............................................42

        ii. Objectors Patrick Cruz and Ruben Quinones ..........................44

        iii. Objector Dave Mager...............................................................45

        iv. Objector Theodore Frank.........................................................45

v.       Objector Chad Farmer..............................................................................47

vi.     Objector Michael Narkin .........................................................................48

L.      The Contentions of Serial Objectors Do Not Warrant Denial .............................49

IV.    CONCLUSION...............................................................................................................52

# TABLE OF AUTHORITIES

*Arnold v. Fitflop USA, LLC*, Case No. 11-cv-0973, 2014 WL 1670133
(S.D. Cal. Apr. 28, 2014) ..................................................................................n.11,50–51

*Astiana v. Kashi*, Final Judgment and Order, Case No. 3:11-cv-1967
(S.D. Cal. Sept. 2, 2014) ..................................................................................7

*Beck-Ellman v. Kaz USA, Inc.*, Case No. 3:10-cv-02134, 2013 WL 10102326
(S.D. Cal. June 11, 2013) ..................................................................................10, 14

*Bezdek v. Vibram USA Inc.*, Case No. 12-cv-10513, 2015 WL 223786
(D. Mass. Jan. 16, 2015) ..................................................................................13, n.11, 51

*Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1 (2d Cir. 2012) .........................................29, 51

*Browning v. Yahoo!, Inc.*, Case No. 04-cv-01463, 2007 WL 4105971
(N.D. Cal. Nov. 16, 2007) ..................................................................................8

*Bruno v. Quten Research Inst., LLC*, Case No. 11-cv-00173, 2013 WL 990495
(C.D. Cal. Mar. 13, 2013) ..................................................................................14

*Carlson v. Xerox Corp.*, 355 Fed. Appx. 523 (2d Cir.2009) .......................................37

*Carr v. Tadin, Inc.*, Case No. 12-cv-3040, 2014 WL 7499454 (S.D. Cal. Dec. 5, 2014) ......13–14

*Cassese v. Washington Mut., Inc.*, 255 F.R.D. 89 (E.D.N.Y. 2008) .............................................46

*Cassese v. Williams*, 503 F. App'x 55 (2d Cir. 2012) ..........................................36–38

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974)......................................................3

*City of Livonia Employees' Ret. Sys. v. Wyeth*, Case No. 07-cv-10329, 2013 WL 4399015
(S.D.N.Y. Aug. 7, 2013) ..................................................................................51

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...........................................1

*Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 n. 4 (W.D.N.Y. 2011)................29

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............26–29, 30, 32

*Ebbert v. Nassau Cnty.*, Case No. 05-cv-5445, 2011 WL 6826121
(E.D.N.Y. Dec. 22, 2011) ..................................................................................30

*Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250 (E.D.N.Y. 2009) .............................................26

v

*First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500 (E.D. Pa. 2007)...............33, 46

*Fishbein v. All Market, Inc.*, Case No. 11-cv-5580 (S.D.N.Y. 2012) ............................................6

*Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ............................................................................18

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ..........................................26, 31

*In Re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*,
    Case No. 4:08-md-01907 (E.D. Mo. 2013) .......................................................................7

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000).........1

*In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013)..................................24, 25

*In re Bear Stearns Companies, Inc. Sec., Der., and ERISA Lit.*, 909 F.Supp.2d 259
    (S.D.N.Y. 2012).......................................................................................................9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531 (N.D. Cal. 2012) .....................49

*In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199 (E.D. Pa. 2014) ...................37, 38

*In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d 344 at 354 (S.D.N.Y. 2014)...............32

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483
    (E.D. Mich. 2008) ......................................................................................................34

*In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145 (S.D.N.Y. 2014) ................................49, 50

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............................8

*In re Google Referrer Header Privacy Litig.*, Case No. 5:10-cv-04809, 2015 WL 1520475
    (N.D. Cal. Mar. 31, 2015)...........................................................................................51

*In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2014 WL 7323417
    (S.D.N.Y. Dec. 19, 2014). ...........................................................................................34

*In re Holocaust Victim Assets Litig.*, 424 F.3d 158 (2d Cir. 2005) ............................................24

*In re HP Inkjet Printer Litig.*, Case No. 5:05-cv-03580, 2014 WL 4949584
    (N.D. Cal. Sept. 30, 2014) ...........................................................................................51

*In re Hydroxycut Marketing and Sales Practices Litig.*, Case No. 09-cv-1088,
    2013 WL 5275618 (S.D.Cal. Sept. 17, 2013) .................................................................50

*In re Hydroxycut Mktg. & Sales Practices Litig.*, Case No. 09-cv-1088, 2014 WL 6473044
(S.D. Cal. Nov. 18, 2014) ........................................................................17, 34

*In re Magsafe Apple Power Adapter Litig.*, 2015 U.S. Dist. LEXIS 11353
(N.D. Cal. Jan. 30, 2015) ...................................................................................17

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir.2010) ..................36

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, Case No. 02 MDL 1484.
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................................8

*In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297 (E.D.N.Y. 2006) .................45–46

*In re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901
(C.D. Cal. June 12, 2012) ..................................................................................17

*In re Nutella Marketing & Sales Practices Litig.*, Case No. 3:11-cv-01086 (D.N.J. 2012) ..........7

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) .............32–33, 34–35, 51

*In re Painewebber Ltd. Partnerships Litig.*, 147 F.3d 132 (2d Cir. 1998) ...................................3

*In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104 (S.D.N.Y.) .....................................8

*In re Polyurethane Foam Antitrust Litig.*, Case No. 1:10 MD 2196, 2015 WL 1639269
(N.D. Ohio Feb. 26, 2015) ............................................................................48, 50

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996) .................19

*In re Scotts EZ Seed Litig.*, Case No. 12-cv-4727, 2015 WL 670162 (S.D.N.Y. Jan. 26, 2015) ..46

*In re Sinus Buster Products Consumer Litig.*, Case No. 12-cv-2429, 2014 WL 5819921
(E.D.N.Y. Nov. 10, 2014)..................................................................................30

*In re Skechers Toning Shoe Products Liab. Litig.*, Case No. 3:11-MD-2308, 2013 WL 2010702
(W.D. Ky. May 13, 2013) .................................................................................13

*In re Sony SXRD Rear Projection Television Class Action Litig.*, Case No. 06-cv- 5173 (RPP),
2008 WL 1956267 (S.D.N.Y. May 1, 2008) ................................................1, 30

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................3, 26–27

*In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347 (E.D.N.Y. 2000) ............................................17

*In re Volkswagen & Audi Warranty Extension Litig.*, 2015 U.S. Dist. LEXIS 16646
(D. Mass., Feb 10, 2015)...................................................................................17

*In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 754 (S.D.N.Y. 1985) .............................26

*Jermyn v. Best Buy Stores, L.P.*, Case No. 08-cv-214, 2012 WL 2505644
    (S.D.N.Y. June 27, 2012) ...............................................30

*Johnson v. Gen. Mills, Inc.*, Case No. 10-cv-00061, 2013 WL 3213832
    (C.D. Cal. June 17, 2013) ...............................................7

*Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999) ...............................................12

*Larsen v. Trader Joe's Co.*, Case No. 11-cv-05188, 2014 WL 3404531
    (N.D. Cal. July 11, 2014).................................................n.11, 51, 48

*Mason v. Heel, Inc.*, Case No. 3:12-cv-03056, 2014 WL 1664271
    (S.D. Cal. Mar. 13, 2014) ...............................................39

*Miller v. Ghirardelli Chocolate Co.*, Case No. 12-cv-04936, 2015 WL 758094
    (N.D. Cal. Feb. 20, 2015) ...............................................7, 14, 51

*Miller v. Ghirardelli Chocolate Co.*, Case No. 12-cv-04936, 2014 WL 4978433
    (N.D. Cal. Oct. 2, 2014) ...............................................34

*O'Brien v. Brain Research Labs, LLC*, Case No. 12-cv-204, 2012 WL 3242365
    (D.N.J. Aug. 9, 2012) ...............................................10, 47

*Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y. 1999)...............................13

*Roberts v. Electrolux Home Products, Inc.*, Case No. 13-cv-2339, 2014 WL 4568632
    (C.D. Cal. Sept. 11, 2014) ...............................................49

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683 (S.D. Fla. 2014) ...............37, 38, 51

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011)...............................................8

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 10-cv-14360,
    2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) .......................................51–52

*Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009)....................30

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...32

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ...............................................47

*Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70 (2d Cir. 2015)........................................41

*Taft v. Ackermans*, Case No. 02-cv-7951,2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...............26

*Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011)................................................51

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................1, 3, 19, 42

## STATUTES AND RULES

28 U.S.C. § 1715.................................................................................................................43

N.Y.G.B.L. §§ 349 and 350..................................................................................................41

Fed.R.Civ.P. 23(a) .........................................................................................................43, 45

Fed.R.Civ.P. 23(c) ...............................................................................................................19

Fed.R.Civ.P. 23(e) ...............................................................................................................19

Fed.R.Civ.P. 23(g) ...............................................................................................................43

Fed.R.Civ.P. 23(h) ...........................................................................................................35–38

# I.    INTRODUCTION

This Settlement is one of the most widely publicized settlements in class action history, with more than 100 million hits to the settlement web site resulting in more than 2.2 million valid claims that will be paid out in millions of dollars in cash or free products. This overwhelming and enormously positive public response to the Settlement alone seriously undermines the arguments—at the heart of the very few objections that have been raised—that somehow the Class has received insufficient notice or that the Class is not receiving enough compensation. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting only 18 objections out of five million class members, and that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement") (internal quotation omitted); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (agreeing with the District Court that receipt of only 18 objections and comments in response to 27,883 notices "weighed in favor of the settlement"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) (concluding, where only 45 of the 175,000 class members voiced objections, that "[t]he small number of opt-outs and objections relative to the size of the class . . . support[ed] approval of the Settlement"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) (finding that few objections "in light of the extensive notice and the class size, weigh[ed] in favor of the Settlement").

The goal of a class action settlement is to provide a fair and adequate overall compensation plan that can redress the general perceived damages of class members while recognizing the inherent risks in litigation, such as the possibility that a liability or damages class may not be certified, or that liability may not be proven on the merits. Two sets of experienced

1

Class Counsel in this case, following a lengthy mediation with experienced counsel for Red Bull, agreed that the relief being provided to the Class through the Settlement was indeed fair and adequate.

A review of the 11 objections (out of millions of claimants)[1] reveals that the overwhelming majority, if not all, of the issues raised by the objectors, fall well short of demonstrating that the Settlement is in any way unfair or inadequate. Most of the objections amount to little more than bald demands that claimants should get more money or products. Other objections are either unintelligible or aver that the class action should be *dismissed* entirely rather than the Class receiving *any* benefits whatsoever. [Corbett Obj. (action should be dismissed because he was not personally misled); Waterman Obj.(class actions are "a waste of the court's time and a waste of society's legal framework")].

And most disturbingly, some of the challenges to the Settlement are raised by serial objectors whose interests are quite obviously not to benefit the Class, but rather to extort the Parties for personal gain—indeed, some of these serial objectors have been taken to task by other courts for this very reason. [(Frank Obj.); (Lopez Obj. (Lopez' attorney, Christopher Bandas); (Narkin Obj.).]

As set forth in greater detail below, the proposed Settlement is within the range of reasonableness and the objections raised herein are unavailing and do not warrant denial of

---

[1] Counsel did receive correspondence from a twelfth individual, Mr. Horace Andre Smith, but the correspondence did not raise any objections to the proposed Settlement or to Plaintiffs' requests for attorneys' fees, reimbursement of costs and expenses, and incentive awards. Mr. Smith, an inmate at Marcy Correctional Facility in Marcy, New York, opted out of the Class Action and merely wrote to state his belief that Red Bull products caused and/or exacerbated his health problems and to inquire as to whether Class Counsel KAPLAN FOX & KILSHEIMER LLP would represent him in an individual lawsuit against the Defendants.

Plaintiffs' request for final approval of the Settlement, nor of Plaintiffs' request for attorneys' fees, expenses, and incentive awards.

## II.      LEGAL STANDARD FOR FINAL APPROVAL

As forth in greater detail in the Motion for Final Approval, [DE 62], both the Second and Ninth Circuits have expressed a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d at 116; *In re Painewebber Ltd. Partnerships Litig*., 147 F.3d 132, 138 (2d Cir. 1998) (*citing In re Pacific Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir.1995)).  Approval of a class action settlement is within the district court's discretion, exercised "in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig*., 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008).  "With respect to process, a class action settlement enjoys a presumption of correctness where it is the product of arm's-length negotiations conducted by experienced, capable counsel." *Id*.  "Indeed, absent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *In re Hi-Crush Partners L.P. Sec. Litig*., No. 12-cv-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014).

With respect to the substantive terms, courts in the Second Circuit "examine the fairness, adequacy and reasonableness of a class action settlement according to the *Grinell* factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation." *In re Telik*, 576 F. Supp. 2d at 575. "In applying the *Grinnell* factors, a court should not substitute its judgment for those of the parties who negotiated the settlement, or conduct a 'mini-trial' on the action's merit." *In re Hi-Crush Partners*, 2014 WL 7323417, at *4. "The reaction of the Settlement Class to the Settlement is a significant factor in assessing its fairness and adequacy." *Id*. at *6. As set forth at length in Plaintiffs' motion for final approval and the memorandum and exhibits in support thereof, [D.E. 62], the application of the *Grinnell* factors to the proposed Settlement demonstrates that its terms are fair, reasonable, and adequately beneficial to the Class.

The proposed Settlement is within the range of reasonableness and the objections raised herein are unavailing and do not warrant denial of Plaintiffs' request for final approval of the Settlement, nor of Plaintiffs' request for attorneys' fees, expenses, and incentive awards. The Objectors' arguments are addressed below, by topic.

## III. RESPONSE TO OBJECTIONS FROM 11 MEMBERS OF THE CLASS

The objections generally fall into three categories: (1) process, including the notice and claims procedures and administrative fees; (2) substantive terms; and (3) attorney fees. We address the legal standards for approval of class action settlements, and then each category of objections in turn. Further, both Class Counsel and and the Named Plaintiffs and counsel for Red Bull will be available at the Final Approval hearing to provide additional information and responses to any inquiries from the Court and in response to any additional arguments raised by Objectors in reply to this brief or at the hearing.

**A.     Objections to the Adequacy of the Benefits Obtained for the Class[2]**

Some of the Objectors assert that the proposed Settlement does not provide adequate benefits to the Class Members, although none can articulate any legal or relevant factual grounds for their position other than a seemingly base desire to obtain more free money or products.  As set forth at length in Plaintiffs' motions for final approval of the Settlement and for an award of attorneys' fees, expenses, and incentive awards (and accompanying memoranda and exhibits) [D.E. 62, 63], the proposed Settlement provides the Class Members with both monetary relief (that is not diminished in any way by the amount of attorneys' fees awarded) and substantial injunctive relief, which the Plaintiffs' expert values in excess of $18.5 million.  These remedies are directly related to the complained-of conduct described in the Complaints.  Indeed, the Complaints allege, *inter alia*, that Red Bull's marketing and labeling practices misled the Class Members into believing that its drinks are superior to other sources of caffeine, causing the Class Members to pay a "premium price" for Red Bull's products.

The remedies derived via the Settlement provide the Class Members a tangible benefit to at least partially compensate them for the "premium price" they paid (in the form of cash or free products) ***and*** significant injunctive relief in the form of modification or cessation of the complained-of, allegedly deceptive conduct.  Said relief—including the substantial injunctive relief of rectifying Red Bull's alleged violations of consumer protection laws and in preventing any further violations—would likely never be obtained absent a class action.  As none of the Objectors demonstrate that the proposed Settlement is unfair or that the $13 million Settlement Fund and significant injunctive relief obtained herein are in any way inadequate to compensate

---

[2] Asserted by Objectors Christopher Andrews, Lawrence Montecalvo, Dave Mager, Paul Lopez, Patrick Cruz, Ruben Quinones, Theodore Frank, and Chad Farmer.

Class Members for Red Bull's alleged violation of consumer protection laws, Plaintiffs' motion for final approval should be granted over the Objectors' contentions.

### i.     *Cash and In-Kind Benefits*

A few of the Objectors argue that the cash and in-kind benefits set forth in the Stipulation of Settlement are in some way insufficient.  Objector Christopher Andrews asserts that the "settlement amount appears too low" based on Red Bull's sales and revenue for the years 2011 and 2012, and based on his estimation of the Class Members' premium overcharges.  He does not suggest a settlement amount that he deems reasonable.  Mr. Andrews argues that, due to the large number of claims filed, each Class Member should be provided a coupon for one additional free 4-pack of Red Bull cans *on top of* the benefits they already would receive via the existing Settlement terms.  Similarly, Objector Lawrence Montecalvo generally (and vaguely) asserts that "the Settlement Relief is inadequate" because it only "provides Class Members with more Red Bull or a few dollars," and that "the $13 million settlement fund is likely insufficient to fairly compensate a nationwide class."  He fails to suggest Settlement terms that he would deem fair and reasonable.

As an initial matter, what these Objectors simply ignore is that the distribution of benefits to the Class must be weighed against the very real risks of litigation that would have been faced by the Class if the case had not settled.  While Class Counsel believes that Plaintiffs have, and could succeed on, meritorious arguments, there was certainly significant risk inherent in litigating the case that the Class would be left with very little, if any, benefits.

In light of this risk, the $13 million in value achieved through the Settlement was an excellent outcome, and is well within the range of comparable settlements with similar advertising claims and defenses.  *See, e.g.*, *Fishbein v. All Market, Inc.*, Case No. 11-cv-5580 (S.D.N.Y. 2012) (granting final approval of a settlement that certified a class of nationwide

purchasers of a beverage over a nearly five year period and provided $10 million in value to the Settlement Class Members, divided into cash refunds, including $6 for consumers who lacked proof of purchase, and product vouchers, including $8 value for consumers who lacked proof of purchase); *In Re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, Case No. 4:08-md-01907 (E.D. Mo. 2013) (granting final approval of a settlement in a nationwide class action alleging violation of various state consumer protection statutes and breach of warranty that provided class members with settlement value amounting to $7.5 million in rebates ($10 for those consumers that lacked proof of purchase)); *In re Nutella Marketing & Sales Practices Litig.*, Case No. 3:11-cv-01086 (D.N.J. 2012) (settlement terms that were granted final approval included certification of a nationwide class of Nutella® purchasers over a four year period (slightly shorter for a California subclass also certified) and a total value of $6.95 million in cash refunds ($4 per jar up to $20 per household)); *Johnson v. Gen. Mills, Inc.*, Case No. 10-cv-00061, 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (court approved settlement included non-reversionary settlement fund of $8.5 million to be distributed to class members on a claims-made basis, and provided yogurt purchasers $4.00 for each unit of product purchased); *Miller v. Ghirardelli Chocolate Co.*, Case No. 12-cv-04936, 2015 WL 758094, at *1 (N.D. Cal. Feb. 20, 2015) (where plaintiffs alleged defendant falsely labeled its products as "all natural" and misled consumers to believe that its "White Chips" contained white chocolate, the settlement included a $5.25 million common fund from which class members obtained $1.50 per purchase of the White Chips and $0.75 per purchase of any of the other products labeled "All Natural"); *Astiana v. Kashi*, Final Judgment and Order, Case No. 3:11-cv-1967 (S.D. Cal. Sept. 2, 2014) [ECF No. 242] (where plaintiffs alleged defendant falsely marketed and labeled their products as containing "Nothing Artificial," the court-approved settlement included a $5 million settlement fund permitting class members to seek reimbursement of $0.50 per package for every Kashi product purchased between August 24, 2007 and May 1, 2014) .

To be sure, it is unsurprising that a few individuals simply want *more* in the way of cash and product, but that alone is irrelevant to the question of what was fair and reasonable under the circumstances. Viewed under the proper prism, there is no question (and no meaningful articulated objection) that the Settlement is fair and reasonable to the Class Members. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) (noting that an "objection [that] simply argues that the amount awarded to Class Members should be increased . . . is tantamount to complaining that the settlement should be 'better,' which is not a valid objection") (internal quotation omitted); *Browning v. Yahoo!, Inc.*, Case No. 04-cv-01463, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2007) (rejecting objectors' complains that the settlement did not provide a full cash refund as "tantamount to complaining that the settlement should be 'better, which is not a valid objection," and as "fail[ing] to recognize that settlement, as a product of compromise, typically offers less than a full recovery"). Nor is a proposed settlement *per se* unfair or inadequate where a small percentage of the potential damages are recovered. *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, Case No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving a settlement representing a small percentage of estimated damages); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y.) (same) *aff'd sub nom In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457 (S.D.N.Y. 2004) (overruling objections that settlement amount was too low as compared to alleged damages because the risks of litigation and the substantial likelihood that further litigation would erode or even eliminate the source of settlement funds).

The Objectors' purported bases for *why* they should receive more are without merit. Mr. Andrews' contention that the Settlement is inadequate merely because of Red Bull's annual

revenue is irrelevant; that the Settlement amount borne by Red Bull is a small percentage of its annual sales revenues does not render the proposed Settlement inadequate. As this Court has recently stated:

> It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair. Indeed, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery. Thus, the propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery).

*In re Bear Stearns Companies, Inc. Sec., Der., and ERISA Lit.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) (internal quotations and citations omitted). Here, Plaintiffs face real challenges to establishing Red Bull's liability, and even if they were to succeed on that front, proving damages would likely be difficult. Thus, given that the Settlement Fund is within the range of reasonableness here (as more amply established in the final approval briefing), Mr. Andrews' argument is not persuasive. *See id.*

Objectors Dave Mager, Paul Lopez, and Chad Farmer object to the Settlement on the ground that it does not provide for different levels of distribution of the Settlement Fund based on the number of cans each respective Class Member has purchased. That the proposed Settlement provides the same benefits to all Class Members regardless of the number of cans of Red Bull they have purchased does not require a finding that it is insufficient or unfair, particularly in light of the fact that the Settlement does not require any Class Member to provide proof of purchase in order to make a valid claim. Indeed, in consumer product class actions, class members are unlikely to have proof of purchase. Once again, the purpose of the Settlement is to obtain the greatest benefit to the Class under the circumstances, and in a fair and reasonably practical matter. For this reason, courts often approve class action settlements in which the class

members are all afforded the same benefits (or choice of benefits), regardless of the amount of product each class member purchased. *See, e.g.*, *O'Brien v. Brain Research Labs, LLC*, Case No. 12-cv-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) (approving a settlement that provided all class members a choice between a $20 cash reimbursement or a 50% off voucher); *Beck-Ellman v. Kaz USA, Inc.*, Case No. 3:10-cv-02134, 2013 WL 10102326 (S.D. Cal. June 11, 2013) (approving a settlement in which each class member, regardless of the number of heating pads they purchased, would recover the same amount of cash).

Accordingly, the Objectors' contentions as to the adequacy and distribution of the in-kind relief do not warrant a finding that the proposed Settlement is unfair or inadequate.

### ii. *Injunctive Relief*

Some of the Objectors erroneously assert that the injunctive relief obtained via the Settlement does not adequately address the claims pled in the Complaints. Objectors Chad Farmer, Lawrence Montecalvo, and Theodore Frank assert that the Settlement does not resolve the deceptive marketing complained of in the Complaint because Red Bull is still advertising that "Red Bull gives you wings" and "still promoting the idea that drinking Red Bull leads to peak performances in a range of extreme sporting activities . . . ." Notably, however, the Plaintiffs do not allege that Red Bull's famous "gives you wings" slogan is actionable and it was not the basis of either Complaint. The Complaints were based on the use of allegedly misleading scientific studies and very specific comments on functional benefits. Therefore, this litigation and Settlement have nothing to do with Red Bull's "wings" slogans. The injunctive relief obtained herein *does* resolve the allegations in the Complaint, because Red Bull has promised to no longer make claims that are not medically or scientifically supported and has removed the objectionable statements from their marketing and labeling.

As set forth in the brief in support of Final Approval, the injunctive relief obtained here is likely the most that the Class could have hoped to achieve even if the matter had been fully litigated and the Class succeeded on the merits, and it is indeed valuable. Class Members (and future consumers of Red Bull) are no longer exposed to allegedly deceptive and misleading marketing; they benefit from new and updated warnings on packaging and labeling; and benefit from Red Bull's promise to provide medical and scientific support for future claims. Because of this relief, Class Members (and future consumers of Red Bull) have the ability to make a more sound and informed decision when paying a premium for Red Bull over other caffeinated products, which translates into a savings for Class Members, as more fully described in the expert report of Rob Frankel. [D.E. 64-5]. Indeed, Mr. Frankel concludes that the value of the relief easily exceeds the $18.5 million dollar valuation Plaintiffs have put forth here. [D.E. 64-5].

Mr. Cruz, Mr. Quinones, Mr. Lopez, Mr. Frank, and Mr. Monteclavo argue that the injunctive relief obtained herein should not be considered a benefit to the Class in determining the total value of the Settlement and the reasonableness of the requested attorneys' fees. Mr. Cruz and Mr. Quinones assert that the value of the injunctive relief as set forth in the Stipulation of Settlement is "illusory." While they do not challenge Plaintiffs' valuation of the injunctive relief, Mr. Cruz and Mr. Quinones argue that the injunctive relief should not be deemed part of the Settlement's value because it was not the result of the Settlement, but was rather a voluntary response to the allegations set forth in the Complaint. Mr. Lopez likewise argues that the injunctive relief set forth in the Stipulation of Settlement "should not be counted as part of Red Bull's total liability in this settlement" because the marketing and labeling changes are voluntary measures that have already been implemented. This argument is unavailing. Red Bull's

marketing and labeling changes, and promise to ensure future claims are medically and scientifically supported, were the result of both the Complaints filed herein and the extensive, arms-length settlement negotiations between Class Counsel and defense counsel. Accordingly, the marketing and labeling changes that inure to the Class Members' benefit were the result of this litigation and the hard work of Class Counsel and should be considered in evaluating the Settlement's value. The objectors' insinuation that Red Bull would have made the changes regardless of the lawsuits is wholly unfounded. Furthermore, in the fee briefing, Class Counsel is very clear about the valuation of the injunctive relief and its relation to the fee calculation and that the fee is fair and reasonable even where the Court decides not to place a specific number on the value of the injunctive relief obtained.

Mr. Montecalvo vaguely argues that Class Counsel's valuation of the injunctive relief obtained herein is unsupported and that "Class Counsel's actions have not resulted in any changes that benefit the Class or the public." Mr. Frank likewise asserts that the prospective injunctive relief set forth in the Settlement "does nothing to compensate actual class members." In this regard, Mr. Frank first argues in boilerplate fashion that courts have disapproved class counsel's attempts to justify "unwarranted attorneys' fees through fundamentally superficial changes in business practices," and cites several cases that are clearly distinguishable from this action. Indeed, Mr. Frank cites cases involving settlements that included *only* valueless injunctive relief and attorneys seeking to justify fee requests even though the Class Members were afforded no valuable benefits. *See, e.g.*, *Kaplan v. Rand*, 192 F.3d 60, 61 (2d Cir. 1999) (holding that a settlement requiring the defendant "to make certain [already accessible] reports available to stockholders and to insert a non-discrimination statement in its vendor contracts" provided "the plaintiff stockholders no relief of any kind against the defendant officers and

employees"); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 108, 112 (S.D.N.Y. 1999) (denying approval of a proposed settlement in which "[t]he plaintiff class [was] to receive no monetary payment or other benefit other than the disclosure of information and confirmation [that the price they received for their tendered shares was 'not unfair']").

Here, unlike the cases Frank cites, the Settlement provides Class Members not only reimbursement (in the form of cash or free products), but also valuable injunctive relief. Mr. Frank acknowledges that the Settlement provides for marketing and labeling changes as to Red Bull's specific representations set forth in the Complaint, but argues that Class Members have derived no benefit from those changes because Red Bull is still using "energy claims" and the slogan "Wings when you need them." Mr. Frank also argues that Red Bull's changes to their marketing and labeling are only beneficial for future purchasers, and not for the Class Members who by definition purchased Red Bull's products in the past.

First, to be clear yet again, the underlying Complaints and this settlement have nothing to do with Red Bull's "wings" slogans. No reasonable Class Member would think that imbibing Red Bull will lead to the sprouting of wings; it is puffery and fantasy. Second, many courts have held that injunctive relief in the form of labeling and marketing changes constitute a "valuable contribution to [ ] settlement." *See Bezdek v. Vibram USA Inc.*, Case No. 12-cv-10513-DPW, 2015 WL 223786, at *16 (D. Mass. Jan. 16, 2015); *In re Skechers Toning Shoe Products Liab. Litig.*, Case No. 3:11-MD-2308-TBR, 2013 WL 2010702, at *10 (W.D. Ky. May 13, 2013) (noting, in evaluating an appropriate attorneys' fee, that "[i]n addition to monetary benefits, counsel's efforts resulted in injunctive relief in the form of an agreement between Skechers and the Federal Trade Commission," whereby "Skechers [ ] agreed to amend or stop altogether certain marketing practice[s] related to the toning shoes at issue"); *Carr v. Tadin, Inc.*, Case No.

12-cv-3040, 2014 WL 7499454 (S.D. Cal. Dec. 5, 2014) (approving a settlement and awarding attorneys' fees where the <u>only</u> benefit achieved for the class was injunctive relief in the form of redesigning of labeling and packaging of the subject products); *Miller v. Ghirardelli Chocolate Company*, 2015 WL 758094 (noting that "[w]hen determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement confers," and considering the injunctive relief of labeling changes in determining the propriety of class counsel's requested fee); *Beck-Ellman v. Kaz USA, Inc.*, 2013 WL 10102326, at *3, 10 n.2 (referring to product packaging changes included in the settlement as "substantial injunctive relief relating to Plaintiffs' claims" in concluding that "the requested attorneys' fees represent[ed] a reasonable percentage of the total monetary value of the settlement"); *Bruno v. Quten Research Inst., LLC*, Case No. 11-cv-00173, 2013 WL 990495, at *4 (C.D. Cal. Mar. 13, 2013) (noting, in evaluating the reasonableness of the requested fee, that "in addition to the monetary relief obtained by Class Counsel for class plaintiffs, there is a high value to the injunctive relief obtained in this case," as "[n]ew labeling practices affecting hundreds of thousands of bottles per year, over ten years, bring a benefit to class consumers, the marketplace, and competitors who do not mislabel their products").

Moreover, consumer protection laws grant a private right of action for the purpose of encouraging consumers to expose false and misleading advertising so that they may obtain compensation for such deceptive practices where applicable, rectify the deceptive practices, and deter future false and misleading advertising. Accordingly, to ascribe no value to injunctive relief that rectifies the very conduct complained of contradicts the very purpose of consumer protection laws and would render such statutes meaningless. Finally, even if Mr. Frank's

assertion that the injunctive relief herein should be valued at $0 is accepted, such a valuation does not render Class Counsel's requested fees excessive, because even with no value attributed to the injunctive relief, the requested fee represents only 26.1% of the total benefit to the Class. If the Court does include the value of the injunctive relief in the total settlement value, the requested attorneys' fees represent only 13.1% of that total value.

Accordingly, the Objectors' contentions as to the adequacy and valuation of the injunctive relief do not warrant a finding that the proposed Settlement is unfair or inadequate.

### B. Objections to the Valuation of the Free Products Distributed via the Settlement[3]

Christopher Andrews, Patrick Cruz, Ruben Quinones, Paul Lopez, Theodore Frank, and Chad Farmer object to the Settlement's valuation of the in-kind relief (*i.e.*, free Red Bull products) at the retail market price of the products. Mr. Andrews argues that the face value of the products distributed via the Settlement should be at wholesale price (rather than retail price). Mr. Cruz and Mr. Quinones object to the fact that the MSRP (manufacturer's suggested retail price) is used to determine the value of the cans distributed to the product class, claiming that several stores sell Red Bull cans at below the MSRP of $1.875 listed in the Stipulation of Settlement and that "using MSRP [to value the cans for the Settlement purposes] would reduce the amount of product available to the product sub class." Mr. Cruz and Mr. Quinones further contend that Class Members could in any event obtain a 4-pack on their own by contacting Red Bull via Twitter. As an alternative to MSRP, Mr. Cruz and Mr. Quinones suggest a value of $1.00 per can. Mr. Lopez argues that "[t]he free products should not be valued at their retail cash value or even $10 for the purpose of calculating Red Bull's total liability." He does not

---

[3] Asserted by Objectors Christopher Andrews, Patrick Cruz, Ruben Quinones, Paul Lopez, Theodore Frank, and Chad Farmer.

offer any alternative valuation for the free products. Mr. Farmer argues that "it's just not fair to evaluate [the free Red Bull products] at the retail price," but he does not provide an alternative valuation for the products to be distributed to the product class.

Contentions that MSRP is an inappropriate or unreasonable valuation for the free products are unavailing for several reasons, and the Objectors cannot demonstrate that use of MSRP in any way renders the Settlement unfair or inadequate. First, that some wholesalers may retail the subject products for a lower amount does not mean that other retailers (or other venues that sell Red Bull) are not selling for an amount above the MSRP. On the whole, it is a fair assumption that most consumers are paying somewhere near the MSRP and it is a good approximation of value. Second, and relatedly, use of a suggested $1.00 strike price or a particular whole sale price from a particular retailer would be entirely arbitrary. Third, the objectors fail to acknowledge that Class Members are actually receiving substantial additional value *beyond* the MSRP in at least two different ways: (1) Red Bull is rounding up the product option to a full four-pack even though the *pro rata* reduction (as per GCG), based purely on MSRP, provides that each class member should receive three cans out of a four-pack; and (2) Red Bull is providing free shipping on all products (a substantial value). Fourth, the fact that Class Members may be able to obtain free Red Bull beverages from other sources does nothing to diminish the fact that they are receiving *additional* free Red Bull as part of the Settlement; there is nothing preventing a Class Member from taking advantage of any other Red Bull promotional offer that may exist.

Moreover, Red Bull's potential liability here is not the overall price of the product, so that price is irrelevant. Rather, the damages alleged in the Complaints are the alleged price premiums that the Class Members would have paid for Red Bull over other sources of caffeine

based on alleged consumer deception, where the prices charged for the Red Bull product and alternative caffeinated beverages are set by third parties as to whom Red Bull has no control. Finally, the contention that the product value is too low is undermined by the massive number of claimants who opted for product instead of cash; if Class Members believed the MSRP to be overvaluing, they would have all chosen the cash option.

Despite the objections to the valuation of the free Red Bull products at retail price, in evaluating class action settlements involving distribution of free products or services, courts have often accepted settlements that value those products or services at their *retail prices*. *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, Case No. 09-cv-1088, 2014 WL 6473044, at *8 (S.D. Cal. Nov. 18, 2014) (rejecting an objector's argument that the value of the free product should not be calculated based on retail price because "retail value is an accurate measure of benefit to the class"); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 352 (E.D.N.Y. 2000) (approving settlement requiring Defendants to donate toys to charity where "[t]he toys [were] valued at manufacturer's list price . . . [or] the average retail price at which TRU initially offered its products in its stores . . . ," and noting that "[a]lthough the toys are not valued at their cost to TRU and the manufacturers, the cost to the defendants is nonetheless substantial in comparison to the estimated damages[;] [t]ogether with the required cash payments, they serve as a sufficient deterrent to unlawful behavior"); *In re Volkswagen & Audi Warranty Extension Litig.*, 2015 U.S. Dist. LEXIS 16646 (D. Mass., Feb 10, 2015); *In re Magsafe Apple Power Adapter Litig.*, 2015 U.S. Dist. LEXIS 11353 (N.D. Cal. Jan. 30, 2015); *In re Nucoa Real Margarine Litig.*, 2012 U.S. Dist. LEXIS 189901 (C.D. Cal. June 12, 2012). Accordingly, the Settlement's valuation of the free products based on MSRP/retail pricing does not render the Settlement unfair, unreasonable, or inadequate.

### C. Objections as to Class Notice[4]

Objectors Christopher Andrews, Patrick Cruz, Ruben Quinones, and Lawrence Montecalvo assert that Notice to the Class Members is in some way deficient. Mr. Andrews argues that the Class Notice fails to comport with Due Process for the following reasons: (1) Mr. Andrews wants more information about the notice program and a description of "the methodology behind it"; (2) Counsel "could have agreed to include a point of display publication notice at the big retailers that market [Red Bull products] advertising them of the settlement but did not; (3) Counsel could have included the publication notice on defendant's social media pages, but did not; (4) the notice should be put on www.RedBulletin.com; and (5) Red Bull should be required to use their database of email addresses obtained via www.RedBullShop.com to directly email the notice to Red Bull purchasers. Objectors Patrick Cruz and Ruben Quinones assert that the notice to Class Members was defective because it did not adequately warn Class Members that the "retail value" of the product option is defined as the MSRP. Mr. Montecalvo objects to the Notice with regard to its description of the Settlement Release.[5]

At its core, sufficient due process is a meaningful opportunity to be heard. *See*, *e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). With over two million claims and a viral internet phenomenon that generated over 100 million hits on the settlement website, it is fair to say the Class Members were heard, and contrary to Mr. Andrews' contentions, the Notice provided to Class Members *does* comport with Due Process. As set forth at length in Plaintiffs' motion for final approval and the exhibits thereto, [D.E. 62], Notice was conducted in the best practicable

---

[4] Asserted by Christopher Andrews, Patrick Cruz, Ruben Quinones, and Lawrence Montecalvo.
[5] Mr. Montecalvo's objections to the Settlement Releases and Notice thereof are addressed more fully in Section D, below.

manner. Moreover, that motion and Mr. Lael Dowd's declaration submitted therewith, [D.E. 64-2], provides sufficient and detailed information about the notice program utilized.

For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). Notice to a class of a settlement similarly requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23(e)(1). Accordingly, the Second Circuit has explained:

> The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness . . . [T]he settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings. [] Notice is adequate if it may be understood by the average class member.

*Wal-Mart*, 396 F.3d at 113–14 (internal quotations and citations omitted). Moreover, "[i]t is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).

Here, the Notice Program reached approximately 76 percent of the target audience of "Adults Who Drink Energy Drinks" approximately 2.7 times. [D.E. 64-2, ¶ 19]. The Notice Program included:

- Publication of an advertisement run once in one print issue each of nationally circulated magazines: People, Sports Illustrated, and Wired.

- An internet campaign run for a period of six weeks through banner ad placements on the following websites: Facebook, Xaxis (formerly known as Real Media Group), MSN (Run of Network), Yahoo! Sports, Yahoo! (Run of Network), Google Display, and Univision.

19

The banner ads directed people to the Settlement Website by clicking on the advertisement, as well as mobile advertising on MSN (Run of Mobile) and *Yahoo! Mobile*.

- The purchase of Google Ad Key Word Search with terms from a select list of keywords related to the Actions.
- A Press Release distributed over PR Newswire's USI newsline and National Hispanic newslines in substantially the same form as the Publication Notice
- An informational website on which the Notices and other important Court documents were posted
- A toll-free information line where Class members could call to obtain information about the Settlement, as well as speak to a live customer service representative during business hours

The Long Form Notice posted at http://www.energydrinksettlement.com/docs /longFormNotice.pdf, informed Class members of the material terms of the Settlement, the procedures for each Class member to receive the benefits under the Settlement; the relief the proposed settlement will provide; the date, time and place of the final approval hearing; the procedures and deadlines for opting out of the settlement or submitting comments or objections; and that, if they do not opt out, they will be bound by any final judgment in this case, including a release of claims. The Notice also advises Class members that Plaintiffs' counsel will apply to the Court for an award of fees and expenses, and that this award will be paid by Red Bull without reducing the cash payments and other benefits provided to the Class under the Settlement.

The Notice Program generated an unprecedented response to the Settlement Website from Class Members and the media. In less than a 24 hour period, the Settlement Website received approximately 67 million hits. As of April 5, 2015, the Settlement Website had received over 104,900,000 hits. [D.E. 64-1, at ¶¶ 9, 10]. In light of the overwhelming, if not unprecedented, response to the Settlement — including the Settlement being further publicized by major media outlets — it is safe to say that the Notice Program was successful. Further, the contention that the Notice to the Class was inadequate because it did not define "retail value" as

MSRP must be rejected. The Notice of Class Action states that the free products have a "retail value of approximately $15.00" (subject to proportional reductions) *and* provides a website (at which Class Members could obtain a copy of the Stipulation of Settlement) and a telephone number Class Members could access with regard to any questions they had pertaining to the Notice or the Settlement. As the Class Members had sufficient resources for determining the definition of "retail value" as set forth in the Stipulation of Settlement, a finding that the Notice was unfair or inadequate merely because it did not define "retail value" on its face is simply unwarranted. As the Notice Program was comprehensive and effective, and provided notice of the terms of the Settlement to the Class Members in a reasonable manner, the contentions of Mr. Andrews, Mr. Cruz, and Mr. Quinones that the Notice was insufficient are unfounded.

### D. Objections as to the Releases in the Stipulation of Settlement[6]

Christopher Andrews, Lawrence Motecalvo, Theodore Frank, and Michael Narkin raise objections to the releases in the proposed Settlement. Mr. Andrews argues that the sentence "personal injury claims unrelated to the marketing or labeling of Red Bull Products will fall outside the scope of Released Claims" should be removed from the Stipulation of Settlement because that language was not in the Preliminary Approval papers nor on the Claim Form. But this objection makes little sense; removal of the *exception* to the release for these types of personal injury claims theoretically would *hurt* the class by preventing class members from bringing those claims in the future. In any event, the Claim Form *does* expressly inform Class Members that "[t]he release does not encompass any personal injury claims." [D.E. 42-1, p. 49].

Mr. Andrews argues that a new paragraph entitled "Binding Effect" pertaining to the discovery of new information should be added to the Stipulation of Settlementand that the

---

[6] Asserted by Christopher Andrews, Lawrence Motecalvo, Theodore Frank, and Michael Narkin.

reference to a release of claims pursuant to "§ 1542 of the California Civil Code and any statute, rule, and legal doctrine similar, comparable, or equivalent to [it]," set forth in the Stipulation of Settlement should be included on the claim form and each Class Members should have to separately initial the § 1542 release. But Mr. Andrews doesn't provide any support for the notion that these steps would be necessary, or that without these additions the notice was inadequate and if such steps had been taken, doubtless Mr. Andrews would argue that the claim forms were too complex and burdensom. As set forth in the final approval briefing, the settlement was reached after extensive negotiation and its core terms were supervised by an able and experienced mediator. As to any issues with the released and unreleased claims, Class Members were notified of the release language and given ample opportunity to opt out of the settlement.

Objector Mr. Montecalvo argues that the Notice to Class Members is "deceptive and inadequate" because the Notice states that "the release does not encompass any personal injury claims," but the release in the Stipulation of Settlement, he asserts, does include a release of personal injury claims related to the marketing or labeling of Red Bull. Mr. Montecalvo also asserts that the Release is overbroad and unfair to Class Members "because Class Members were led to believe that personal injury claims were outside the scope of the settlement." Objector Michael Narkin likewise asserts that that the Settlement does not protect the interests of Class Members who have tort claims against Red Bull.

Contrary to the contentions of Mr. Montecalvo and Mr. Narkin, all personal injury claims *are* outside of the scope of the release of this Settlement, and that is made plain in the Notice of Class Action, the Stipulation of Settlement, and on the Settlement website. The Stipulation of Settlement states: "For avoidance of doubt, personal injury claims unrelated to the marketing or

labeling of Red Bull Products will fall outside the scope of the Released Claims." Even if that sentence could be read in the way Mr. Montecalvo is trying to construe it, it is still a red herring. In a very practical sense, a personal injury claim related to Red Bull would arise from *consumption* of the product, and consumption is not part of that sentence. In other words, Class Members would not be sustaining personal injury merely via exposure to Red Bull's marketing and labeling and could not base a claim on such exposure; rather, their claims would have to be grounded in use of the product and resulting physical harm. But, to be clear, personal injury claims have not been released, as the Notice states. Accordingly, Mr. Montecalvo's claim that the proposed Settlement improperly asks Class Members to release personal injury claims and that the notice to the Class Members regarding the scope of the release is inadequate are simply incorrect.

Mr. Frank asserts that the Settlement's "future claims release" is too broad. Specifically, he argues that the Settlement's release of claims premised on Red Bull's labels or advertising in existence at the time of the final approval of the Stipulation is improper because the labels and advertising in place on the date of the final approval will be different than those that formed the basis of the Complaints, given the marketing and labeling changes Red Bull has already made. This argument is unavailing. The parties agree that Red Bull's current marketing/labeling adequately addresses the concerns raised in the Complaints and would not run afoul of the allegations raised therein. Accordingly, neither the Settlement's Releases, nor the notice thereof, are unfair or unreasonable.

**E.     Objections to the Settlement's *Cy Pres* Remedy[7]**

Cristopher Andrews, Dave Mager, Lawrence Montecalvo, Theodore Frank, and Michael Narkin raise objections to the proposed *Cy Pres* remedy.  Mr. Andrews and Mr. Mager object to the use of a *Cy Pres* program at all and assert that any undistributed funds should be distributed to the Class Members.  This argument is wrong.  First, the *Cy Pres* remedy is a contingent event — there may be no distribution to *Cy Pres* at all.  But if it is triggered, courts often approve settlements that include such remedies where distribution of a portion of the settlement fund is impractical.  *See*, *e.g.*, *In re Holocaust Victim Assets Litig.*, 424 F.3d 158, n.2  (2d Cir. 2005) (in determining the best recipient of the *cy pres* funds, court noted the appropriateness of such remedies); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (*cy pres* remedies are most appropriate where "further individual distributions are economically unfeasible," and even in the opposite situation)  Here, the *Cy Pres* remedy set forth in the Stipulation of Settlement is only triggered if there is less than $100,000.00 of the Settlement Fund remaining from uncashed or returned Class Member checks after as many as *two* attempts at distributing funds to Class Members, and where the cost of an additional distribution would render such an effort impractical and of no benefit to the Class Members.  The *Cy Pres* remedy as outlined in the Stipulation of Settlement is thus logical because, given the large number Class Members, it would be wholly impractical and a waste of resources to re-distribute less than $100,000.00 among more than two million Class Members.  Thus, if the *Cy Pres* remedy does apply, it will only be for a very small percentage of the cash fund.  Accordingly, objections to the use of a *Cy Pres* remedy here does not warrant denial of Plaintiffs' motion for final approval of the Settlement.

---

[7] Asserted by Cristopher Andrews, Dave Mager, Lawrence Montecalvo, Theodore Frank, and Michael Narkin.

Mr. Montecalvo and Mr. Frank object to the Stipulation of Settlement on the ground that it does not specify which organization(s) will receive the *Cy Pres* distribution and how the recipient(s) will use the distribution. This argument is unsupported, and contradicted by case law. *See In re Baby Products Antitrust Litig.*, 708 F.3d at 180 (knowledge that the *cy pres* recipient will be chosen later with Court participation is not violative of due process). First, as explained above, there is no guarantee the remedy will be triggered. If it is triggered, the Court will have ample opportunity to approve an appropriate *Cy Pres* recipient. Mr. Montecalvo also objects that notice of the *cy pres* remedy was not included in the Class Notice, but that objection is unavailing because: (1) the *cy pres* remedy may not even be triggered and (2) the Notice of Class Action lists the Settlement website (at which Class Members could obtain a copy of the Stipulation of Settlement, explaining the *cy pres* remedy) and a telephone number Class Members could access with regard to any questions they had pertaining to the Notice or the Settlement terms, including the *cy pres* remedy.

Mr. Narkin argues that the *Cy Pres* provision in the Stipulation of Settlement violates the Rule Against Perpetuities. Frankly, such a statement is nonsensical and not applicable. For all of the reasons previously set forth, in the unlikely circumstance that the *Cy Pres* remedy is triggered, it will be fair and fairly done

### F.    Objections to the Requested Attorneys' Fees and Incentive Awards[8]

Several of the Objectors argue that the requested attorneys' fees and/or incentive awards are excessive or unreasonable. As set forth at length in Plaintiffs' Memorandum of Law in support of their Motion for an Award of Attorneys' Fees, Expenses, and Incentive Awards, and

---

[8] Asserted by Jonathan Corbett, Christopher Andrews, Patrick Cruz, Ruben Quinones, Dave Mager, Paul Lopez, Lawrence Montecalvo, Theodore Frank, Chad Farmer, and Michael Narkin.

the exhibits thereto, [D.E. 63], however, Class Counsel's request for attorneys' fees, expenses, and Incentive Awards for the Named Plaintiffs are reasonable and not excessive.

### i.    *Attorneys' Fees*

Class Counsels' requested attorneys' fees are reasonable for all of the reasons set forth in Plaintiffs' fee motion, and particularly in light of the fact that the Defendants have agreed to pay those amounts directly to Class Counsel, separate and apart from the Settlement Fund. Indeed, each of the factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) favors approval of the requested attorneys' fees. Moreover, it is not reasonable for Class Counsel to go uncompensated for taking on the significant risks of litigation. Given the reasonableness of the parties' agreed to amount for attorneys' fees and expenses, the objections to the requested attorneys' fees are unavailing. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 248 (E.D.N.Y. 2010) (rejecting objectors' argument that the requested attorneys' fee award was excessive); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 754 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986) (same); *Farinella v. Paypal, Inc.*, 611 F. Supp. 2d 250, 257 (E.D.N.Y. 2009) (rejecting an objector's argument that the requested fee was excessive in light of "the negotiation process and the terms of the Settlement Agreement"); *Taft v. Ackermans*, Case No. 02-cv-7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (rejecting objectors' argument that an attorneys' fee of 30% was excessive).

Objector Jonathan Corbett proposes that Plaintiffs' application for $4.75 million in attorneys' fees be denied and that Class Counsel be permitted to only recover $100 per documented hour on the class action by attorneys, $50 per documented hour spent by paralegals, and documented expenses. Mr. Corbett's suggested hourly rates for compensation of Class Counsel, however, are unsupported by citation to any case and are in fact well below the hourly

rates that courts in this Circuit permit in class actions. *See, e.g.*, *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 589 (accepting class counsel's $700 to $750 hourly rates for partners and $300 to $500 hourly rates for associates). Mr. Corbett fails to provide any explanation for his assertion that Class Counsel should be markedly undercompensated for their work in this action.

Mr. Cruz and Mr. Quinones argue that the work of Class Counsel on the California action was duplicative and should be limited. This contention that the work of New York Class Counsel and the California Class Counsel is duplicative is unfounded, as both firms performed separate work beneficial to the Class and crucial to reaching the Settlement. Indeed, Class Counsel acknowledge their separate work in the Settlement of Stipulation by providing that the firms will receive different portions of the requested fees. [D.E. 42-1, p. 29].

Mr. Cruz and Mr. Quinones also argue that any attorneys' fees not awarded from the requested $4,750,000.00 should revert back to the Class (and not to Red Bull). But the objectors do not provide any legal support that addresses any such "reversion," and instead just rely on a general argument—based on Eighth Circuit law—that the class distribution and attorney fees "represent a package deal." Such a "reversion" is not only unsupported as a legal matter, it would be improper under the circumstances of this case. The calculation of the attorneys' fee amount was deliberately separated from the common fund available to Class Members so that there would be certainty as to the benefits to the Class, and both that figure and the Settlement Fund were the product of arms-length negotiation. This was not a "package deal" in terms of fairness to the Class, as the separate negotiation of the attorneys' fees after the determination of the Class benefits has been deemed to be a fair approach, as more amply set forth in the final approval briefing.

Moreover, contrary to Mr. Mager's contentions about the requested attorneys' fees, Class Counsel is not requesting "almost 30% of the [fund]." Rather, Class Counsel's fee request represents, at most, 26.1% of the total value of the Settlement (that is, if the Court assigns no numerical value to the injunctive relief set forth in the Stipulation of Settlement).[9] Adding the value of the injunctive relief into the total settlement value would yield an attorneys' fee percentage of 13.1%.[10]

Several objectors also make completely unfounded, nebulous assertions that Class Counsel acted other than in the Class Members' interests in litigating and settling this Class Action. Mr. Frank argues that Class Counsel's requested attorneys' fees are excessive and that the Settlement "shows signs of self-dealing." Specifically, he argues: (1) that the Settlement's "clear-sailing agreement requires heightened scrutiny"; (2) that the Settlement provides for a "defective segregated fee fund which defers scrutiny of fees"; and (3) that the requested fee is "based on an overestimation of class benefit." Mr. Andrews likewise asserts that because the attorneys' fee is to come from a fund separate from the Settlement Fund, it is "unfairly insulate[d]" from scrutiny. Mr. Montecalvo similarly claims that "the [fee] arrangement between Defendants and Class Counsel creates the perception of impropriety and collusion," because "Defendants' agreement not to oppose Class Counsel's fee motion combined with the direct

---

[9] If this Court were to assign no numerical value to the injunctive relief to the Class, the total value of the Settlement is $17,765,000.00 — which is the total of the Settlement Fund plus the fund for the attorneys' fees, expenses, and incentive awards as set forth in the Stipulation of Settlement. Deducting expenses of $113,448.00, means the fee portion sought is actually $4,636,552.00, which is 26.1% of the total settlement value without injunctive relief.
[10] $4,750,000.00 as a percentage of the $17,765,000.00 in monetary relief plus the $18.5 million in injunctive relief.

payment of Class Counsel's fees . . . suggests Class Counsel settled this case for the fee payment to the detriment of the Class." These erroneous arguments are wholly unsupported.[11]

Despite Mr. Frank's contentions, the mere presence of a "clear-sailing" provision — Red Bull's agreement not to oppose attorneys' fees up to a certain amount — does not warrant denial of a motion for attorneys' fees, particularly where, as here, the fees are negotiated only after the settlement terms have already been decided and do not affect class recovery. *See Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1, 4 (2d Cir. 2012) ("To the extent objectors argue that the clear-sailing and reversionary provisions suggest improper collusion between class counsel and [the defendant], we note that such provisions, without more, do not provide grounds for vacating the fee") (*citing Malchman v. Davis*, 761 F.2d 893, 905 & n. 5 (2d Cir.1985)); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 183 n. 4 (W.D.N.Y. 2011) (awarding requested attorneys' fees pursuant to a stipulation of settlement containing a "clear-sailing" provision and noting that such provisions provide the defendant with "a more definite idea of their total exposure").

As to the argument that the Settlement agreement creates a "defective segregated fee fund which defers scrutiny of fees," Mr. Frank and Mr. Andrews ignore the case law in this Circuit holding that separate fee funds, negotiated only after an agreement is reached as to the benefits

_____

[11] Also unsupported is Mr. Narkin's assertion that "actions of Class Counsel, including improper request for a protective order and/or confidentiality agreement" may be indicia of collusion and violate Due Process. This objection is nonsensical — and perhaps a remnant from a prior boilerplate objection to another class action settlement — as Class Counsel never moved for a protective order and/or confidentiality agreement in this Class Action. Indeed, Mr. Narkin has unsuccessfully made this same argument in opposition to several other class action settlements. *See, e.g.*, *Larsen v. Trader Joe's Co.*, Case No. 11-cv-05188, 2014 WL 3404531, at *7 (N.D. Cal. July 11, 2014); *Arnold v. Fitflop USA, LLC*, Case No. 11-cv-0973, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014); *Bezdek v. Vibram USA Inc.*, 2015 WL 223786, at *22 n. 14.

the class members are to receive, are favored because they do not affect the class members' recovery and reduce the danger of conflicts of interest between class counsel and class members. *See, e.g., Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d at 243–44; *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (noting "with approval that the fee award [would] not be drawn from the common fund but [would] be paid directly by [the defendant]," and that "[i]n this regard, the fee award, however substantial, [would] have no effect on the monetary relief afforded to class members"); *In re Sony SXRD Rear Projection Television Class Action Litig.*, Case No. 06-cv-5173, 2008 WL 1956267, at *15 (S.D.N.Y. May 1, 2008) (noting that when the attorneys' fee award in no way reduces the recovery to the class, "the danger of conflicts of interest between attorneys and class members is diminished"); *Jermyn v. Best Buy Stores, L.P.*, Case No. 08-cv-214, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (same); *In re Sinus Buster Products Consumer Litig.*, Case No. 12-cv-2429, 2014 WL 5819921, at *14 (E.D.N.Y. Nov. 10, 2014) ("[W]here, as here, the attorneys' fees are to be paid directly by defendant and, thus, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members") (internal quotation omitted); *Ebbert v. Nassau Cnty.*, Case No. 05-cv-5445, 2011 WL 6826121, at *14 (E.D.N.Y. Dec. 22, 2011) (same).

Here, Class Counsel did not create a segregated fund for attorneys' fees and expenses in order to avoid this Court's scrutiny as to their fee request; rather, they did so to ensure that the Class Members' recovery would not be reduced to pay fees and expenses, and to ensure that the Defendants, rather than the Class Members, bear the costs of this litigation. That Class Counsel does not seek to evade this Court's scrutiny of its requested fees is evidenced by the Plaintiffs'

motion for attorneys' fees and memorandum in support thereof that set forth a detailed explanation of why Class Counsel's requested fees are reasonable and why each of the factors set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) favors approval of the requested fees. [D.E. 63].

As to his argument that the requested attorneys' fees are premised upon an overestimation of class benefits, Mr. Frank warns against class counsel receiving a "disproportionate distribution of the settlement," and argues that in consumer class actions, attorneys' fees should not exceed a third or at most half of the total amount of money going to class members and their counsel. Class Counsel agree. Here, Plaintiffs' requested attorneys' fees represent no more than 26.1% of the total value of the Settlement, even if this Court chooses to ascribe *no value* to the significant injunctive relief achieved herein.

### ii.   *Incentive Awards*

As discussed at length in Plaintiffs' Memorandum of Law in support of their Motion for an Award of Attorneys' Fees, Expenses, and Incentive Awards, and the exhibits thereto, [D.E. 63], the Plaintiffs' request for incentive awards of $5,000.00 for each of the Named Plaintiffs is reasonable because those Plaintiffs served the Class by being the face of the settlement when it went viral on the internet in the Fall of 2014, by being available as needed to discuss the litigation with Class Counsel (or otherwise), and by reviewing the status of the case with counsel.

Mr. Cruz and Mr. Quinones argue that the requested incentive awards for the Named Plaintiffs are excessive because this case settled prior to "lengthy discovery or deposition." Accordingly, they argue that Plaintiff Careathers should be awarded a $2,500.00 incentive award and that, because the California litigation was "largely redundant," Plaintiffs Wolf and Almarez

should be awarded $1,000.00 each.  As set forth above and in Plaintiffs' fee motion, however, [D.E. 63], Plaintiffs' requested incentive awards are reasonable and comport with such awards in other class actions.  *See In re Colgate-Palmolive Co. Erisa Litig.,* 36 F. Supp. 3d 344 at 354 (S.D.N.Y. 2014) (providing a $5,000 incentive award for each of six named plaintiffs where those plaintiffs participated in the litigation, reviewed filings and "communicated regularly with Class Counsel"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d at 245 (granting a $5,000 incentive award for a named plaintiff who "reviewed the complaint in the California Action and discussed the facts with counsel"); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (awarding the class representative a $15,000 incentive award).

Objector Jonathan Corbett proposes that the $5,000.00 incentive awards to the Named Plaintiffs be "earmarked for their education," but fails to cite any legal authority pertaining to the propriety of earmarking incentive awards to Named Plaintiffs for particular purposes.

Objector Christopher Andrews argues that the $5,000 incentive awards the Plaintiffs request for each of the three Named Plaintiffs are excessive and create a conflict between the Named Plaintiffs and the absent Class Members, such that the Named Plaintiffs do not adequately represent the Class Members.  Mr. Montecalvo likewise argues that the requested incentive awards for the Named Plaintiffs are "excessive, unreasonable, and unfair to Class Members," and insinuates that incentive awards to the Named Plaintiffs places the interests of those Plaintiffs at odds with the interests of the Class Members.  Notably, however, courts have considered and rejected this same argument.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942–44 (9th Cir. 2015).  In *In re Online DVD-Rental Antitrust Litig.*, the Court explained:

> [Objector] Cox argues the representatives are not capable of adequately
> representing the class because the nine class representatives' awards under the

settlement, at $5,000 each, are significantly larger than the $12 each unnamed class member will receive. Cox argues that . . . there is an arbitrary line drawn in this case between class representatives and all other class members. However, incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class are fairly typical in class action cases. Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives. Rather, resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? As to the latter question, the relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation. Here . . . there were no structural differences in the claims of the class representatives and the other class members. This case does not involve an ex ante incentive agreement between the class representatives and class counsel . . . . Nor does it involve a settlement which explicitly conditioned the incentive awards on the class representatives' support for the settlement . . . . In this case . . . . the class settlement agreement provided no guarantee that the class representatives would receive incentive payments, leaving that decision to later discretion of the district court. The amount sought and awarded was relatively small, well within the usual norms of modest compensation paid to class representatives for services performed in the class action . . . . Thus, the district court did not abuse its discretion in certifying the settlement class.

*Id.* at 942–44 (internal citations and quotations omitted); *see also First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 512 (E.D. Pa. 2007) (rejecting objectors' assertion that the requested incentive awards for the named plaintiffs created a conflict between the named plaintiffs and the other class members, as such "payments are common in class action settlements and do not render the representatives inadequate if based on services rendered in the class action").

### G. Objections as to the Costs of Administration and Notice[12]

Christopher Andrews, Patrick Cruz, and Ruben Quinones raise objections to the manner in which the costs of administration and notice are paid pursuant to the Stipulation of Settlement. Mr. Andrews argues that costs of administration and notice should not come out of the

---

[12] Asserted by Christopher Andrews, Patrick Cruz, Ruben Quinones, and Theodore Frank.

Settlement Fund. This argument is unavailing, however, because it is quite typical for courts to approve settlements in which the costs of administration and notice are paid from the settlement fund. *See, e.g., In re Hydroxycut Mktg. & Sales Practices Litig.*, Case No. 09-cv-1088, 2014 WL 6473044, at *2 (S.D. Cal. Nov. 18, 2014) ("The expenses incurred for notice and claims administration were for the benefit of the class and are typically borne by class plaintiffs"); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008); *Miller v. Ghirardelli Chocolate Co.*, Case No. 12-cv-04936, 2014 WL 4978433 (N.D. Cal. Oct. 2, 2014).

Mr. Cruz and Mr. Quinones object to the fact that the costs of notice, administration, and taxes (including "Use Taxes") are to be drawn solely from the cash sub class, unfairly, they assert, forcing members of the cash sub class to bear the costs and expenses of the product sub class. They assert that this inequity in the payment of costs and expenses creates the "need for separate counsel to represent the distinct interest of the two sub groups." These arguments are not true as a factual matter. Indeed, the administration and other costs were deducted by GCG prior to the *pro rata* reduction of *all* claims, and the cash and product claims have been reduced by the *same* proportion. And, in fact, the Settlement requires Red Bull to add funds to the Cash Fund to cover applicable expenses and satisfy cash claims.

Mr. Frank argues that because the Stipulation of Settlement provides that notice, administration, and tax expenses should be deducted from the $13 million Settlement Fund, those costs should not be considered part of the value of the Settlement for the purposes of evaluating attorneys' fees. He further objects to the fact that Class Counsel have not provided an estimate of the notice, administration, and tax costs. Mr. Frank unsuccessfully presented this same argument to the Ninth Circuit Court of Appeals in *In re Online DVD-Rental Antitrust Litig.* In rejecting Mr. Frank's argument, the Court explained:

The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses. [Objector Theodore] Frank argues the $4.5 million in notice and administrative costs, which facilitate alerting class members to the settlement and processing claims submitted by class members, do not inure to the benefit of the class . . . . He argues the district court's mode of calculation fails to encourage class counsel to reduce notice and administrative costs. He also contends that by basing the fee award on the entire common fund, some of class counsels' fees are simply a percentage of their litigation expenses award—thus their work is being "double-count[ed]."

The district court did not abuse its discretion in calculating the fee award as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses. We have repeatedly held "that the reasonableness of attorneys' fees is not measured by the choice of the denominator." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir.2000) (rejecting an objector's argument that a fee award in a securities settlement should be based on "net recovery," which does not include "expert fees, litigation costs, and other expenses"); *see also Staton [v. Boeing, Co.]*, 327 F.3d 938, 974–75 (9th Cir.2003) ("The district court also did not abuse its discretion by including the cost of providing notice to the class . . . as part of its putative fund valuation . . . .We have said that 'the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable.' " (*quoting Powers*, 229 F.3d at 1258)). Here, the district court concluded that class counsels' fee request, which applied the 25% benchmark percentage to the entire common fund, was reasonable. Indeed, the court explicitly explained how administrative costs in particular make it possible to distribute a settlement award "in a meaningful and significant way." Similarly, notice costs allow class members to learn about a settlement and litigation expenses make the entire action possible.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 953 (internal citation omitted).

### H. Objections as to the Courts' Schedule for Briefing before the Fairness Hearing[13]

Objectors Christopher Andrews, Theodore Frank, Paul Lopez, and Chad Farmer assert that the Court's briefing schedule violates Rule 23(h) by setting the deadline for objections before the deadline for Class Counsel's fee motion. First of all, the Objectors fail to articulate what they would have argued differently had the briefing schedule been altered as they desired. Substantially all of the arguments in favor of settlement, and all of the factors for analysis in play

---

[13] Asserted by Christopher Andrews, Theodore Frank, Paul Lopez, and Chad Farmer.

in the Second Circuit, were well known at the time the *preliminary* approval briefing was filed last July. Furthermore, the Second Circuit, albeit in an unpublished decision, has addressed and rejected that very argument. *Cassese v. Williams*, 503 F. App'x 55, 57–58 (2d Cir. 2012). Rule 23(h) requires that notice of Class Counsel's fee motion "must be served on all parties and . . . directed to class members in a reasonable manner." Fed.R.Civ.P. 23(h)(1). Where, as here, the Notice of Class Action and Proposed Settlement sets forth the amount of attorneys' fees Class Counsel will be requesting, and Class Members have an opportunity to object and are given a sufficient amount of time to review Class Counsel's final fee motion before a fairness hearing, there is no denial of due process or violation of Rule 23(h). *See Cassese*, 503 F. App'x at 57–58. In *Cassese*, the Court explained:

> Notice of Fee Motion
>
> The objectors argue that the district court violated Fed.R.Civ.P. 23(h) and their due process rights by scheduling objections to the settlement, including to class counsel's request for attorney's fees and expenses, to be due before the fee motion. We construe this argument as a challenge to the reasonableness of the notice of class counsel's fee motion, see Fed.R.Civ.P. 23(h)(1) (requiring that such notice be "directed to class members in a reasonable manner"), which we review only for abuse of discretion. We identify none.
>
> We recognize that at least one court has accepted the due process argument advanced by the objectors here. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir.2010) ("[A] schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates."). We need not decide whether requiring objections to be filed in advance of a fee motion might raise due process concerns in some cases. We conclude only that notice of class counsel's fee request was reasonable here under the circumstances and sufficient to satisfy due process.
>
> The Notice of Class Action and Proposed Settlement, dated June 27, 2011, stated that (1) "WMI has agreed to pay Thirteen Million Dollars ($13,000,000.00) (the 'Gross Settlement Fund') into the Cassese/WMI Settlement Account"; (2) class counsel would apply for "attorneys' fees not to exceed Three Million Nine Hundred Thousand Dollars ($3,900,000.00)" and "reimbursement of unpaid expenses ... not to exceed Fifty Thousand Dollars ($50,000.00)"; (3) class

members could object to any aspect of the proposed settlement by August 31, 2011; and (4) a fairness hearing would be held on September 15, 2011, in the Eastern District federal courthouse. June 27, 2011 Class Action Settlement Notice 1–2. In its ensuing fee motion, class counsel requested fees and costs in the precise amounts specified in the settlement notice and divulged additional information regarding counsel's billing rates, hours worked, and tasks performed. Any objectors then had two weeks to crystallize their objections and request further information before attending the fairness hearing. With the objectors here having availed themselves of those opportunities, we identify no abuse of discretion or due process denial in that portion of the district court's scheduling order relating to the fee motion. *See Carlson v. Xerox Corp.*, 355 Fed. Appx. 523, 525 (2d Cir.2009) (summary order) (concluding under similar circumstances that notice of class counsel's fee motion "was reasonably directed to class members as required by Rule 23").

*Id.* (internal citations omitted).  Other courts have adopted this reasoning and concluded that notice of class counsel's fee motion was reasonably directed to class members pursuant to Rule 23(h)(1) where, although objections were due before class counsel's final fee motion, the objectors were given notice of the requested fees along with notice of the proposed settlement, were given an opportunity to file written objections to the fee request, and had ample time before the fairness hearing to review class counsel's final fee motion.  *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 221–22 (E.D. Pa. 2014) (holding that "even though the motion for final approval of attorneys' fees was filed after the deadline for objections, class members were provided with reasonable notice of class counsel's fee request and that the notice given was sufficient to satisfy the requirements of due process," because the Court and the Class Members had fair notice of the fees to be sought in the preliminary approval briefing and objectors had a full opportunity to be heard at the fairness hearing) (internal quotation omitted); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014) (holding that class counsel complied with Rule 23(h) because "[t]he Court's October 4, 2013 Order stated that Class Counsel would apply for attorney's fees not to exceed $20 million dollars[,] [t]he notice sent to class member[s] likewise stated that the attorneys would apply for fees not to exceed $20

million[,] [c]lass counsel applied for fees and expenses in the amount of $20 million[,] [t]he Court held a final fairness hearing on February 14, 2014," and the "objectors had over two weeks between the application for fees and the final fairness hearing").

Here, as in *Cassese*, *In re CertainTeed Fiber Cement Siding Litigation*, and *Saccoccio*, the Plaintiffs' Notice of Class Action and Proposed Settlement, [D.E. 42-1], and the parties Joint Motion for Preliminary Approval [D.E. 40-42], gave the Class Members notice that Class Counsel would seek attorneys' fees and expenses in the amount of $4,750,000.00, Class Members were given an opportunity to object, and Plaintiffs' final fee motion (which also requested attorneys' fees and expenses in the amount of $4,750,000.00) was filed several weeks before the fairness hearing.[14]   Accordingly, contrary to the Objectors' contentions, Class Counsel satisfied the notice requirements of Rule 23(h), and the Class Members have not been denied Due Process.

### I.   Objections as to the Claims Process, and to the Form and Requirements of the Claims[15]

None of the objections to the form or requirements of the Class Claims nor to the Claims Process warrant denial of Plaintiffs' application for approval of the Settlement.

Christopher Andrews objects that Class Members are required to provide both their phone numbers and email addresses when filing claims.   This requirement was not made to burden Class Members, but to benefit them by giving the Administrator several points of contact for efficient distribution of the Settlement benefits.

Mr. Lopez generally objects to "the claims process as being too burdensome and the claims deadline to[o] short."   As Mr. Lopez does not specify *how* the claims process is

---

[14] Class Counsel filed their motion for final approval on April 8, 2015, more than three weeks before the fairness hearing on May 1, 2015.

[15] Asserted by Christopher Andrews, Paul Lopez, Chad Farmer.

purportedly burdensome, nor suggest alternative measures for the claims process or the claims deadline, his nebulous contention does not warrant a finding that the proposed Settlement is unfair or inadequate. As an aside, the receipt of over 2.2 million claims belies Mr. Lopez's contention, because the claims process did not preclude this from becoming one of the largest settlement classes in U.S. history.

Mr. Farmer objects to the requirement that Class Members submit their Claims (or the declaration with their objections) "under penalty of perjury." Notably, however, courts often approve settlements in which the class members are required to either submit a proof of purchase *or* certify, under penalty of perjury, that they purchased the product that is the subject of the litigation. *See, e.g.*, *Mason v. Heel, Inc.*, Case No. 3:12-cv-03056, 2014 WL 1664271, at *5 (S.D. Cal. Mar. 13, 2014). Here, Class Members are not required to submit proofs of purchase in order to recover benefits pursuant to the Settlement, so it is logical (and appropriate) that they be required that they certify, under penalty of perjury, that they purchased Red Bull products during the class period to dissuade fraud by members of the public and to afford Red Bull some evidentiary comfort that settlement proceeds are being distributed to its consumers.

### J. Objections as to the Merits of this Class Action and to Class Actions Generally[16]

Some of the Objectors argue that the Settlement should not be approved because, they assert, this Class Action is without merit. Objector Jonathan Corbett opposes the proposed Settlement and argues that this Court should *sua sponte* dismiss this class action for failure to state a claim. Specifically, he contends that although he purchased "hundreds, if not thousands, of units of Red Bull" between January 2002 and October 3, 2014, he at no point believed that his

---

[16] Asserted by Jonathan Corbett and Barry Waterman.

"consumption of Red Bull would result in the spontaneous growth of wings," nor did he at any point feel that Red Bull's marketing led him to believe that Red Bull was a scientifically-superior source of energy. Mr. Corbett maintains that he chose to drink Red Bull simply because he enjoys it, and not because of any misleading advertising. As an alternative to dismissal, Mr. Corbett proposes, without citation to any legal authority, that all Class Members making claims pursuant to the Stipulation of Settlement should be required to certify that Red Bull's marketing campaigns led them to believe that Red Bull is superior to coffee or that they were otherwise deceived and that but for their false impressions, they would not have purchased Red Bull products.

First, Mr. Corbett has misread the Complaints and Stipulation of Settlement. Nowhere do any of the Plaintiffs allege that Red Bull's famous "gives you wings" slogan is actionable and it was not the basis of either suit. The Complaints were based on the use of allegedly misleading scientific studies and very specific comments on functional benefits. Therefore, the main premise of Mr. Corbett's objection is simply wrong. Moreover, Mr. Corbett's contention that he was not personally misled by Red Bull's labeling and marketing does not render the proposed Settlement unfair or inadequate, which is the focus of the Court's inquiry in determining whether to grant final approval of the Settlement. If anything, Mr. Corbett's contention that some individuals may not have been personally misled is an indication that the Settlement is very good for the Class; individuals who are not misled are free to not submit claims, but the Stipulation effectively gives Class Members the benefit of the doubt. Moreover, that some individuals may not have been misled demonstrates the risks associated with continuing to litigate the class action, including the potential that individualized issues could undermine the predominance requirement and prevent certification.

Nor does Mr. Corbett cite any case law holding that approval of settlements in consumer class actions alleging false advertising is contingent upon the class members certifying that they were misled by the subject deceptive practices. Accordingly, Mr. Corbett's contentions that the class action should be dismissed or that Class Members should be required to aver that they were misled are without merit.

Objector Barry Waterman likewise argues that this Class Action is without merit. Mr. Waterman acknowledges that consumers might believe, due to Red Bull's marketing, that Red Bull products have "a positive impact on them," but argues that "people need to be responsible for their own actions," and that false advertising should only be actionable when "there is a hidden health hazard in the product." This argument contradicts consumer protection laws that make *all* deceptive and misleading advertising in the conduct of business unlawful, and not just advertising that fails to reveal hidden health hazards. *See, e.g.*, N.Y.G.B.L. §§ 349 and 350. Accordingly, Mr. Waterman's opinion that the Class has failed to state claims because they have not alleged that Red Bull products contain a hidden health hazard is simply unfounded.

Mr. Waterman also argues, with no factual or legal support, that this action should be dismissed because class actions are generally "a waste of the court's time and a waste of society's legal framework." It is well established, however, that class actions and class action settlements are favored, particularly in cases such as this where there is little incentive for individual consumers to bring suit. *See Sykes v. Mel S. Harris & Associates LLC*, 780 F.3d 70, 81 (2d Cir. 2015) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights[;] [a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's)

labor") (internal quotation omitted); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d at 116 (noting a "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation omitted).   Moreover, as explained at length in Plaintiffs' fee and final approval motions, this Class Action is not a waste of judicial or legal resources, as it provides substantial benefits to the Class Members and consumers generally.

## K.   Miscellaneous Objections

None of the other objections warrant denial of Plaintiffs' application for approval of the Settlement and for an award of attorneys' fees, reimbursement of expenses, and incentive awards.

### *i.   Objector Christopher Andrews*

Christopher Andrews makes several other objections, none of which demonstrate that the proposed Settlement or the requested attorneys' fees, expenses, and incentive awards are unfair or unreasonable.

Mr. Andrews asserts that paragraphs should be added to the Stipulation of Settlement on the following topics: (1) "Notice of Missing Information"; (2) "Review of Claims"; (3) "Incomplete Claim Forms"; (4) "Right to Challenge;" and (5) "Right to Respond to Objections." There is no basis for these assertions.  As set forth above, the Stipulation of Settlement and the Notice program provide robust and comprehensive information to the Class Members about the workings of the settlement.  Class Members had the ability to ask questions of GCG and Class Counsel if something was not understood.

Mr. Andrews further asserts that all checks should be sent out within 60 days after final approval, rather than 150 days.  While it is understandable that Class Members want to receive their checks as soon as possible, providing the Administrator only 60 days to send the checks is

impracticable considering that over two million claims were filed, and the logistics associated with such a massive mailing. The 150 day requirement ensures timely, practical payment to the Class Members.

Mr. Andrews also objects that "notice to State and Federal officials appears missing" from the motion for preliminary approval and the Stipulation of Settlement pursuant to 28 U.S.C. § 1715. However, the Stipulation of Settlement *did* require Red Bull to serve the order preliminarily approving the Settlement upon the appropriate state and federal officials. [D.E. 41-1, ¶ 18]. Moreover, the Order granting Preliminary Approval of the Class Action Settlement required Red Bull, within ten (10) days of entry, to serve the Order and the Stipulation upon the appropriate Federal and State officials pursuant to 28 U.S.C. § 1715, and Red Bull did so.

Moreover, Mr. Andrews' objection that that Red Bull has yet to deposit any money into the Settlement Fund is baseless. Red Bull *did* deposit $6.5 million in an escrow account for the Class Members' benefit shortly after this Court granted preliminary approval of the Settlement. Indeed, it is from this fund that the costs of Notice to the Class Members was paid.

Mr. Andrews further argues that the class should be decertified pursuant to Rules 23(a)(4) and (g) because "the class would be better off if they each opted out and brought a small-claims case . . . ." Mr. Andrews offers no support for this contention, and his speculative assertion that the Class Members would be better off litigating their claims individually is frankly contrary to canons of precedent on the superiority of class actions for small claims. Moreover, as set forth here and in the Plaintiffs' final approval motion and exhibits, the proposed Settlement confers substantial benefits on the Class Members.

Mr. Andrews also asserts that the phrase "valid shipping address," as used in the Stipulation of Settlement, needs to be defined. This objection is of no real consequence, because

if a Class Member provided a shipping address that is not valid (*i.e.*, an address to which shipment of the check or free product is not possible or practicable), the administrator has other means of contacting that Class Member to obtain an alternate shipping address (*e.g.*, email or telephone).

Mr. Andrews also argues that a statement that the claims website is the only authorized website for the case is missing from the first page of the website. He further asserts that a "reminder checklist" should be added to the claim form website. Again, Mr. Andrews' arguments are hollow. There is no doubt that potential Class Members found the correct website and made appropriate claims.

### ii. Objectors Patrick Cruz and Ruben Quinones

In addition to their objections addressed above, Mr. Cruz and Mr. Quinones further contend that it is unfair to charge the cash sub class the taxes on the free cans of Red Bull that will be distributed to the product sub class. As to any applicable taxes, however, such costs were deducted by GCG prior to the *pro rata* reduction of *all* claims and thus are not borne solely by the cash sub class. Mr. Cruz and Mr. Quinones also object to the Settlement on the ground that it does not address recycling programs in states permitting consumers to recycle aluminum cans to redeem bottle deposits the manufacturer paid. They contend that it is unfair for Red Bull to charge the cash sub class for the bottle deposits and then be permitted to keep a portion of the deposits the class pays for the cans distributed via the Settlement that are not recycled. These contentions are factually inaccurate and of little import. First, Red Bull is not charging any required bottle deposits to the Class Members. Moreover, if any such bottle deposits do apply, Class Members are free to recycle their cans and redeem the deposits. Accordingly, the

redemption of deposits is a perk that inures to the Class Member's benefit, and not to the benefit of Red Bull or to the detriment of any Class Member.

### iii.     Objector Dave Mager

In addition to his objections addressed above, Mr. Mager also asserts that Class Members should have more time to cash their settlement checks. One hundred and twenty days, however, is ample time for the Class Members to cash their checks. Affording the Class Members even more time to cash their checks unnecessarily prolongs administration of the Settlement.

### iv.     Objector Theodore Frank

In addition to his objections addressed above, Mr. Frank also argues that the proposed Class fails the commonality and typicality requirements of Rule 23(a) "because common questions of law or fact do not predominate over individual ones." Specifically, Mr. Frank argues that the presence of "individualized issues such as the necessity of proving reliance on the defendant's alleged misrepresentations, or the content of the underlying applicable [consumer protection] law, preclude a finding of predominance." Mr. Frank asserts that the Plaintiffs have failed to prove that common issues of reliance predominate here, *i.e.*, that all the Class Members relied on the allegedly deceptive claims set forth in the Complaint in deciding to purchase Red Bull products.

The requirement that questions of law or fact common to the members of class predominate over questions affecting only individual class members, requires the plaintiffs to "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole predominate over those issues that are subject only to individualized proof." *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 304 (E.D.N.Y. 2006) (internal quotation omitted). Notably, "[t]he predominance inquiry should

focus on the liability issue—if the liability issue is common to the class, common questions are held to predominate over individual questions." *Id.* (internal quotation omitted). Here, Red Bull's liability is premised upon its allegedly misleading national advertising and labeling statements made to the entire class. Accordingly, common questions of fact predominate as to Red Bull's marketing and labeling, and variations among state consumer protection statutes, including whether the statutes require proof of reliance as to the Defendant's claims, do not preclude certification. *Id.* at 305 (concluding that "to the extent that the plaintiffs must establish reliance as an element of their claims, it would be reliance on representations made to the entire class," and that "[t]he commonality of the representations supports the Court's determination that common questions predominate over individual ones"). Indeed, courts have held that variations among states' consumer protection statutes do not warrant denial of a request for final approval of a settlement. *See, e.g.*, *Cassese v. Washington Mut., Inc.*, 255 F.R.D. at 97 ("[T]he Court finds that the variations present in state common laws of contracts, unjust enrichment, and fraud, as well as potential variations among state consumer protection statutes do not preclude certification"); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d at 511 ("Variations in rights and remedies available to injured class members under state law do not defeat commonality and predominance" because "[a] finding of commonality does not require that all class members share identical claims") (internal quotation omitted); *In re Scotts EZ Seed Litig.*, Case No. 12-cv-4727 VB, 2015 WL 670162, at *6-8 (S.D.N.Y. Jan. 26, 2015) (concluding that common questions predominated for plaintiffs' consumer protection claims).

Moreover, certification of settlement classes diminishes concerns about variations in state law. As one Court explained:

> [T]he concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation [when evaluating certification of a settlement class]. Indeed, the class settlement posture . . . largely marginalizes the [ ] concern that state law variations undermine a finding of predominance.
>
> ***
>
> Because we are presented with a settlement class certification, we are not as concerned with formulating some prediction as to how variances in state law would play out at trial, for the proposal is that there be no trial . . . . The proposed settlement here obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws, and the difference is key. Accordingly, while we are cognizant of our responsibility to protect absentees by blocking unwarranted or overbroad class definitions, state law variations are largely irrelevant to certification of a settlement class.

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302–04 (3d Cir. 2011) (internal citations and quotations omitted); *see also O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *9 ("[T]he Court recognizes that because certification is sought for purposes of settlement and is not contested, the concerns about divergent proofs at trial that underlie the predominance requirement are not present here").

Finally, Mr. Frank's contention that that individualized issues and/or variations in state law could negatively impact certification for trial demonstrates that there are risks associated with continuing to litigate this Class Action, and that the proposed Settlement is thus fair and reasonable in light of those risks. Indeed, that Mr. Frank would contend that class certification is simply not viable here is perplexing, as he would seem to be arguing that the Class should not be entitled to any compensation whatsoever, which is plainly not in the interest of Class Members.

### v.        *Objector Chad Farmer*

Mr. Farmer asserts that the Class Members cannot evaluate the fairness of the Settlement without knowing the number of Class Members, the number of claims submitted, and the amount of "money Red Bull made from the false advertising."  This unsupported argument goes to the

fairness of the settlement, and for all of the reasons set forth in Class Counsels' final approval briefing, undersigned asserts that the settlement is fair according to the standards relied upon by the Court.

Mr. Farmer also argues that it is unduly burdensome to require Class Members to *file* their objections with the Court (rather than merely mail it to the Court) and to mail a copy of their objections to "six different law firm addresses."   This is another unsupported argument. The procedures set forth in the Notice are the same or substantially similar to other class action settlements which have been approved.  Indeed, several objectors have mailed their objections to the Court, rather than file them through the CM/ECF system.

### vi.     Michael Narkin

Mr. Narkin asserts that the Class Members are improperly deprived the chance to review "the [case] file, including discovery" to satisfy themselves that the proposed Settlement is adequate and fair.  Notably, however, Class Members do not have an absolute right to discovery. *See In re Polyurethane Foam Antitrust Litig.*, Case No. 1:10 MD 2196, 2015 WL 1639269, at *6 (N.D. Ohio Feb. 26, 2015) (rejecting Mr. Narkin's complaint that "he need[ed] to review discovery in this matter to assess his claim," given "caselaw that states a class member has no such right to discovery (or only a qualified right, which Narkin's meritless objection does not warrant)"); *Larsen v. Trader Joe's Co.*, Case No. 11-cv-05188, 2014 WL 3404531, at *7 (N.D. Cal. July 11, 2014) (rejecting Mr. Narkin's contention that he needed discovery pertaining to the settlement, because, *inter alia*, "Class members who object to a class action settlement do not have an absolute right to discovery," and "Mr. Narkin [did] not provide authority to support his belief that objectors are entitled to seek documents . . . ").

**L.      The Contentions of Serial Objectors Do Not Warrant Denial of Plaintiffs' Final Approval Motion nor Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards.**

Some of the Objectors to the proposed Settlement (or their counsel) are serial objectors who repeatedly oppose class action settlements not for meritorious reasons, but in order to vex the parties and/or to extort money from the settling Class or Class Counsel. The contentions of serial objectors should be rejected. *See Roberts v. Electrolux Home Products, Inc.*, Case No. 13-cv-2339, 2014 WL 4568632, at *11 (C.D. Cal. Sept. 11, 2014) (rejecting "objections submitted by [ ] professional objectors [because they did] not seek to benefit the Class and appear[ed] to [have] be[en] made for the improper purpose of delaying the Settlement to extract a fee").

Here, Attorney Christopher Bandas, a serial objector, represents Objector Paul Lopez. [D.E. 57]. Several courts have recognized Mr. Bandas' status as a professional objector who objects to proposed class action settlements, and appeals approved settlements, in bad faith and in order to extort a fee from settling classes. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 n. 4 (N.D. Cal. 2012) ("Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct") (*citing* another case in which "the court stated that 'Bandas is a professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees' . . . . [Bandas's and his clients'] attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the Class and/or Class Counsel"). In *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014),

a Court in this District evaluated the legitimacy of an appeal of a final approval of a class action settlement that Mr. Bandas filed on behalf of an objector and noted:

> [W]hile [Objector] Hampe is appearing *pro se* before this Court, he admits that he is "represented in this matter" by attorney Christopher A. Bandas ("Bandas"), who has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements. The Honorable Samuel Conti of the Northern District of California has stated: "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D.Cal.2012) (citation omitted). Even more recently, the Honorable Barry Ted Moskowitz of the Southern District of California conducted an evidentiary hearing regarding Bandas's practices in order to determine whether to strike an objection. After hearing testimony from Bandas and other witnesses, he struck the objection, having determined that "Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away" and that "Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made." *In re Hydroxycut Marketing and Sales Practices Litig.*, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013). Hampe's relationship with Bandas, a known vexatious appellant, further supports a finding that Hampe brings this appeal in bad faith.

*In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at 156.  As Mr. Bandas' nefarious motives in objecting to and appealing approval of class action settlements has been repeatedly exposed, the objections filed on behalf of his client Paul Lopez have diminished credibility and should be rejected, or at least closely scrutinized.

Mr. Michael Narkin is also a serial objector whose boilerplate arguments have been repeatedly rejected by courts asked to give final approval to class action settlements.  *See In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *6 (deeming Mr. Narkin a "serial objector, whose carbon-copy objections district courts frequently reject as baseless"); *Arnold v. Fitflop USA, LLC*, Case No. 11-cv-0973, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (overruling some of the exact same objections Mr. Narkin makes to the proposed Settlement herein: "(1) [that] the proposed settlement bears no relationship to the alleged damages inflicted

by Defendants on Plaintiffs; (2) [that] Class counsels' actions are indicia of a consciousness of unfairness and collusion; and (3) [that] the amount of attorney's fees and expenses constitutes over reaching, represents unjust enrichment, and shocks the conscience"); *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *7 (rejecting some of the same arguments Mr. Narkin makes to the proposed Settlement here); *Bezdek v. Vibram USA Inc.*, 2015 WL 223786, at *22 n. 14 (noting that "Narkin [ ] asserted an identical, unsuccessful claim in [*Arnold v. Fitflop USA, LLC*] . . . ." and rejecting the claim, as did the *Arnold* court, as lacking merit and not made in good faith); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. at 700 (granting final approval of the proposed settlement over the objection of Mr. Narkin and other objectors); *Miller v. Ghirardelli Chocolate Co.*, 2015 WL 758094, at *1 (granting final approval of the proposed settlement over the objection of Mr. Narkin and other objectors).

Mr. Theodore Frank is also a professional objector, and other courts evaluating class action settlements have granted approval (or affirmed approval) of settlements over his objections. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015); *In re HP Inkjet Printer Litig.*, Case No. 5:05-cv-03580-JF, 2014 WL 4949584 (N.D. Cal. Sept. 30, 2014); *Blessing v. Sirius XM Radio Inc.*, 507 F. App'x 1 (2d Cir. 2012); *In re Google Referrer Header Privacy Litig.*, Case No. 5:10-cv-04809, 2015 WL 1520475, at *6 (N.D. Cal. Mar. 31, 2015); *City of Livonia Employees' Ret. Sys. v. Wyeth*, Case No. 07-cv-10329 RJS, 2013 WL 4399015 (S.D.N.Y. Aug. 7, 2013); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 191 (D.D.C. 2011).

Objector Christopher Andrews has also recently filed unsuccessful objections to other proposed class action settlements. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, Case No. 10-cv-14360, 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015). In *Shane Grp., Inc.*, as

here, Mr. Andrews "list[ed] several issues [with the proposed settlement] including: the $30 million amount for damages is too low; incentive awards are too high; postcard and long notices are flawed and defective; claim forms are flawed; claim packets are defective; hourly rates are too high as are the number of hours claimed for attorneys' fees; $3.5 million in expenses is too high; and, Blue Cross should have paid for the notice." *Shane Grp., Inc.*, 2015 WL 1498888 at *5. The court granted final approval of the settlement, over the objections of Mr. Andrews and others and noted that "many of the [Mr. Andrews'] submissions [were] not warranted by the law and facts of the case, were not filed in good faith and were filed to harass Class Counsel." *Id.* at *19–21. The court also stated that it was "aware that other courts have noted that Andrews is known to be a 'professional objector who has extorted additional fees from counsel in other cases' . . . ." *Id.* at *20 (*citing In re Nutella Marketing and Sales Practices Litig.*, Case No. 11–cv–01086 (D.N.J.) (7/9/12 Fairness Hearing Tr., Ex. C to Doc. No. 201)).

Finally, Objector Jonathan Corbett's email address is jon@professional-troublemaker.com, perhaps shedding light on the intentions of his objections to the proposed Settlement. The contentions of the serial or professional Objectors should be rejected, or at the very least, the motives of their filings herein should be closely scrutinized.

## IV.   CONCLUSION

The objections raised herein are unavailing, and do not demonstrate that the proposed Settlement is unfair or inadequate or that the requested attorneys' fees, costs, and incentive awards are unreasonable or unfair. Accordingly, the objections do not warrant denial of Plaintiffs' request for final approval of the Settlement, nor of Plaintiffs' request for attorneys' fees, expenses, and incentive awards.

Respectfully submitted this 24th day of April, 2015.

Respectfully submitted,

Dated:   New York, New York          MORELLI ALTERS RATNER, LLP
         April 24, 2015

By: */s Benedict P. Morelli*

Benedict P. Morelli
David S. Ratner
Adam Deutsch
777 Third Avenue, 31st Floor
New York, NY 10017
bmorelli@morellilalters.com
dratner@morellialters.com
adeutsch@morellialters.com

MORELLI ALTERS RATNER, LLP
Jeremy W. Alters
Matthew T. Moore
2675 NE 188th Street
Miami, Florida 33180
jalters@morellialters.com
mmoore@morellialters.com

*Attorneys for Plaintiff Benjamin Careathers*

Dated:   San Francisco, CA           KAPLAN FOX & KILSHEIMER LLP
         April 24, 2015

By: */sLaurence D. King*

Laurence D. King
Linda M. Fong
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  (415) 772-4700
Facsimile:   (415) 772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

KAPLAN FOX & KILSHEIMER LLP
Frederic S. Fox
850 Third Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 687-1980
ffox@kaplanfox.com

KAPLAN FOX & KILSHEIMER LLP
Justin B. Farar
11111 Santa Monica Blvd, Suite 620
Los Angeles, CA 90025
Telephone:  (310) 575-8670
Facsimile:   (310) 575-8697
jfarar@kaplanfox.com

*Attorneys for Plaintiffs David Wolf & Miguel Almaraz*

## CERTIFICATE OF SERVICE

I hereby certify, under the pains and penalties of perjury, that on April 24, 2015, I electronically filed a true copy of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the docket and the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.  I am an attorney admitted to practice before this Court.

By: */s David S. Ratner*
David S. Ratner

SERVICE LIST:

***Via CM/ECF:***

Kenneth A. Plevan
Jordan A. Feirman
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Tel: (212) 735-3000

Jason D. Russell
Hillary A. Hamilton
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071-3144
Tel: (213) 687-5000

Erin Leigh Sheley
Center For Class Action Fairness
1718 M Street Nw, No. 236
Washington, DC 20036
(617)-308-1215
Email: erin.sheley@gmail.com

Quyen Hoang
Law Office of Quyen C. Hoang
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
(714)-369-8152
Email: quinnchoag@aol.com

David Stein
Samuel & Stein
38 West 32nd Street
Suite 1110
New York, NY 10001
(212) 563-9884
Fax: (212) 563-9870
Email: dstein@samuelandstein.com

*Via E-Mail to:*

Christopher Andrews
P. O. Box 530394
Livonia, MI 48152-0394
caaloa@gmail.com
PRO SE

Jonathan Corbett
382 NE 191st St #86952
Miami, FL 33179-3899
jon@professional-troublemaker.com
PRO SE

Chad Farmer
cnfarmer23@gmail.com

Michael Narkin
85391 Chezem Road
Eugene, OR 97405
mpilot2001@aol.com
PRO SE

*Via U.S. Mail to:*

Dave Mager
10121 Page Road
Streetsboro, OH 44241
PRO SE

Lawrence Montecalvo
273 Lion Point
Boulder, CO 80302
PRO SE

Barry Waterman
10121 Page Road
Streetsboro, OH  44241
PRO SE