USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: September 25, 2017

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000
FAX: (213) 687-5600
www.skadden.com

DIRECT DIAL
(213) 687-5328
DIRECT FAX
(213) 621-5328
EMAIL ADDRESS
JASON.RUSSELL@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

**MEMO ENDORSED**

September 22, 2017

**BY ECF**

The Honorable Katherine Polk Failla
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

RE: *Careathers v. Red Bull North America, Inc., et al*, Case No. 1:13-CV-0369 and *Wolf et al. v. Red Bull North America, Inc. et al.*, Case No. 1:13-CV-08008

Dear Judge Failla:

We write on behalf of the parties to apprise the Court of a proposed *cy pres* distribution pursuant to § IV.A.10 of the Settlement Agreement (the "Agreement") in the above-captioned cases.

We recently received this Court's endorsed memo dated August 22, 2017, which noted that "the money Doe received pursuant to the Settlement has been donated to charity." ECF No. 139. The timing of this memo is auspicious, as the parties have been involved in negotiating the proposed recipients of the remaining funds and preparing this submission to the Court for its approval of the proposed *cy pres* recipients, as discussed at the final approval hearing. *See* May 1, 2015 Transcript of Final Approval Hearing ("Tr.") at 25:3-6, 31:8-12. Although these discussions have taken longer than anticipated, the parties have been working diligently since shortly after the close of the second distribution made pursuant to the Agreement, and involved research and discussion by all parties and their counsel over the last few months, after consultation with the claims administrator on the process and expenses involved, and analysis of potential cy pres recipients. Subject to the Court's approval, the parties have now come to an agreement as to the distribution of the remaining funds, as set forth below.

Pursuant to the Agreement, the class action settlement administrator, Garden City Group ("GCG"), has made two distributions of checks to claimants who chose to receive checks instead of products in the settlement. Approximately 520,000 of the 1,290,000 checks distributed in the first distribution were unclaimed, leaving a total of $1,565,197.05 available for a second distribution pursuant to the Agreement. *See* Agreement § IV.A.10(a)-(c). A total of 778,705 checks, each in the amount of $2.01, were mailed in a second distribution to class members who cashed their initial checks. The administrative costs for printing and mailing the second distribution of checks were $501,705.61.

As this Court noted in its recent endorsed memo, the 120-day redemption window for the checks in the second distribution has now expired (ECF No. 139), and GCG has voided the uncashed checks in the second distribution. *See* Agreement § IV.A.10(d). GCG has informed the parties that $475,611.13 in settlement funds were unclaimed in the second distribution, which, combined with approximately $20,000 in unused administration funds, means approximately $495,000 remains in the Distribution Fund.

GCG has informed the parties that the cost of printing and mailing a third distribution check to the approximately 542,000 class members who cashed their second distribution check would cost around $0.60 to $0.70 per check (not including any other support for the distribution, such as banking time, project management, QC controls, call center, handling of undeliverables, reissues, etc.). GCG estimates the raw cost to issue 542,000 checks would thus be $325,200 to $379,400, leaving only $115,600 to $169,800 available for redistribution. Using those numbers, the average check's value would be between $0.21 and $0.31 per class member.

The parties have agreed that, in light of the nominal additional compensation provided to a reduced number of claimants, compared to the significant administrative expenses that a third distribution would entail, it is neither feasible nor effective to make a third distribution of the minimal remaining funds. *See* Tr. at 26:2-16. Thus, under the terms of the Agreement approved by the Court, the remaining funds "shall be donated by Defendants as a *cy pres* remedy to one or more charitable organizations to be mutually agreed upon by the parties, such that there shall be a final balance of zero in the Distribution Fund" pursuant to the Agreement. *See* Agreement § IV.A.10(d).

Pursuant to the procedure discussed at the May 1, 2015 final approval hearing, the parties submit for this Court's approval five charitable organizations to receive equal shares of the remainder of the Distribution Fund as a *cy pres* donation. *See* Tr. at 25:3-6; 31:8-12. These organizations, and the parties proposing them as potential recipients, are as follows:

1. Children's Hospital of Philadelphia, Philadelphia, PA (www.chop.edu/giving/foundation), proposed by Wolf.
2. Stanford Health Care/ValleyCare Charitable Foundation, various locations in East Bay Tri-Valley region in Northern California (www.valleycare.com/foundation.aspx), proposed by Wolf.
3. Citymeals on Wheels, New York, NY (www.citymeals.org/support-us), proposed by Careathers.
4. Joe DiMaggio's Children's Hospital Foundation, Hollywood, Florida (www.jdch.com/about/foundation), proposed by Careathers.
5. Share Our Strength, Washington, DC (www.nokidhungry.org/about-us), proposed by Red Bull.

As discussed at the final approval hearing, the parties submit that these charitable organizations are sufficiently related to the claims asserted by plaintiffs, as these organizations are devoted to ensuring adequate nutrition and/or scientific study and treatment for the public health. *See*, *e.g.*, Tr. at 23:23-25; Wolf Compl. ¶¶ 19-29, 31, 35, 39-42, 44; Careathers First Amended Compl. ¶¶ 22-26. Moreover, the parties have selected organizations distributed throughout the nation to reflect the widespread geographical scope of the nationwide class. GCG has informed the parties that it can deliver the donations to the approved recipients within a week of approval by the Court.

The parties are available to discuss or answer any questions at the Court's convenience if it wishes further information.

Respectfully submitted,

/s Jason D. Russell
Jason D. Russell

cc: Jeremy W. Alters, Esq.; Matthew T. Moore, Esq.
Laurence D. King, Esq.; Linda M. Fong, Esq.
Mr. Eric Kierkegaard, Garden City Group

Application GRANTED. For the reasons set forth in the above letter, the Court concludes that the parties' proposed cy pres distribution plan is acceptable.

Dated: September 25, 2017
New York, New York

SO ORDERED.

Katherine Polk Failla

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE